# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS

## STANDING ORDER REGARDING PRETRIAL PROCEDURES
## IN CIVIL CASES ASSIGNED TO CHIEF DISTRICT JUDGE RODNEY GILSTRAP
## DURING THE PRESENT COVID-19 PANDEMIC

WHEREAS, the novel coronavirus COVID-19 pandemic requires timely and appropriately tailored measures to arrest the spread of the infection, prevent harm to vulnerable persons, and protect critical medical and emergency infrastructure;

WHEREAS, avoiding travel and in-person contact are known to be effective measures against the spread of COVID-19; and

WHEREAS, the Court finds that, with the assistance of modern technology, civil cases can be litigated largely without travel or in-person contact between attorneys, witnesses, experts, Court personnel, and other case participants;

NOW, THEREFORE, IT IS **ORDERED** THAT:

**A.    Guiding Principles**

1.    The health of impacted persons—Court staff, witnesses, lawyers, and all others involved in cases—is paramount. While the Court wants all parties to prioritize health concerns above all other considerations, the Court is also mindful of the vital need to keep cases moving.

2.    Trying to keep cases moving forward while prioritizing the health of individuals will sometimes lead to unconventional practices and accommodations that would not normally be accepted as appropriate. As one example, the pandemic conditions may require production of computer source code in ways that are not consistent with the producing party's normal security protocols. As another example, depositions of witnesses may need to be conducted remotely with

all participants separated, which, especially for first-time witnesses unfamiliar with the process, may be an uncomfortable experience.

3.      For all such unconventional practices used during this health emergency, those practices may not be cited as appropriate practices to follow once the health emergency has passed. If such practices were citable, that would discourage parties from agreeing to those approaches during the health emergency. The Court wants exactly the opposite: for parties to be willing to make special accommodations during the health emergency, confident that those special accommodations will not be used against them in the future.

4.      In the absence of a particular directive from the Court, attorneys should follow applicable local, state, and federal guidelines. In general, travel should be avoided during the pandemic—and this includes travel for hearings, depositions, and other litigation events. Likewise, during the pandemic parties should avoid gatherings where appropriate social distancing is not practicable—such as in-person depositions.

**B.      Case Scheduling**

5.      The Court is open to requests for extensions to accommodate the COVID-19-related needs of persons involved in cases before the Court. Because the state of the COVID-19 emergency remains fluid and evolves week-to-week, the Court will consider, where warranted, multiple requests for extensions over time.

6.      All such extensions must be reasonable in length, and none can effect a complete halt of case activities for a long period of time—the Court expects that parties will work as diligently as possible during this emergency to promote the efficient administration of justice, while taking all appropriate health-related precautions. The Court further expects that parties will exhibit extraordinary levels of cooperation during this period and present joint motions to adjust

case schedules whenever possible. Requests for such extensions must include fact specific justifications and not merely a conclusory reference to the general pandemic.

7. Subject to trial dates, claim construction dates, and other firm dates the Court will furnish to counsel at or before the initial scheduling conference, the Court invites parties to submit creative scheduling proposals that sequence events in the interest of moving litigation forward fairly, efficiently and effectively given COVID-19 restrictions. In the absence of proposals from the parties, the Court itself may change the sequence of certain case events for this reason.

**C.     Hearings**

8. Unless the Court determines good cause exists, no in-person hearings will be held for any case in which one of the parties has lead counsel (or, where applicable, intended witnesses) subject to a shelter-in-place order, stay-at-home order, no-travel order, or similar orders or advisories from government officials.

9. For all other cases, any party desiring an in-person hearing must move for leave to appear in-person no less than fourteen (14) days prior to the scheduled hearing date.

10. To the extent any in-person appearances at the courthouse are permitted, the Court may impose restrictions designed to identify—to the extent practicable—whether any attendee presents risk factors for COVID-19. The Court may deny any such person access to the courthouse or require them to leave the courthouse.

11. Video and telephonic hearings will be set in the normal course of the Court's scheduling functions.

12. The parties shall test the videoconferencing system in advance of scheduled hearings as the Court may direct. Additionally, the parties are responsible for employing

equipment that is compatible and works satisfactorily with the Court's system, and for ensuring the same.

13. At the direction of the Court, hearings may be held telephonically.

14. For all hearings held via video or telephone, the parties shall electronically serve on the Court and all parties any presentation slides (or other materials not already included in briefing or exhibits to briefing) no later than 36 hours prior to the scheduled start of the hearing. Concurrently with the service of such presentation slides, the parties shall also serve on the Court electronically a list of: (a) all counsel who will participate during such hearing; (b) counsel who shall observe but not participate; (c) witnesses who may be called to give evidence; and (d) party representatives and other non-counsel who may observe but not participate in such hearing.

