**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| ECOFACTOR, INC., | Civil Action No. 6:20-cv-00075 (ADA) |
| Plaintiff, | ████████████ |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

## GOOGLE LLC'S OPPOSED MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID KENNEDY

1762296

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................2

    A.    Mr. Kennedy bases his opinion on three litigation settlement licenses. .................2

    B.    Mr. Kennedy took no steps to confirm that the lump-sum payments were calculated using a per-unit royalty rate of ▮▮ .......................................................5

    C.    Negotiations between EcoFactor's counsel and the licensees confirm that the lump-sum payments were not based upon a ▮▮ per unit rate. .......................7

III.  LEGAL STANDARD...............................................................................................8

IV.   ARGUMENT............................................................................................................9

    A.    The Court should exclude Mr. Kennedy's opinion that ▮▮ is an established royalty because it is unsupported by reliable methodology or sufficient facts. ........................................................................................................9

        1.    Mr. Kennedy's failure to perform any calculation to show that $▮▮ had been applied as a per-unit royalty renders his opinion unreliable..............................................................................................10

        2.    Mr. Kennedy's reliance on statements by Mr. Habib and EcoFactor's counsel without independent analysis renders his opinion unreliable. ...............................................................................12

        3.    Mr. Kennedy's opinion is also unreliable because he ignores evidence explicitly contradicting ▮▮ as an established royalty rate...................................................................................................13

    B.    Kennedy's opinion that ▮▮ is a per-unit reasonable royalty must also be excluded because the licenses upon which he relied are not comparable..............15

        1.    Mr. Kennedy fails to take into account that the "comparable" licenses were negotiated to settle pending litigation.................................16

        2.    Mr. Kennedy's failure to account for EcoFactor's entire portfolio further undermines his opinion. ................................................................17

        3.    Mr. Kennedy's opinion that ▮▮ applies no matter the number of patents or claims allegedly infringed fails to satisfy Rule 702. ................19

V.    CONCLUSION.......................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apple Inc. v. Wi-LAN Inc.*,
No. 14-cv-2235, ECF No. 548 (S.D. Cal. Jan. 3, 2019) ........................................................13

*AVM Techs., LLC v. Intel Corp.*,
927 F. Supp. 2d 139 (D. Del. 2013)......................................................................................18

*Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*,
2016 WL 4426681 (D. Md. Aug. 22, 2016) ..........................................................................12

*Bank of N.Y. Mellon Tr. Co., Nat'l. Assoc. v. Solstice ABS CBO II, Ltd.*,
910 F. Supp. 2d 629 (S.D.N.Y. 2012)....................................................................................15

*In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*,
524 F. Supp. 2d 1166 (N.D. Cal. 2007) ................................................................................15

*DataQuill Ltd. v. High Tech Computer Corp.*,
887 F. Supp. 2d 999 (S.D. Cal. 2011)....................................................................................15

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)...........................................................................................................2, 9

*Exmark Mfg. Co. v. Briggs & Stratton Power Products Group*,
879 F.3d 1332 (Fed. Cir. 2018)............................................................................................14

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997)..............................................................................................................9

*Info-Hold v. Muzak*,
2013 WL 4482442 (S.D. Ohio Aug. 20, 2013), *rev'd in part on other grounds*,
783 F.3d 1365 (Fed. Cir. 2015)......................................................................................12, 13

*LaserDynamics Inc. v. Quanta Comput., Inc.*,
2011 WL 7563818 (E.D. Tex. Jan. 7, 2011)................................................................16, 17, 18

*Lucent Techs., Inc. v. Gateway Inc.*,
580 F.3d 1301 (Fed. Cir. 2009).............................................................................................15

*M2M Sols. LLC v. Enfora, Inc.*,
167 F. Supp. 3d 665 (D. Del. 2016).................................................................................16, 17

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) ....................................................................................11, 14, 19

1762296

*MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*,
   132 F. Supp. 2d 289 (S.D.N.Y. 2001) ..................................................................12

*Omega Patents., LLC v. CalAmp Corp.*,
   13 F.4th 1361 (Fed. Cir. 2021) ...............................................................19, 20

*Pavo Solutions v. Kingston Technology*,
   2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) .............................................10, 11

*PerdiemCo, LLC v. Industrack LLC*,
   2016 WL 6611488 (E.D. Tex. Nov. 9, 2016) ........................................................16

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017) ..........................................................................17

*US Salt, Inc. v. Broken Arrow, Inc.*,
   563 F.3d 687 (8th Cir. 2009) ..............................................................................13

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ................................................................1, 11, 15

**Rules**

Federal Rule of Evidence 702 ................................................................... *passim*

I.      **INTRODUCTION**

EcoFactor's damages expert, David Kennedy, opined that ████ represented an established per-unit royalty for a license to EcoFactor's patents, entitling EcoFactor to damages of ██████ through trial, plus future royalties. But Mr. Kennedy's opinion tha ████ per unit is an established royalty rate is unsupported by either any reliable methodology or sufficient facts. Mr. Kennedy relied on three settlement agreements granting worldwide licenses to EcoFactor's entire patent portfolio in return for lump-sum amounts, each of which was executed after the hypothetical negotiation date (and the filing of this case).

