# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC. | |
| Plaintiff, | Case No. 6:20-cv-00075-ADA |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

### MOTION TO EXCLUDE EXPERT OPINIONS OF TODD SCHOETTELKOTTE

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................... 1

   A.   MR. SCHOETTELKOTTE IMPROPERLY RELIES ON AN ECONOMICALLY NON-COMPARABLE ASSET PURCHASE AGREEMENT, NON-COMPARABLE VALUATIONS, AND NON-COMPARABLE INTERNAL DOCUMENTS THAT WERE NOT PRODUCED IN THIS CASE. . 1

     *1.   The Trane Asset Purchase Agreement and Related Trane Internal Email* .................. *1*

     *2.   "Assumed" Rate* ████████████████████████ ........................... *7*

     *3.   Company Valuations Based on Comparisons to High-Level Financials of Other Companies* ....................................................................................................... *8*

   B.   THE INTERNAL TRANE DOCUMENTS ON WHICH MR. SCHOETTELKOTTE RELIES ARE NOT PROPERLY IN THE RECORD FOR THIS CASE. .................................................. 9

   C.   MR. SCHOETTELKOTTE SHOULD NOT BE PERMITTED TO RELY ON USAGE DATA THAT WAS WITHHELD UNTIL AFTER THE CLOSE OF FACT DISCOVERY AND OPENING REPORTS, AND OF WHICH EVEN HE HAS NO UNDERSTANDING ......................... 13

III. CONCLUSION ............................................................................................... 17

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

# TABLE OF AUTHORITIES

**Cases**

*CSIRO v. Cisco*,
  809 F.3d 1295 (Fed. Cir. 2015) .................................................................... 7

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .................................................................... 1

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997) ...................................................................................... 6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ........................................................................ 2

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ................................................................ 2, 5

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
  No. C 08-04990 JW, 2012 WL 2339762 (N.D. Cal. June 7, 2012) ............. 8

*Oracle Am., Inc. v. Google Inc.*,
  798 F. Supp. 2d 1111 (N.D. Cal. 2011) ........................................................ 7

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
  No. 6:18-CV-00038-ADA, 2019 WL 6499488 (W.D. Tex. Oct. 11, 2019) ........... 6

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015) .................................................................... 6

*Trustees of Bos. Univ. v. Everlight Elecs. Co.*,
  141 F. Supp. 3d 147 (D. Mass. 2015) ......................................................... 17

*Uniloc U.S.A. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) .................................................................... 1

*United States v. Brownlee*,
  744 F.3d 479 (7th Cir. 2014) ...................................................................... 17

**Rules**

Fed. R. Civ. P. 26 ........................................................................... passim
Fed. R. Civ. P. 37 ........................................................................... passim
Federal Rule of Evidence 702 ........................................................... 6, 14, 16

RESTRICTED – ATTORNEYS' EYES ONLY

## I.      INTRODUCTION

Plaintiff EcoFactor, Inc. ("EcoFactor") hereby respectfully moves to strike certain opinions from the rebuttal expert report of Google's damages expert, Mr. Schoettelkotte. The first set of opinions relate to an economically non-comparable asset purchase agreement, non-comparable internal documents, and non-comparable valuations. These opinions should be excluded, not only because their non-comparability is well established under Federal Circuit law, but also because Google failed to disclose its intention to rely on this information in response to numerous discovery requests by EcoFactor, and in fact, much of the information at issue was never even produced in this case. The second set of opinions relate to usage data produced for the first time with Google's rebuttal expert report, despite the fact that the information was responsive to numerous discovery requests.  Google should be precluded from relying on this usage information, as EcoFactor was never provided the opportunity to take discovery on it, and Mr. Schoettelkotte himself did nothing to ascertain the reliability of the document.

## II.      ARGUMENT

### A.      Mr. Schoettelkotte Improperly Relies On An Economically Non-Comparable Asset Purchase Agreement, Non-Comparable Valuations, And Non-Comparable Internal Documents That Were Not Produced In This Case.