15. All hearing participants shall use best efforts to refrain from interruptions or speaking over other parties' presentations. The Court expects extraordinary courtesy in this extraordinary emergency.

**D.    Depositions**

16. There will be no in-person depositions conducted during the pandemic. Depositions should proceed forward using remote technologies that are widely available for conducting depositions either telephonically or by video conference. A variety of systems are available that allow for all participants to be physically separate and for real-time exhibit viewing to occur. Many court reporting services offer such platforms, and internet searches for "remote video depositions" and "remote telephonic depositions" will display alternatives.

17. The party noticing a deposition shall specify the platform to be used and the attorneys shall confer, if necessary, to agree on specific procedures that may be appropriate under the circumstances. That a deposition is noticed to be conducted remotely shall not be a basis for a

protective-order motion during the pandemic, and during this health emergency the Court will consider precluding remote depositions only in cases in which clear and significant prejudice is articulated.

### E. Source Code Discovery

18. This portion of the Standing Order applies to any action in which the parties have produced source code or anticipate producing source code. The Court finds that in-person source code review is unduly hazardous, and in some cases impossible, during the COVID-19 crisis.

19. The Court expects the parties to work collaboratively to identify and implement temporary procedures that will enable the receiving party's authorized personnel (*e.g.*, outside counsel and experts) to review source code during the pandemic without the need for travel or in-person code review. The Court invites the parties to submit creative proposals that accomplish the goal of allowing code review to efficiently and effectively continue during the COVID-19 crisis, while protecting the security of the source code—which is highly sensitive and valuable information—as best as possible under the circumstances. Where the parties make a proper showing, the Court will consider a scheduling extension to allow the parties to implement procedures that promote this goal.

20. The Court emphasizes that the use of such temporary code-review procedures during the pandemic will <u>not</u> be citable as evidence of appropriate code-review procedures after the pandemic. For example, these temporary procedures may not involve all the normal security protocols utilized by parties producing source code (though even the temporary procedures will, of course, involve security mechanisms). After the pandemic, parties producing source code can return to advocating all their normal security protocols.

**F.     Document Production and Inspection**

21.     The Court finds that in-person inspection of documents and tangible things is unduly hazardous, and in some cases impossible, during the COVID-19 crisis. Accordingly, to the extent practicable, the parties are ordered to produce discovery in a form that can be reviewed remotely (*e.g.*, by producing documents in electronic form).

22.     To the extent remote, electronic production is not possible—*e.g.*, for inspections of physical things—the parties are ordered to meet and confer to implement alternative procedures that minimize or eliminate the need for in-person contact, such as the following:

   a. Mailing physical copies of documents or tangible things.

   b. Inspection via live or recorded video.

   c. Placing the documents or things in a mutually acceptable secure location that can be accessed one-at-a-time by the persons conducting the inspection.

**G.     Mediations**

23.     No in-person mediations will be held during the pandemic absent leave of Court.

24.     Mediation by videoconference will be the preferred approach, although telephonic mediation shall also be available, subject to the preference of the appointed mediator in each case.

25.     Parties shall abide by the practices of each appointed mediator with respect to pre-mediation written statements.

26.     Parties shall abide by all existing district rules governing mediations despite the remote nature of the mediation including presenting representatives with full authority to compromise each matter.

**H.     Conclusion**

As temporary measures necessitated by an unforeseen global pandemic, the Court is persuaded that the above procedures will assist both the Bench and the Bar in moving cases

forward safely and reasonably while being mindful of the necessary balance to be pursued between the dual responsibilities of doing justice to both the rich and the poor while at the same time safeguarding the health and well-being of those parties, jurors, witnesses, counsel and court staff who interact and facilitate the functioning of our Third Branch of Government. Accordingly, the above measures are **ADOPTED and ORDERED COMPLIED WITH** in all cases assigned to the undersigned, until this Standing Order is modified or discontinued by subsequent order.[1]

**So ORDERED and SIGNED this 20th day of April, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges with appreciation the following counsel who have served as an informal Working Group at the Court's request to assist the Court in developing the above procedures. This informal Working Group is comprised of: David Folsom of Jackson Walker LLP, Chair; Ruffin B. Cordell of Fish & Richardson PC, member; Joseph J. Mueller of Wilmer Cutler Pickering Hale and Dorr, LLP, member; Leslie Payne of Heim Payne & Chorush, LLP, member; and Mike McKool of McKool Smith, member.