EcoFactor has produced no information concerning any of these licensees' past or projected sales, nothing to suggest that EcoFactor has ever had access to such information, and nothing to show how unit sales were purportedly used to calculate the licensees' lump-sum payments of ███████████████████—far less than the ████████ Mr. Kennedy arrived at with respect to Google. Mr. Kennedy took no steps to confirm that the settlement amounts represented a royalty of ████ per unit; nor could he, as he has never seen any licensees' past or projected sales. Because the settlement agreements do not describe how the parties purportedly calculated each lump sum, and Mr. Kennedy has no "idea of the volume of sales or projected sales," his opinion that the agreements establish a royalty rate is unreliable. *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010).

What's more, two of the agreements Mr. Kennedy relies on contradict his opinion: both state that the lump-sum payment █████████████████████████ ████ One of the agreements even makes clear that ████████ in the clause containing EcoFactor's representation regarding a ████ royalty rate ████████████████████ ██████████████████ Mr. Kennedy also ignores EcoFactor's

negotiations with the three licensees, which contradict his opinions.  Emails exchanged between counsel for the licensees and EcoFactor's litigation counsel in this case show that the lump sums were ***not*** derived based upon a calculation of ███ per unit.  Instead, these emails show that the licensees negotiated and agreed on lump-sum payments to settle litigation in each case.

Mr. Kennedy admits not knowing how the ███ per unit rate was arrived at or who determined it.  Instead, because ███ represents EcoFactor's "belief" about a reasonable royalty, Mr. Kennedy saw no need to see the ███ of how it was determined, ███ it or otherwise verify it.  Knowing nothing about how the rate was determined, Mr. Kennedy nonetheless opined that ███ per unit would apply equally for a license to any or all of EcoFactor's patents—whether one patent or EcoFactor's entire portfolio.  Because Mr. Kennedy takes no steps to confirm the central premise of his opinions that the settlement amounts were derived from ███ ignores contradictory evidence, and defies basic principles of license comparability, his opinion must be excluded for failing the standards under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

## II.    FACTUAL BACKGROUND

### A.    Mr. Kennedy bases his opinion on three litigation settlement licenses.

Mr. Kennedy opined that ████████████████████████████████████████ ███████████████████████████████████ Ex.[1] 1 ("Kennedy Rept.")

¶ 268.  To support this conclusion, Mr. Kennedy relies on litigation settlements between EcoFactor and three licensees: ████████████████████████████████████ ██████████████████   All three agreements were executed after January 2020, the date

---

[1] All references to "Ex." are to the Declaration of Anna Porto in support of Google's Mot. to Exclude Expert Testimony ("Porto Decl.").

2

EcoFactor filed this case and the date of the hypothetical negotiation proposed by Mr. Kennedy; included licenses to EcoFactor's entire ███████ portfolio; and specified one-time, lump-sum payments to settle litigation. ████████████████████████████████████ ██████████████████████████████████████.

    *First*, Mr. Kennedy relied upon an April 2020 settlement between EcoFactor and ████████ Ex. 2. ██████████████████████████████████████████ ████████████████████. *See id.* The parties further agreed to a ████████████ ████████████████████████████████████████ ██████████████████████████ *Id.* at 3. Notwithstanding the lump-sum payment and agreed-upon language, in a ████████ clause, the agreement stated that ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ *Id.* at 1.[2]

    *Second*, Mr. Kennedy relied upon a June 2020 settlement between EcoFactor and ████████. Ex. 3.  In this agreement, EcoFactor granted ████████████████████ ████████████████████████████ *Id.*  The parties agreed that ████████ would pay EcoFactor a ██████████████████████████████. *Id.* at 3.  In the same clause, the parties agreed that ████████████████████████████████ ██████████████████ *Id.*  The agreement also included a ████████ clause again stating that ████████████████████████████████████████



---

[2] Unless otherwise noted, all internal quotation marks and citations have been omitted, and all emphases have been added.

1762296



*Id.* at 1.

*Third*, Mr. Kennedy relied upon a July 2021 settlement with ███████ Ex. 4.  EcoFactor granted ████████████████████████████████████████ *Id.*  The parties agreed that Johnson would pay a ████████████████ *Id.* at 3.  Again, in a ████████ clause, the agreement stated that ████████████████████████████████████████████████████████████████ ████ *Id.* at 1.

Based upon these three litigation settlement licenses, Mr. Kennedy opined that ████ represents ████████████████████████████████████████████ ████████████████████ Kennedy Rept. ¶ 268.  According to Mr. Kennedy, ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* ¶¶ 197, 202, 208, 344.  Mr. Kennedy further opined that the three licenses were economically comparable to the hypothetical negotiation, noting that ████████████████████ ████████████████████████████████████ ████████████████████████████████████████████ *Id.* ¶ 267.[3]  Mr. Kennedy used the ████

---

[3] As explained *infra*, EcoFactor did not even assert the same patents against each of the licensees

4

rate to calculate damages against Google totaling ███████ from January 2020 through the projected trial date.  *Id.*, Exhibit 1.