#### 1.      The Trane Asset Purchase Agreement and Related Trane Internal Email

For a damages expert, such as Mr. Schoettelkotte, to present evidence of an agreement as part of his damages opinion, the Federal Circuit requires that "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc U.S.A. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) ("[U]se of past patent licenses under factors 1 and 2 must account for differences in the … economic

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

circumstances of the contracting parties."). It is Mr. Schoettelkotte's (and Google's) burden to establish the economic comparability of the agreements on which he relies. *Lucent Techs., Inc. v. Gateway, Inc*., 580 F.3d 1301, 1329 (Fed. Cir. 2009). Moreover, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability … does not suffice." *LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 79 (Fed. Cir. 2012).

Mr. Schoettelkotte relies on an Asset Purchase Agreement between Trane U.S., Inc. ("Trane") and EcoFactor.  In the conclusion of his analysis of *Georgia Pacific Factor* 1, he states:

> Of all the agreements considered under this factor, the transaction with Trane is the most relevant. As an initial matter, the transaction with Trane was outside the context of litigation. In addition, the rights to EcoFactor's patent portfolio were compensated in a ███████████ structure and includes two of the patents at issue (and would have provided rights to the third patent at issue when it issued in January 2020).

Ex. A, Expert Report of W. Todd Schoettelkotte Relating to EcoFactor's Damages, October 22, 2021 ("Schoettelkotte Rpt.") ¶ 141.[1]

This opinion should be excluded for two reasons.  First, the Trane transaction itself is clearly not comparable to the hypothetical negotiation.  Second, the ███████████ in that transaction was expressly *not* related to any patent rights.

In the Asset Purchase Agreement, Trane purchased ████████████████████████ ███████████████████████████████████████████████████████████ ███████████ Schoettelkotte Rpt. ¶ 118.  Trane paid EcoFactor ███████ for the purchased assets. *Id.* As part of this transaction, EcoFactor also granted Trane a license and covenant not to sue to its patent portfolio. *Id.* ¶¶ 119-120. ███████████████████████ ███████ █ ████████████████████████████████████ ████████ ██████████████████████████████████████████

---

[1] Unless indicated otherwise, all citations to exhibits herein are to the Declaration of Reza Mirzaie in support of this motion.

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████

The patent license itself is an exhibit to the Asset Purchase Agreement, and it confirms the patent license is a sub-part of the larger agreement, ████████████████████████████ ████████ ██████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████. And, consistent with the Agreement, the patent license does not disclose ████████████████ of any kind for patent rights.

Because the Trane Asset Purchase Agreement and its subsidiary patent license do not provide ████████████████████████████████████ and in fact expressly *excludes* patents from the ████████████ in consideration that Trane paid under the agreement, Mr. Schoettelkotte goes outside of the Agreement and relies on an internal Trane E-mail ████████ ██████████ to assert a theory that, contrary to the express terms in the Agreement and in the patent license, the ████████████ does include a payment for patent rights. Mr. Schoettelkotte's theory relies on a single line from an internal Trane Email ████████████████████████████████ ████████████████████████████████████████. ████████████████

██████████████████████████████████████████████████

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

████████████████████████████████████████████████████

████████████████████████████████████████████  ██

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████  This  ████████  figure does not appear in the Trane

Agreement, or anywhere else in the contemporaneous record.  There is no evidence that Trane

ever shared this email, or any of the numbers in it, with EcoFactor.  *Id.* at 70:21-25.

This  ████████████  figure underlies Mr. Schoettelkotte's entire analysis of the Trane

transaction.   In his Factor 15 discussion concluding his reasonable royalty analysis, Mr.

Schoettelkotte states:

> As discussed under Factor 1, EcoFactor executed an Asset Purchase Agreement in
> February 2019 with Trane that included rights to EcoFactor's patent portfolio valued at
> ████████████  This transaction would provide the parties with a data point to consider in
> which EcoFactor willingly licensed another party within the HVAC industry for ████
> ████  as well as providing a reference point in terms of the value of EcoFactor's patents. .
> . . given that EcoFactor licensed its patents to Trane at a value of ████████████ to Trane
> (outside the context of litigation), this would effectively serve as the recognized lower
> end of the range of values the parties would consider.
> Schoettelkotte Rpt. ¶ 186.