Mr. Kennedy based his royalty opinion solely on these three settlement agreements, concluding that ██████████████████████████████████████████████████ ████████████████████████ *Id.* ¶ 250.  Mr. Kennedy also did not rely on any other EcoFactor licenses, including EcoFactor's agreement with █████ which pre-dated the hypothetical negotiation and included a license to EcoFactor's patent portfolio.  *See id.* pages 119-128.  Mr. Kennedy's damages opinion thus relies entirely on a unilateral statement about what EcoFactor ████████ is a per-unit royalty, which appears in three settlement agreements negotiated by its litigation counsel after EcoFactor filed its complaint against Google here.

**B.      Mr. Kennedy took no steps to confirm that the lump-sum payments were calculated using a per-unit royalty rate of ██████**

Mr. Kennedy failed to perform any calculations to confirm that ██████ had been applied as a per-unit royalty to compute the various lump sums.  Mr. Kennedy's report does not include any information on the licensees' sales.  *See* Kennedy Rept.  Mr. Kennedy admitted that he had never seen sales information for any licensee, nor did he know whether such information exists.  Ex. 5 ("Kennedy Depo.") at 103:1-7 ██████; *id.* at 123:16-25 ██████; *id.* at 146:3-9 ██████ *id.* at 129:23.  Mr. Kennedy did not ask for ██████ for the licensees.  *Id.* at 111:24-25, 130:11-14.  He also testified that he was unsure whether EcoFactor's CEO, Shayan Habib (who executed the agreements on EcoFactor's behalf), ████████████████████████████ ██████.  *Id.* at 151:9-18.  When confronted with Mr. Habib's testimony, Mr. Kennedy acknowledged that Mr. Habib said that he ████████████████████████████ *Id.* at

as it asserts against Google here.

111:6-16. Mr. Kennedy testified that he ▮▮▮▮▮▮▮▮▮▮▮▮▮ whether EcoFactor or its counsel ever had sales information, and he never asked counsel to provide it. *Id.* at 111:14-17, 128:15. ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ *Id.* at 113:4-8; Ex. 6.

Mr. Kennedy also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ Kennedy Depo at 104:8-11 ▮▮▮ *id.* at 123:10-25 ▮▮▮ *id.* at 151:21-152:9 ▮▮▮ Unsurprisingly, then, Mr. Kennedy was unaware of whether any of the lump sums ▮▮▮▮▮▮ to reflect net present value, or whether the parties had applied any other discount to arrive at the agreed-upon lump sums. *See id.* at 138:13-15 ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ *id.* at 118:13-15 ▮▮▮ *id.* at 152:10-16 ▮▮▮ Mr. Kennedy further testified that he ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ as a per-unit royalty. *Id.* at 156:20-157:1 ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Mr. Kennedy never asked EcoFactor's counsel how the lump sums had been determined, other than ▮▮▮▮▮▮

▮▮▮▮▮ *Id.* at 151:1-4.

Beyond the settlement agreements themselves, Mr. Kennedy's report cites only to: (1) deposition testimony and conversations with Mr. Habib; and (2) an email from ▮▮▮▮

▮▮▮▮▮▮▮ as support for his conclusion that each ▮▮

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Kennedy Rept. ¶¶ 197, 202, 208. Although Mr. Habib himself had no ▮▮▮▮▮

███████████ Mr. Kennedy asserted that ███████████████████████████████

███████████████████████████████████████████████████████████████

*Id.* ¶ 344.  Mr. Kennedy admitted lacking documentation of the ██████████ of how ██████

██████████████████████████████████████████████████████████████████

███████████████  Kennedy Depo at 94: 22-95:11.  When pressed, Mr. Kennedy testified tha ██████

may have been proposed in collaboration with experts, but he did not know whom.  *Id.* at 129:1-

10 ████████████████████████ *id.* at 157:8-20; Ex. 7 ("Habib Depo.") at 439:3-15

(EcoFactor's belief as to ████████████████████████████████████████████

Beyond his reliance on the whereas clauses as to EcoFactor's belief, testimony from Mr.

Habib, and statements from EcoFactor's counsel, Mr. Kennedy failed to otherwise substantiate

██████ as a per-unit royalty rate.  Mr. Kennedy's report thus provides no explanation of how the

settlement agreements with ████████████████—who, like Google, are ████████████████

████████████████████████████████████████████████████████████

███████████████████ can be reconciled with the ████████████ in damages through January

of 2022 alone that he calculated for Google.  *See id.* ¶ 72; Exs. 2, 4.

**C.   Negotiations between EcoFactor's counsel and the licensees confirm that the lump-sum payments were not based upon a ████████ per unit rate.**

EcoFactor's counsel produced emails relating to negotiations with ████████████████████

██████ which Mr. Kennedy's report ignores, and which demonstrate that the licensees did not

agree to ████████ as a per-unit royalty and that the lump sums were not derived from a rate of

████████ None of the correspondence that EcoFactor produced included any actual or estimated

unit sales, or information related to any purported calculations of the lump-sum settlements with

---

[4] EcoFactor's litigation counsel is the custodian of the email correspondence with the licensees.