*See also id.* ¶ 187 (relying on the ████ figure to calculate the "deduction" from any acquisition

price EcoFactor would be willing to accept for a mere non-exclusive license).  Mr. Schoettelkotte

also criticizes EcoFactor's damages expert David Kennedy for not relying on the ████████

figure.  *See id.*  ¶ 109 (claiming "a patent license from EcoFactor—outside the context of

litigation—indicates that EcoFactor's patents were valued at no more than ████████.").

The Trane Asset Purchase Agreement is not comparable to the hypothetical negotiation.

It is an asset purchase agreement, and all ████████████████████████████████████████

4

████████████████████████████████████████████████████████

████████████████████   Ex C,  EF_0665732-EF_0666057 at EF_0665737-738. The patent

license entered into as a sub-part of this agreement is also not comparable. Unlike the Trane

Agreement, the license at issue in the hypothetical negotiation is not a small part of a much bigger

deal – it is the deal. *See* Schoettelkotte Dep. 60:22-61:20. Thus, a patent license like the one

granted to Trane, which was "directed to a large collaboration far more complicated than the

patent," is not comparable to a hypothetical negotiation involving only "the patent covering the

infringing ... tool at issue." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, n.7 (Fed.

Cir. 2009).  Mr. Schoettelkotte's reliance on this non-comparable agreement should therefore be

excluded.  And to the degree Trane's ████████████ is, as Mr. Schoettelkotte claims, part

of the Trane transaction,[2] royalties or other payments made pursuant to a non-comparable

agreement are not relevant to the determination of a reasonable royalty.

Moreover, Mr. Schoettelkotte's opinion that the ████████ figure from the ████████

email means that Trane valued EcoFactor's patents at ██████ is not supported by the

evidence – when in fact, this theory cannot be correct in light of the evidence. This Court has held

that in ruling on whether an expert opinion is admissible under Rule 702, "the Court must also

consider whether, for a given conclusion, 'there is simply too great an analytical gap between the

data and the opinion proffered.'"  *ProTradeNet, LLC v. Predictive Profiles, Inc.*, No. 6:18-CV-

00038-ADA, 2019 WL 6499488, at *2 (W.D. Tex. Oct. 11, 2019), quoting *General Electric Co.

v. Joiner*, 522 U.S. 136, 146 (1997). Thus, "'a district court may exclude evidence . . .  where the

reasoning or methodology is not sufficiently tied to the facts of the case.'" *Id.*, quoting *Summit 6,

LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).      And here, Mr.

---

[2] 69:14-16 (the ████████████ "clearly this was something that -- that was part of the ██
██ agreement the parties entered into, as discussed here.").

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

Schoettelkotte's assertion throughout his report that a portion of the ██████ Trane paid was

for a patent license is contradicted ████████████████████████████████████████

████████████████████████      The fact that Trane may have ████████████

████████████████████████      does not change that fact.

Moreover, the email on which he relies does not relate to the actual transaction, as even the email

states, like the Agreement, that all of the ████████ paid by Trane was for the purchased assets.

The ████████ referred to in that email was therefore directed to ████████████ about a

transaction that never happened, which would include ████████████████████

which was not the transaction Trane and EcoFactor ultimately agreed to.