any of the licensees.[5]  Several emails also reflect that the licensees ███████████ as a per-unit royalty rate.  In an email between counsel for EcoFactor and ███████ for example, EcoFactor's litigation counsel proposed a per-unit royalty of ████ per residential HVAC unit, and ████ per commercial HVAC unit.  Ex. 9.  In response, ████████ attorney asked for ████████ ████████████████████████████████████ which ████████████████████ ████  *Id*. at 2.  In another email, ██████ proposed a lump-sum settlement without reference to a per-unit royalty rate of ██████  Ex. 10.  EcoFactor countered with a █████████████████ ████████████████████████ or █████████████████████ evidencing EcoFactor's view that an ongoing royalty is distinct from a ████████████████.  *Id*. In another email, counsel for ████████ recounted a back-and-forth with EcoFactor's counsel over the amount of a lump-sum payment and proposed ██████ to which the parties ultimately agreed, without *ever* referencing a rate of ████ per unit.  Ex. 11.  Finally, EcoFactor produced a redlined draft agreement reflecting Daikin ██████████ that █████ should be █████████ ███████████  Ex. 12.[6]

## III.   LEGAL STANDARD

Federal Rule of Evidence 702 permits an expert to testify in the form of an opinion if the opinion is "based on sufficient facts or data" and "the testimony is the product of reliable principles and methods."  Fed. R. Evid. 702.  The district court has a "gatekeeping" obligation to

---

[5] Some of the emails referred to EcoFactor's ███████████ EcoFactor represented that ██████ ████ existed.  Ex. 8.  Furthermore, although some of the emails appeared to reference the licensees' unit sales, the figures were redacted, and EcoFactor represented that it could not produce unredacted versions due to confidentiality issues in related ITC actions.  *See id.*

[6] Google moved to compel EcoFactor to produce data and calculations underlying the lump sums.  *See* Ex. 8.  After the Court ordered EcoFactor to produce anything it planned to rely on at trial, ECF No. 95, EcoFactor produced no additional information, representing that had "already produced, and is not withholding, the non-privileged information supporting Mr. Kennedy's proposed ████████████████  Ex. 6.

ensure that the proffering party has met its burden of satisfying Rule 702.  *Daubert*, 509 U.S. at 595, 600–601.  Although the focus of the reliability inquiry is on the principles and methodology an expert uses in forming the opinions, in conducting the reliability analysis, the court must also consider whether "there is simply too great an analytical gap between the data and the opinion proffered."  *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## IV.    ARGUMENT

Mr. Kennedy's damages opinion fails to satisfy Rule 702 and *Daubert* and must be excluded in its entirety.[7]  First, Mr. Kennedy's opinion that ▮▮▮ per unit is an established or reasonable royalty is unsupported by any reliable methodology and is not based upon sufficient facts or data.  Second, Mr. Kennedy's opinion that ▮▮▮ per unit is a reasonable royalty is also unreliable because the three licenses he relies on in support of that position are not economically comparable to the hypothetical negotiation.

### A.    The Court should exclude Mr. Kennedy's opinion that ▮▮▮ is an established royalty because it is unsupported by reliable methodology or sufficient facts.

The Court should exclude Mr. Kennedy's opinion that ▮▮▮ per unit is a reasonable royalty because his opinion is unsupported by any reliable methodology and unsupported by the evidence.  Mr. Kennedy failed to (1) show that ▮▮▮ had ever been applied as a per-unit royalty rate, (2) confirm the opinions of EcoFactor's CEO or litigation counsel as to the reasonable royalty rate, or (3) consider any evidence contradicting that the lump sums were derived from a ▮▮▮ royalty rate.

As an initial matter, Mr. Kennedy's report repeatedly asserts that ▮▮▮ per unit represented an ▮▮▮▮▮▮▮▮▮  *See* Kennedy Rept. ¶¶ 268, 269, 313, 318.  But in his

---

[7] Counsel for Google and EcoFactor met and conferred about this *Daubert* motion on November 11, 2021, and EcoFactor indicated that it would oppose Google's motion.  *See* Porto Decl. ¶ 17.



deposition, Mr. Kennedy backtracked, claiming that he was not opining that ▓ was

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Kennedy Depo. at 91:12–17.[8]  He nonetheless opined that the

rate is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

and that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 89:8-24.  As

explained herein, Mr. Kennedy cannot substantiate that ▓ is an ▓▓▓▓ per-unit royalty

rate—in any sense.

> 1.    Mr. Kennedy's failure to perform any calculation to show that ▓ had been applied as a per-unit royalty renders his opinion unreliable.

Mr. Kennedy performed no calculation to confirm tha ▓ had been applied as a per-

unit royalty rate to calculate the lump sums agreed upon with ▓▓▓▓▓▓▓▓▓

Mr. Kennedy's report makes no mention of the three licensees' sales figures, nor do the licenses

include any information related to past or projected sales.  *See generally* Exs. 1-4.  In fact, Mr.

Kennedy testified that he had never seen that information, nor had he requested it.  Kennedy

Depo. at 111:24-25, 130:13-14.  Instead, he based his opinion on the face of the licenses

themselves, and in particular, the ▓▓▓▓ clause purporting to state EcoFactor's belief as to a

reasonable royalty.  *See id.* at 131:10-12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓

Mr. Kennedy's failure to independently assess his proffered opinion renders it unreliable.