Because the Trane E-mail is ████████████████████████, Mr. Schoettelkotte

has failed to provide any evidence to support his theory that it represents what Trane would have

offered EcoFactor for a patent license or patent acquisition. Perhaps the facts would be different

if Trane had ever proposed ████████████ as payment for a patent license, but that is not what

happened here. Hypothetical royalty rates proposed in offers to license patents can, in some

circumstances, be relevant. In *CSIRO v. Cisco*, 809 F.3d 1295, 1303-04 (Fed. Cir. 2015), for

example, the Federal Circuit found no methodological fault with the use of CSIRO's "Rate Card"

as part of the hypothetical negotiation analysis despite the fact that "CSIRO did not execute any

licenses under the Rate Card terms" because the negotiators were the parties to the hypothetical

negotiation, negotiating about just the patent in suit. *See also Oracle Am., Inc. v. Google Inc.*, 798

F. Supp. 2d 1111, 1121 (N.D. Cal. 2011) (basing a real-world "offer" of the patents-in-suit "as

the starting point" for the hypothetical negotiation).  But such offers are relevant as an indication

of a market price acceptable to the offeror.  By contrast, ████████████████████

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

███████████████. There is no evidence it was ever shared with EcoFactor or that it represents what Trane would offer or what EcoFactor would accept.

## 2. "Assumed" Rate ████████████████████████████
███████████

Mr. Schoettelkotte also relies on a █████████████ Trane document ███████████████████ █████████████████████████ which he states "is related to the EcoFactor transaction," ████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ Schoettelkotte Rpt. ¶ 125.  *See also id.* ¶ 85 (████████████████████████████████████████ █████████.  Mr. Schoettelkotte does not know the source of ███████████████████████████ ████████████████████████████████ Schoettelkotte Dep. 75:6-15 ("I don't have awareness of that specifically. ████████████████████████").  There is no evidence this document was provided to EcoFactor, or any other document ████████████████████████████ or that Trane otherwise proposed this rate to EcoFactor.  *Id.* at 75:16-24.

Like his reliance on the ████████████████████ internal email, Mr. Schoettelkotte's reliance on ████████████████ an internal Trane document regarding ██████████████████ ████████████████ is improper and unconnected to the facts of the case.  The actual transaction to which this document relates is non-comparable to the hypothetical negotiation, and the hypothetical rate in this document is merely assumed ████████████████████████████████ ████████████████████████████ There is no evidence that Trane regarded this to be a reasonable rate for the patents-in-suit, and certainly no evidence that it ever communicated, let alone proposed, this rate to EcoFactor.

Mr. Schoettelkotte's report discloses no analysis of these differences and no evidence that they are immaterial. Instead, he simply assumes that anything written down in an internal Trane

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

document is proof of how Trane valued EcoFactor's patents, and then he assumes that these

████████████████████████ are comparable without evidentiary support.  Because Mr.

Schoettelkotte's assumptions are contrary to the facts of the case, they should be excluded.

### 3. Company Valuations Based on Comparisons to High-Level Financials of Other Companies

Mr. Schoettelkotte also relies on "409A" valuations of EcoFactor's common stock dating

from 2017 and 2020, and he criticizes Mr. Kennedy for a failure to rely on these documents,

opining :

> [A] June 2017 valuation concludes EcoFactor's value at approximately ████████, and an October 2020 valuation concludes EcoFactor's value at approximately ████████. Given that these valuations are based on EcoFactor's fair market value (which includes intangible assets), these conclusions suggest the value of EcoFactor's patent portfolio could be no more than ████████ (in 2017) and ████████ (in 2020).

Schoettelkotte Rpt. ¶ 106. However, reliance on valuation of a company as a whole is not an

acceptable method of valuing that companies' patents.  See *Mformation Techs., Inc. v. Rsch. in*

*Motion Ltd*., No. C 08-04990 JW, 2012 WL 2339762, at *5 (N.D. Cal. June 7, 2012) (valuation

of possible target for acquisition not admissible insofar as they speak not to the value of the

particular patent at issue, but rather to the possible valuation of the company as a whole).  It is

particularly problematic in this case, as the valuations on which Mr. Schoettelkotte relies

expressly state that they do not account for EcoFactor's assets or income. ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████  They are instead based on the high-level financial results of "comparable" companies.

*Id.*  There is no evidence that these results are related to these companies' patent holdings, or that these companies' patent holdings are in any way comparable to EcoFactor's. *Id.* at 111:14-115:15. There is therefore no basis whatsoever for Mr. Schoettelkotte's reliance on these 409A valuations to cap the value of EcoFactor's patents.