In *Pavo Solutions v. Kingston Technology*, 2019 WL 8138163, at *5 (C.D. Cal. Nov. 20, 2019),

for example, the court excluded an expert opinion on a per-unit royalty derived from a license

agreement, because the expert admitted that she "ha[d] no knowledge or evidence of sales

---

[8] There is thus no dispute that Mr. Kennedy has failed to show in his report that the factors necessary for satisfying an "established" royalty are met here.  Counsel for EcoFactor confirmed during the parties' meet-and-confer regarding this motion that Mr. Kennedy was not opining that ▓ was "established" in the legal sense.  Porto Decl. ¶ 17.

figures under [the] agreement." *Id.* Because the expert had "not demonstrated how the lump sums extracted from those agreements could be accurately converted to a royalty rate," her opinion was unreliable. *Id.* Similarly, in *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010), the Federal Circuit refused to uphold a damages award based in part on two lump-sum agreements, because "[n]either license describe[d] how the parties calculated each lump sum, the licensees' intended products, or how many products each licensee expected to produce." *Id.*; *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1368 (Fed. Cir. 2021) (expert opinion unreliable where he had "offered no testimony as to how the $21 million lump-sum payment could be converted to any royalty rate").

Mr. Kennedy's opinion must be rejected on the same basis as the expert's opinion in *Pavo Solutions* and the jury's damages verdict in *Wordtech*. As in *Pavo*, Mr. Kennedy conceded that he had no sales numbers with which to calculate the per-unit royalty rate. Here too, Mr. Kennedy was "incapable" of demonstrating how the lump sums had been calculated, because he lacked the "relevant sales numbers that are required to derive an accurate royalty rate." *Pavo Solutions*, 2019 WL 8138163, at *5; *see* Kennedy Depo. at 129:23. Accordingly, Mr. Kennedy had no idea whether a discount had been applied to the lump sums, nor could he explain how the settlement agreement with ███████ for example, had resulted in a round sum of ██████ despite the fact that it was allegedly based on a per-unit royalty of █████ *See* Kennedy Depo. at 153:6-9 ███████████████████████████████████████ And like the patentee in *Wordtech*, Mr. Kennedy had no "idea of the [licensees'] volume of sales or projected sales." 609 F.3d at 1320. Because Mr. Kennedy's opinion would leave the jury with "almost no testimony with which to recalculate in a meaningful way the value of any of the lump-sum agreements to arrive at the per-unit royalty damages award," his opinion is unreliable. *Pavo*

11

*Solutions*, 2019 WL 8138163, at *5; *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*, 2016 WL 4426681, at *25 (D. Md. Aug. 22, 2016) (excluding licenses where expert was "unaware of any information about the amount of sales . . . made under the license").

>        2.      Mr. Kennedy's reliance on statements by Mr. Habib and EcoFactor's counsel without independent analysis renders his opinion unreliable.

Mr. Kennedy's reliance on testimony of and conversations with EcoFactor's CEO and counsel supporting ████ as a per-unit royalty rate without independent analysis is insufficient to satisfy Rule 702. *See* Kennedy Rept. ¶ 197 (citing, *inter alia*, Mr. Habib's deposition testimony and email from ████████████████████ Mr. Kennedy acknowledged that he did not know whether Mr. Habib himself had seen sales numbers, and Mr. Habib's own deposition testimony made clear that Mr. Habib had ████████ *See* Kennedy Depo. 111:10-13. And EcoFactor's counsel never provided Mr. Kennedy with data that would support his opinion of ████ as a per-unit royalty, as confirmed by their failure to produce such information. Mr. Kennedy's references to statements by EcoFactor's CEO and counsel thus provide no basis for his opinion that ████ is an established or reasonable per-unit royalty. *See MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*, 132 F. Supp. 2d 289, 292–93 (S.D.N.Y. 2001) (rejecting expert testimony in reliance on third-party attorney where "[t]he information . . . was neither verified nor submitted in a way that permits meaningful review," and "[t]here [was] no indication that [the attorney] was a source of accurate or reliable expert information").

Even if Mr. Habib or EcoFactor's counsel were reliable sources of information (they are not, given their interest in the litigation outcome), an expert may not rely upon a party's or attorney's statements without independent analysis. In *Info-Hold v. Muzak*, 2013 WL 4482442, at *5 (S.D. Ohio Aug. 20, 2013), *rev'd in part on other grounds*, 783 F.3d 1365 (Fed. Cir. 2015), for example, the court excluded the testimony of an expert who had "relie[d], without

verification, on Plaintiff's employees and Plaintiff's counsel for information crucial to his opinions." The expert had simply accepted, for example, that all of the "Defendant's … revenues were driven by demand for the [accused products,]" "because he [had been] told to make this assumption by [] Counsel." *Id.*, at *5. Because the expert "did not independently verify anything that Plaintiff's CEO or Plaintiff's counsel told him," his opinion was unreliable. *Id.* So too here. As in *Info-Hold*, Mr. Kennedy's testimony parroting unverified statements from EcoFactor's CEO and its attorneys is "more advocacy for Plaintiff than expert testimony." *Id.*, at *5. Because Mr. Kennedy accepted EcoFactor's statements "without conducting his own investigation or independent verification, his opinion is unreliable." *Id.*; *see also US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009) (rejecting expert testimony that "relied almost exclusively on [the CEO's] speculative estimates without any independent verification").[9]

            3.        Mr. Kennedy's opinion is also unreliable because he ignores evidence explicitly contradicting ▌▌▌ as an established royalty rate.