**B.      The Internal Trane Documents on Which Mr. Schoettelkotte Relies Are Not Properly In the Record for This Case.**

The purported ███████ "valuation" and ███████ rate discussed above were both in documents produced by Trane.  But there is no record of these documents being produced in this case by Trane or by Google, and Google never disclosed its intention to rely upon them in response to EcoFactor's discovery requests specifically asking Google to identify any licenses or transactions that Google contends are comparable to a hypothetical negotiation.  As a result, EcoFactor's experts could not and did not consider the documents.    EcoFactor therefore respectfully moves to strike Mr. Schoettelkotte's reliance on these internal Trane documents under Federal Rule of Civil Procedure Rule 26 & 37.  The portions of Mr. Schoettelkotte's report at issue are those that relate to the alleged comparability of ████████████████████ ██████████████████ internal Trane documents, at paragraphs 33, 85, 109, 121, 124, and in certain portions of paragraphs 175, 184-191.

Trane's documents were produced on September 20, 2021[3] in response to a subpoena served by Google and ecobee, Inc. in a different matter, namely, *Certain Smart Thermostat Systems, Smart HVAC Systems, Smart HVAC Control Systems, and Components Thereof,* Inv. No. 337-TA-1258.  As there is no record of the Trane documents being produced in *this* case, Google is contending that Trane's production in the 1258 Investigation operated as a production

---

[3] Notably, Trane not only produced the documents for a different case, but also produced them after the close of fact discovery in this matter on September 1, 2021, and after the extended deadline of September 17 agreed to accommodate certain party witnesses (*See* Dkt. No. 92).

in this case.  But Trane's production in the 1258 Investigation under a particular protective order did not automatically grant *carte-blanche* authority for the parties to the 1258 Investigation to use Trane's confidential business information in other proceedings.   In fact, that is expressly prohibited by the 1258 Investigation's Protective Order.  Ex. F (Protective Order) at 3 (Section 4, which requires each party to whom confidential business information is disclosed to agree to be bound by the terms of the protective order and "to utilize such confidential business information ***solely for purposes of this investigation*.").

The record shows that Trane elected to produce the documents only in the 1258 Investigation.  Trane produced the documents in an email with the subject line "337-TA-1258; Trane Production – CONTAINS CONFIDENTIAL BUSINESS INFORMATION" addressed only to ITC counsel.  Ex. G, Email dated 9/20/21.  The case number and confidentiality designation in the subject line are both specific to the 1258 Investigation.  *Id.* Trane's email also contains in the body an express statement that the documents are produced "pursuant to the Subpoenas served by ***Respondents*** ecobee and Google" (emphasis added).  *Id.*  The body uses the same confidentiality designation particular to the 1258 Investigation.  *Id.*  Accordingly, under the terms of the applicable protective order in the 1258 Investigation, EcoFactor was not permitted to use the Trane documents, and did not use them, in this case.

Google contends that nevertheless, the internal Trane documents were produced in this case.  But that understanding is apparently based on communications between Google, its fellow respondent ecobee, Inc. and counsel for Trane that did not involve EcoFactor.  EcoFactor has learned that counsel for ecobee, understanding that the production by Trane was on its face clearly limited to the 1258 Investigation, sought Trane's permission to treat the production as "Attorneys' Eyes Only" under the protective order in this case.  ███████████████████

███  ██  ███  █  ██  ████  ███  ██  ██  █

████████████████  Obviously, ecobee would not have sought this permission

if the Trane documents had already been produced in this case.   But ***EcoFactor was not copied***

***on this correspondence***.   It was provided only after Mr. Shoettelkotte's report was served, when

EcoFactor asked ecobee and Google to explain why their experts were relying on documents not

produced in this case and the use of which is prohibited under the protective order in the 1258

Investigation.   Ex. I (e-mail exchange between counsel for EcoFactor and counsel for Google).