Mr. Kennedy's opinion is also unreliable because he failed to account for evidence contradicting his opinion that ▌▌▌ per unit was used to derive the lump-sum amounts. Mr. Kennedy disregarded explicit statements that ▌▌▌▌▌▌▌ disagreed that the lump sums they paid reflected a per-unit royalty rate. *See* Kennedy Rept. ¶¶ 197, 202; Ex. 2; Ex. 3. Furthermore, Mr. Kennedy failed to address (or even cite) the ▌▌▌ agreement's statement that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *See* Kennedy Rept. ¶¶ 197, 202. Instead, Mr. Kennedy baldly concludes that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

---

[9] Mr. Kennedy's opinion was previously excluded based on his adoption of the opinion of an unreliable expert. *See Apple Inc. v. Wi-LAN Inc.*, No. 14-cv-2235, ECF No. 548 (S.D. Cal. Jan. 3, 2019). The court also noted that Mr. Kennedy's analysis raised "concerns about the reliability," and "perhaps, arbitrariness of his opinions." *Id.*

███████████████████████████ *Id.* ¶ 344.

Mr. Kennedy cannot base his royalty rate on agreements that are incompatible with his opinion.  In *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1368 (Fed. Cir. 2021), for example, the court affirmed the exclusion of expert testimony that a license agreement contained a reasonable royalty rate of 25%, which was "not sufficiently tethered to the evidence presented."  *Id.*  "Instead of resting on an accepted scientific theory or technique," the expert's proposed royalty rate "rest[ed] on an inference from the most favored customer clause that [went] well beyond what the clause implies and [was] incompatible with the [license] agreement as a whole."  *Id.*  Likewise, here, Mr. Kennedy's royalty rate is based on an unsupported inference related to each agreements' "whereas" clause that is otherwise unsupported and is incompatible with the agreements as a whole.

In addition to ignoring contradictory terms within the licenses themselves, Mr. Kennedy disregarded communications undermining $5.16 as a per-unit royalty rate.  *See* Ex. 9 at 2 ███████ commenting that proposed per-unit royalty rates ██████████████ Ex. 10 █████ proposing lump sum without reference to █████ per-unit); Ex.12 █████ disputing that ███████ ████████████████████████████████████ Mr. Kennedy testified that although he was aware of statements that showed the licensees ████████████████████ ████████████████████ it was █████████████████████████████████████████ ████████████████████████████ Kennedy Depo. at 164:18-21.

Given the lack of any evidence supporting a rate of █████ Mr. Kennedy's opinion is effectively "plucked . . . out of nowhere."  *Exmark Mfg. Co. v. Briggs & Stratton Power Products Group*, 879 F.3d 1332, 1351 (Fed. Cir. 2018) ("It is not enough for an expert to simply assert that a particular royalty rate is reasonable in light of the evidence without tying the

proposed rate to that evidence."). Mr. Kennedy's failure to address any evidence tending to undermine his "litigation-created conclusion" of ██████ as a per-unit royalty renders his opinion unreliable. *See In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176, 1184 (N.D. Cal. 2007) (rejecting as unreliable opinion where "[the expert] reaches his opinion by first identifying his conclusion . . . and then cherry-picking observational studies that support his conclusion and rejecting or ignoring . . . the evidence that contradicts his conclusion."); *Bank of N.Y. Mellon Tr. Co., Nat'l. Assoc. v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 648 (S.D.N.Y. 2012) (excluding damages calculation based on expert's "faulty assumption" that contradicted contractual terms).

**B.      Kennedy's opinion that ██████ is a per-unit reasonable royalty must also be excluded because the licenses upon which he relied are not comparable.**

Mr. Kennedy's opinion is also unreliable because the agreements he relies on to show that ██████ is a reasonable per-unit royalty rate are not comparable to the hypothetical negotiation. The second *Georgia Pacific* "factor examines whether the licenses relied [upon] . . . are sufficiently comparable to the hypothetical license." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Accordingly, "comparisons of past patent licenses to the infringement must account for the technological and economic differences between them," *Wordtech Sys., Inc.*, 609 F.3d at 1320, and "[t]he testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded," *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011).

Here, Mr. Kennedy's testimony as to the licenses with ████████████████ should be excluded as because they are not economically comparable to the hypothetical negotiation. Mr. Kennedy (1) failed to consider that the licenses were executed to settle pending litigation, (2) failed to consider that the patents licensed were patent portfolios distinct from

15

those relevant to the hypothetical negotiation, and (3) opined that ███ was the per-unit royalty rate regardless of the number of patents licensed.

1.    Mr. Kennedy fails to take into account that the "comparable" licenses were negotiated after the date of hypothetical negotiation to settle pending litigation.