That Google knew the Trane documents had not been produced in this case is further

demonstrated by the fact that Google did not supplement its disclosures and discovery responses

in this case to identify these documents, which independently provides grounds for exclusion

under Federal Rules of Civil Procedure 26 and 37.   The Trane documents were produced in the

1258 Investigation on September 20, 2021.   On the same day, Google supplemented its initial

disclosures to disclose its intention to rely on materials from other third-parties, such as "Bidgely"

and "Nevada Energy."   Ex. J, Google's Fifth Supplemental Initial Disclosures dated Sept. 20,

2021 at 4. Google's supplemental disclosures specified Mr. Shayan Habib (EcoFactor's CEO) or

Mr. James Maccoun (Google's in-house patent counsel) possess knowledge relevant to licensing.

*Id.* 2-4.  But Google never identified Trane or Trane witnesses.   *Id.*

Google also has never supplemented its response to EcoFactor's Interrogatory No. 13 to

identify the Trane transaction, even though the Interrogatory requires Google to identify all

"license agreements, royalty agreements, covenants-not-to-sue, and/or similar agreements that

[Google] contend[s] are comparable to a license for the Asserted Patent that would be

contemplated by the *Georgia Pacific* damages analysis in this case."  Ex. E, 08/24/21 Google

First Supp. Responses to EcoFactor's First Set of Interrogatories, at 24-25.   In fact, Google never

identified the Trane Asset Purchase Agreement in response to this interrogatory, although the Trane agreement, including the patent license that was part of the transaction, was produced by EcoFactor in April 2021.

Google scheduled a deposition of a Trane witness, ████████ on October 4, 2021, which EcoFactor attended subject to its objection to the deposition as untimely.  This was scheduled for one week after the deadline for the exchange of opening expert reports, on September 27, 2021. Setting aside the untimeliness and prejudice to EcoFactor from Google's determination to schedule a third-party deposition *after* the exchange of opening reports, Google *still* never supplemented its discovery responses or Rule 26 disclosures to identify Trane witnesses, even after this deposition. Google's latest supplement of September 20, 2021 never mentions Trane, and it did not supplement its Rule 26 disclosures again. Ex. J, Google's Fifth Supplemental Initial Disclosures dated Sept. 20, 2021 at 4.

Finally, there is yet another discovery request that Google failed to supplement under Rule 26. EcoFactor's Request for Production No. 24 asks Google to produce all documents received from third parties related to this case, including documents received pursuant to subpoenas.  Ex. K, Google's Responses to EcoFactor's First Set of Requests for Production, dated 01/22/202,  at 27.  It was therefore Google's duty to produce those documents to EcoFactor in this case, if permitted to do so by Trane.  If Google ever believed it had obtained permission from Trane for Trane's documents to be used in this case, it had a duty to inform EcoFactor of this fact. It did not do so.  Google should not be permitted to benefit from its failures by having Mr. Schoettelkotte rely on internal Trane documents that EcoFactor, complying with the protective order in the ITC action, did not and could not provide to its own expert.  Mr. Schoettelkotte certainly should not be permitted to rely in the documents himself, and should not be permitted to tell the jury Mr.

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

Kennedy should have relied on documents he was not able to review and that Google never disclosed in response to the plurality of relevant discovery requests described above. Accordingly, the Court should preclude Mr. Schoettelkotte and Google from relying on any internal Trane documents.

> **C.     Mr. Schoettelkotte Should Not Be Permitted to Rely On Usage Data That Was Withheld Until After The Close of Fact Discovery and Opening Reports, And Of Which Even He Has No Understanding**