Mr. Kennedy's opinion that ███ per unit is a reasonable royalty should also be excluded because he failed to provide any assessment of the litigation context of the three settlement agreements.  "The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics, Inc. Quanta Comput., Inc.*, 694 F.3d 51, 77 (2012).  Although litigation agreements may be considered, "because litigation licenses are likely influenced to some degree by the litigation, the Court must apply scrutiny in determining the admissibility of such licenses," assessing the licenses on a "case-by-case basis." *PerdiemCo, LLC v. Industrack LLC*, 2016 WL 6611488, at *4 (E.D. Tex. Nov. 9, 2016).  Because Mr. Kennedy failed to account for the "drastically different backdrop" of the litigations with ███ Schneider, and Johnson, his opinion is unreliable and should be excluded.  *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016).

In his comparability assessment of the █████████ licenses, Mr. Kennedy acknowledges only that: █████████████████████████████████████
███████████████████████████████████████████████
██████████████████████  Kennedy Rept. ¶ 347.  Other than these boilerplate observations—which were identical for both █████████ Mr. Kennedy provided no background information about the litigation preceding these agreements.  *M2M*, 167 F. Supp. 3d at 677 (rejecting damages opinion where the expert "provides an almost identical recitation of comparability" for two licenses).  As for ██████, Mr. Kennedy failed to even offer a generic acknowledgment or description of the litigation.  *See* Kennedy Rept. ¶¶ 345-349.   Nor did Mr.

Kennedy provide these basic facts in his deposition, instead he "virtually ignores" the fact that the Schneider license was a litigation settlement. *M2M Sols. LLC*, 167 F. Supp. 3d at 678.

On all three licenses, Mr. Kennedy failed to describe basic facts about the litigation. He does not describe, for example, whether the settlements were executed early in the litigations, where the threat of high litigation costs is greatest, *see Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017), or on "the eve of trial," *LaserDynamics*, 694 F.3d at 77 (excluding patentee's reliance on settlement entered into just before trial after the accused infringer "had been repeatedly sanctioned," which "reflects not the value of the claimed invention but the strong desire to avoid further litigation."). Mr. Kennedy also ignored concrete evidence that the settlement agreements were influenced by the COVID-19 pandemic and appeared to be motivated by the cost of defense. *See* Ex. 13 at 1 ████ email noting that ████

████████████████████████████████████████████████████████████

and ████████████████████████████████████████████

████ Similarly, emails from ████████ show that it was also motivated to settle by ████

████████████ *See* Ex. 11. Failing to describe these litigations—let alone take that context into account—renders Mr. Kennedy's opinion unreliable.

> 2. Mr. Kennedy's failure to account for EcoFactor's entire portfolio further undermines his opinion.

Mr. Kennedy also failed to evaluate the differences between the patents asserted against the licensees and those to be licensed in the hypothetical negotiation. With respect to the ████ and ████ licenses, Mr. Kennedy simply noted that seven patents were asserted by EcoFactor, that those patents were ████████████████████████

████████████ and that ***some*** of those patents are also asserted against Google. *See* Kennedy Rept. ¶¶ 347, 348. As an initial matter, Mr. Kennedy's assertion that only seven patents were the

focus of the negotiations with ███████████ is unsupported.  Mr. Kennedy cites a
███████████████ but he includes no details on the substance of that conversation.
Kennedy Rept. ¶ 347.  And Mr. Kennedy notes that exhibits to the agreements ████████
█████████████ but Mr. Kennedy ignores that the █████████ exhibits
also ██████ any █████████████ based on the asserted patents and ████████
███████████████ *See id.* ¶ 347; Ex. 2 at 10; Ex. 3 at
10.  Most problematic, Mr. Kennedy fails to acknowledge that most of the patents asserted
agains ███████████—four out of the asserted seven—are not included in the three-
patent license that would emerge from a hypothetical negotiation here.[10]

Furthermore, Mr. Kennedy failed to analyze the fact that the settlement agreements with
all three licensees licensed EcoFactor's *entire* patent portfolio, not just the three patents
implicated in the hypothetical negotiation.  "Particularly where a license covers a portfolio of
patents," the patentee must present evidence sufficient to allow the jury to weigh the value of the
patents against the "value of the features and services covered by the license."  *LaserDynamics
Inc. v. Quanta Comput., Inc.*, 2011 WL 7563818, at *3 (E.D. Tex. Jan. 7, 2011).  But Mr.
Kennedy failed to include any basic facts about EcoFactor's portfolio:  he did not provide the
number of patents or applications included in the portfolio at the time of the hypothetical
negotiation, list the patents' expiration dates, or even generally consider the patents' subject
matter.  *See id.*  Instead, Mr. Kennedy ignored that EcoFactor's portfolio included 35 issued

---

[10] And unlike the settlement agreements with ███████████, none of the patents asserted
against ██████ are at issue here.  *See* Kennedy Rept. ¶ 345.  Given the lack of overlap between
the asserted patents against ██████ and those here, Mr. Kennedy's failure to provide any
comparability analysis renders his opinion unreliable.  *AVM Techs., LLC v. Intel Corp.*, 927 F.
Supp. 2d 139, 144 (D. Del. 2013) ("[A] single settlement agreement on a different patent without
any analysis of the settlement context is not a reliable method for calculating damages.").

patents and 17 pending applications around the time of the settlement agreements. *See* Ex. 14.[11]

Mr. Kennedy's failure to consider these "distinguishing facts" related to a portfolio license renders his opinion unreliable. *See MLC*, 10 F.4th at 1375 (license not comparable where the "agreement granted a license to a portfolio of forty-one U.S. and international patents and . . . applications," and only "one of those [was] at issue"); *Omega Patents., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1380 (Fed. Cir. 2021) (overturning damages verdict where "[m]ost glaringly . . . each of the eighteen proffered licenses involve[d] numerous patents, in contrast to a hypothetical negotiation for a single-patent license"). Although "allegedly comparable licenses may cover more patents than are at issue in the action," the patentee is "required to account for such distinguishing facts when invoking the licenses to value the patented invention." *Id.* Because any comparison of the licensed portfolio to the patents in the hypothetical negotiation is "utterly lacking" here, Mr. Kennedy's opinion as to the three licenses must be excluded. *Id.* at 1381.