EcoFactor also respectfully moves to strike Mr. Schoettelkotte's reliance on "Discussions with Manu Sharma" and "GOOG-ECOF-WDTX1-00001560" (the "Google Spreadsheet") in paragraph 71 of his report (footnotes 217 and 218) under Federal Rules of Civil Procedure 26 and 37, and under Federal Rule of Evidence 702 as well.  GOOG-ECOF-WDTX1-00001560 is purportedly a spreadsheet produced for this litigation that discloses ████████████████████ ██████████████████████████. Ex. L, GOOG-ECOF-WDTX1-00001560. Mr. Sharma is purportedly a Google engineer who discussed the document with Mr. Schoettelkotte. Mr. Schoettelkotte relies on "Discussions with Manu Sharma" and the Google Spreadsheet as evidence of use of the accused features, or rather, as evidence that "████████████████ ████████████████," contrary to their intended use. Ex. A,  Schoettelkotte Rpt. ¶ 71. However, GOOG-ECOF-WDTX1-00001560 was produced for the first time on October 22, 2021, with Mr. Schoettelkotte's rebuttal expert report. Ex. O (October 22, 2021 Production Letter).  Manu Sharma was also first identified as a person with relevant knowledge to this case on October 22, in Mr. Schoettelkotte's report, and Google has never supplemented its Rule 26 disclosures to identify him as a person with relevant knowledge. Ex. A,  Schoettelkotte Rpt. ¶ 71; Ex. J, Google's Fifth Supplemental Initial Disclosures dated Sept. 20, 2021. And Google never previously disclosed its intention to rely upon these documents or the theory they relate to in response to EcoFactor's discovery requests, as described below.

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

Moreover, Mr. Schoettelkotte, by his own admission, has no understanding of how the data in the Google Spreadsheet was compiled, or if it is reliable evidence. The document itself only purports to show "████████" of accused thermostats sold through Google's website, which is only one of several channels through which Google sells the accused products. Schoettelkotte Rpt. ¶ 64 (describing those various channels). Mr. Schoettelkotte does not know why the document is ████████████████████████████████████████████ ████████████████████████████████████. Schoettelkotte Dep. at 34:21-35:1. Yet Mr. Schoettelkotte assumes, without evidence, that these figures are representative for accused products sold through other online sales channels.

Pursuant to Federal Rule of Civil Procedure 26, Google was required to identify all responsive information in response to EcoFactor's requests interrogatories, and to supplement its responses with any new information. Federal Rule of Civil Procedure 37(c)(1) addresses sanctions for failing to disclose and states, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs*, L.P., 648 F. App'x 414, 419 (5th Cir. 2016). Moreover, the party facing sanctions under Rule 37(c) has the burden of demonstrating that a violation of Rule 26 was substantially justified or harmless. *See, e.g., Maguregui v. ADP, LLC*, No. EP-16-CV-121-PRM, 2017 WL 5473484 at *2 (W.D. Tex. Apr. 10, 2017); *Brown v. AT&T Serv. Inc.*, 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017).

There is no justification for Google's failure to produce the Google Store Spreadsheet or identifying Mr. Sharma during fact discovery. This information is responsive to EcoFactor's discovery requests. For example, evidence for how many customers do or do not use the accused

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

thermostats as intended, *i.e.,* as "smart" thermostats with Internet-connected features, is responsive to EcoFactor's Interrogatory No. 13[4], which asked Google to "describe all uses of any Accused Products or accused features of which you are aware in which an Accused Product (one or more) is used in a manner that is contrary to your instructions for use or user manuals regarding the Accused Products."  Ex. M, Google's Second Supplemental Responses to EcoFactor's First Set of Interrogatories, dated September 1, 2021, at 30.  The information is also relevant to numerous deposition topics noticed by EcoFactor, including Topic 27, on online sales channels and how customers buy Nest thermostats online, and Topic 50, on  user benefits from Internet-connected features.  Ex. N (Email thread between counsel for Google and EcoFactor regarding what information EcoFactor was seeking through this discovery).

Google's failure to produce the spreadsheet at issue, or the data reflected therein, until the day it served its rebuttal expert reports has no justification and has been far from harmless.  Had Google disclosed the data in discovery, EcoFactor could have investigated the how Google purports to track this data, whether there are any gaps in or problems with this data, why it is limited to a single sales channel, and whether "███████" for that channel are representative of other channels.  The document itself discloses none of these things.  And if Google had disclosed Mr. Sharma as a person knowledgeable about these issues, EcoFactor could deposed him not just on the one document but on the issue more generally. As Mr. Schoettelkotte himself noted, when unable to answer basic questions about the Google Spreadsheet, "██████████████████████ ███████████████████████████████████████████████ ███████."  Schoettelkotte Dep. at 35:4-7. As it is, the only access EcoFactor has to any

---

[4] Because of misnumbering this interrogatory is referred to as "Interrogatory No. 13 [No. 14]" in Google's responses.

information about the Google Spreadsheet is double hearsay, *i.e.* the description by Mr. Schoettelkotte of the small amount of information he says Mr. Sharma told him over the phone. *See, e.g., id.* at 34:2-11 (relying on Mr. Sharma for understanding of what "███████" means in the document).