> 3.   Mr. Kennedy's opinion that ▮▮▮ applies no matter the number of patents or claims allegedly infringed fails to satisfy Rule 702.

Finally, Mr. Kennedy's failure to adjust his royalty rate regardless of the number of EcoFactor's asserted patents ultimately found infringed makes his opinion even more unreliable. *See* Kennedy Rept. ¶ 362 (stating that opinion would be ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮; *see* Kennedy Depo. 45:11-17 (same). In the absence of comparable licenses, courts have rejected expert opinions that a defendant "should pay the same rate no matter how many claims or how many of the patents it infringes." *Omega Patents*, 13 F.4th at 1379. In *Omega Patents*, for example, Omega's damages expert testified that "whether

---

[11] Mr. Kennedy's opinion that the royalty rate should be the same regardless of whether the license included a portfolio is contradicted by the negotiations with the licensees. In an email, EcoFactor counsel offered ▮▮▮ a settlement of ▮▮▮ for a ▮▮▮▮▮▮▮▮ Ex. 15 at 4.

it's one patent or all the patents, the way that Omega licenses them is, it's five bucks . . . be it

one or two or three or four or 30." *Id.* at 1379.  According to Omega's CEO, the company's

licensing policy was "one price for all . . . the first patent's five bucks.  Everything else thereafter

Omega just threw in."  *Id.* (cleaned up).  Omega's damages expert thus opined that the defendant

"should pay the same rate no matter how many claims or how many of the patents it infringes."

*Id*.  Overturning the jury's damages verdict, the Federal Circuit explained that "absent evidence

of a comparable license or comparable negotiation to support an identical $5.00 rate for a one-

patent license to the [patent in the hypothetical negotiation]," the expert's "patent/claim-

independent approach" failed to account for the incremental benefit of the patent-in-suit.  *Id.*

Likewise, Mr. Kennedy's opinion that ██████ is the per-unit royalty no matter the number

of patents must be rejected, because such a "theory would permit [EcoFactor] to obtain a

particular royalty rate merely by relying on its internal policy. . . without regard to

comparability."  *Id.*  This opinion "would improperly permit [EcoFactor] to hide behind its

generic licensing arrangement," and avoid accounting for the incremental value of the patents.

*Id.*  Mr. Kennedy's opinion that ████ is a per-unit royalty rate regardless of the number of

patents or claims ultimately infringed provides another basis for its exclusion.

## V.    CONCLUSION

If Mr. Kennedy cannot testify as to a per-unit royalty rate of ████ or the licenses

purportedly supporting that rate, nothing remains of Mr. Kennedy's opinion, which was limited

to a per-unit royalty of ████  *See* Kennedy Depo. 43:12-13.  Google thus respectfully requests

that the Court exclude Mr. Kennedy's expert testimony in its entirety.

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated: November 19, 2021

By:        */s/ Jennifer A. Huber, with permission by*
        *Michael E. Jones*

Shamita Etienne-Cummings
(*admitted to the Western District of Texas*)
Allen & Overy LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3810
GoogleEcofactorWDTX@AllenOvery.com

ROBERT A. VAN NEST
LEO L. LAM
JENNIFER A. HUBER
KRISTIN HUCEK
ANNA PORTO
PATRICK E. MURRAY
GREGORY WASHINGTONROBERT A.
VAN NEST
LEO L. LAM
JENNIFER A. HUBER
KRISTIN HUCEK
ANNA PORTO
PATRICK E. MURRAY
GREGORY WASHINGTON

Bijal V. Vakil
(*admitted to the Western District of Texas*)
Eric Lancaster (admitted *Pro Hac Vice*)
Allen & Overy LLP
530 Lytton Avenue, 2nd Floor
Palo Alto, CA 94301
Telephone: (650) 388-1703
GoogleEcofactorWDTX@AllenOvery.com

633 Battery Street
San Francisco, CA 94111-1809633 Battery
Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400 415 391 5400
Facsimile:  415 397 7188415 397 7188
econest-kvp@keker.com

POTTER MINTON
Michael E. Jones (TX Bar No. 10929400)
mikejones@potterminton.com
Patrick C. Clutter (TX Bar No. 24036374)
patrickclutter@potterminton.com
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

Attorneys for Defendant GOOGLE LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on November 19, 2021.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on November 19, 2021.

*/s/Michael E. Jones*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order in this case and Judge Albright's Standing Order Regarding Filing Documents Under Seal in patent Cases and Redacted Pleadings.

*/s/ Michael E. Jones*

22

1762296