In addition to being excluded under Rule 37, Ms. Schoettelkotte's opinion on this issue should be excluded under Federal Rule of Evidence 702. In the absence of any information about the Google Spreadsheet, Mr. Schoettelkotte has no basis to rely on it. While data from a contemporaneous internal document might be given some credit, on the theory that a business would generally want to rely on accurate information in its own operations, this document was clearly created for litigation, as it was produced with Mr. Schoettelkotte's rebuttal report. Beyond the fact that Google gave it to him, Mr. Schoettelkotte has no basis to assume that it is data regularly kept in the course of Google's business, or which Google itself would find reliable and representative of all accused products. He is acting purely as a pass-through for someone else's analysis, with no idea who that was or what that person's methodology was. This is improper, and ground for exclusion. *See Trustees of Bos. Univ. v. Everlight Elecs. Co*., 141 F. Supp. 3d 147, 149 (D. Mass. 2015) ("However, [an expert] cannot merely 'parrot' the out-of-court statements of employees, for an expert who does as much is merely a 'ventriloquist's dummy.'"); *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014). (Rule 703 "was never intended to allow oblique evasions of the hearsay rule" or to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").

RESTRICTED – ATTORNEYS' EYES ONLY VERSION

## III.    CONCLUSION

For the foregoing reasons, EcoFactor respectfully requests that the Court issue an Order striking the portions of Mr. Schoettelkotte's report at issue that rely on the non-comparable Trane transaction and the non-comparable ████████████████████████████████████████ internal Trane documents, which appear in paragraphs 33, 85, 109, 121, 124, 125, 141, and in certain portions of paragraphs 175, 184-191 of his expert report. Further, EcoFactor respectfully requests that the Court issue an Order striking the portions of Mr. Schoettelkotte's report at issue in paragraph 106 relating to non-comparable valuations. Further, EcoFactor respectfully requests that the Court issue an Order striking the portions of Mr. Schoettelkotte's report at issue in paragraph 71 of his report and in footnotes 217 and 218 that relate to GOOG-ECOF-WDTX1-00001560 or discussions with Manu Sharma.

Date:  November 19, 2021                                  Respectfully submitted,

                                                         /s/ *Reza Mirzaie*

                                                         Reza Mirzaie
                                                         Marc A. Fenster
                                                         Paul A. Kroeger
                                                         RUSS AUGUST & KABAT
                                                         12424 Wilshire Boulevard 12th Floor
                                                         Los Angeles, California 90025
                                                         Tel: 310-826-7474
                                                         Fax: 310-826-6991
                                                         rmirzaie@raklaw.com
                                                         mfenster@raklaw.com
                                                         prkoeger@raklaw.com

                                                         *Attorneys for Plaintiff EcoFactor, Inc.*

RESTRICTED – ATTORNEYS' EYES ONLY

### <u>CERTIFICATE OF CONFERENCE</u>

I certify that my firm, including my colleagues James Pickens and Kris Davis, conferred with Defendant's counsel regarding the foregoing Motion to Exclude on Thursday, November 11, 2021, following email correspondence identifying the proposed relief on November 9, 2021. Defendant's counsel confirmed that their client opposes the requested relief.

<u>/s/ Reza Mirzaie</u>

### <u>CERTIFICATE OF SERVICE</u>

I certify that this document is being served upon counsel of record for Defendant on November 19, 2021 via electronic service.

<u>/s/ Reza Mirzaie</u>