**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| ECOFACTOR, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　　　　Defendant. | Civil Action No. 6:20-cv-00075 (ADA)<br><br>JURY TRIAL DEMANDED<br><br><br>**CONFIDENTIAL – FILED UNDER SEAL** |
| ECOFACTOR, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ECOBEE, INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 6:20-cv-00078-ADA<br><br>JURY TRIAL DEMANDED |
| ECOFACTOR, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>VIVINT, INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 6:20-cv-00080-ADA<br><br>　JURY TRIAL DEMANDED |

**DEFENDANTS' JOINT DAUBERT MOTION
TO EXCLUDE CERTAIN TESTIMONY OF DR. PALMER**

**TABLE OF CONTENTS**

I.  Introduction ................................................................................................................. 1

II. Experts Must Demonstrate Nexus Between Evidence of Secondary Considerations and the Claimed Invention ................................................................................................. 3

III. Dr. Palmer Fails to Establish Any Nexus between the Secondary Considerations and the Claimed Inventions. ............................................................................................... 5

    A.    EcoFactor is Not Entitled to a Presumption of Nexus. ............................................ 5

    B.    Dr. Palmer's Unsupported Nexus Arguments are Irrelevant and Unreliable ...... 8

IV. Dr. Palmer is Not Qualified to Opine on Commercial Success ....................................... 12

V.  Conclusion ................................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alarm.com, Inc. v. SecureNet Technologies LLC*,
  No. 15-CV-807, 2019 WL 133228 (D. Del. Jan. 8, 2019)..................................................4, 11

*Cellular Commc'ns Equip., LLC v. Apple Inc.*,
  No. 6:14-CV-251, 2016 WL 6884076 (E.D. Tex. Aug. 30, 2016) ............................................3

*In the Matter of Certain Smart Thermostats, Smart HVAC Systems, and
  Components Thereof*, Inv. No. 337-TA-1185 ..........................................................................9

*Cot'n Wash, Inc. v. Henkel Corp.*,
  56 F.Supp.3d 626 (D. Del. 2014)........................................................................................4, 11

*DataTreasury Corp. v. Wells-Fargo & Co.*,
  No. 2:06-CV-072, 2010 WL 11475580 (E.D. Tex. Feb. 26, 2010)....................................4, 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)......................................................................................................... passim

*Demaco Corp. v. F. Van Langsdorff Licensing Ltd.*,
  851 F.2d 1387 (Fed. Cir. 1988).................................................................................................5

*Fox Factory, Inc. v. SRAM, LLC*,
  944 F.3d 1366 (Fed. Cir. 2019).....................................................................................4, 5, 6, 8

*In re Gartside*,
  203 F.3d 1305 (Fed. Cir. 2000).................................................................................................3

*Graham v. John Deere Co. of Kan. City*,
  383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)....................................................................3

*Henny Penny Corp. v. Frymaster LLC*,
  938 F.3d 1324 (Fed. Cir. 2019).................................................................................................4

*In re Huang*,
  100 F.3d 135 (Fed. Cir. 1996)...................................................................................................5

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
  392 F.3d 1317 (Fed. Cir. 2004)...............................................................................................10

*Meridian Manufacturing, Inc. v. C&B Manufacturing, Inc.*,
  340 F.Supp.3d 808 (N.D. Iowa 2018).......................................................................................4

Case 6:20-cv-00075-ADA   Document 122   Filed 11/26/21   Page 4 of 20
PUBLIC VERSION

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) .................................................................................................. 3

*Nobelbiz, Inc. v. Glob. Connect, L.L.C.*,
  No. 6:12-CV-244, 2015 WL 11089488 (E.D. Tex. July 16, 2015) ........................................ 10

*Perfect Web Techs., Inc. v. InfoUSA, Inc.*,
  587 F.3d 1324 (Fed. Cir. 2009) ............................................................................................... 11

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
  882 F.3d 1056 (Fed. Cir. 2018) ................................................................................................. 5

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
  Civ. No. 6:18-CV-00038-ADA, 2019 WL 6499488 (W.D. Tex. Oct. 11, 2019) ..................... 3

*Puga v. RCX Solutions, Inc.*,
  922 F.3d 285 (5th Cir. 2019) ..................................................................................................... 3

*Rambus Inc. v. Hynix Semiconductor Inc.*,
  254 F.R.D. 597 (N.D.Cal. 2008) .............................................................................................. 12

*Sjolund v. Musland*,
  847 F.2d 1573 (Fed. Cir. 1988) ............................................................................................... 10

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
  No. 6:15-cv-00551 ................................................................................................................... 12

*UCB, Inc. v. Actavis Laboratories UT, Inc.*,
  No. 19-474-KAJ, 2021 WL 1880993 (D. Del. March 26, 2021) ............................................... 6

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ................................................................................................. 3

*WMS Gaming Inc. v. Int'l Game Tech.*,
  184 F.3d 1339 (Fed. Cir. 1999) ................................................................................................. 4

*Wonderland Nurserygoods Co., Ltd. v. Thorley Industries LLC*,
  No. 2:13-cv-00387, 2015 WL 5021416 (W.D. Pa. Aug. 21, 2015) ................................... 11, 12

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  No. 9-157, 2013 WL 865974 (D. Del. Mar. 7, 2013) ............................................................. 12

**Other Authorities**

Federal Rules of Evidence 402 ....................................................................................................... 4

Federal Rules of Evidence 702 ................................................................................................. 1, 12

Local Rule CV-7(G) ....................................................................................................................... 1

Defendants Google LLC ("Google"), ecobee, Inc., and Vivint, Inc. move for an Order, pursuant to Federal Rules of Evidence 702, precluding certain opinions of Plaintiff EcoFactor, Inc.'s ("EcoFactor") expert witness, Dr. John A. Palmer, concerning alleged secondary considerations of the non-obviousness of the asserted claims of U.S. Patent Nos. 8,412,488 ("the '488 patent"), 8,738,327 ("the '327 patent"), and 10,534,382 ("the '382 patent") (collectively "the Asserted Patents").[1]  Pursuant to Local Rule CV-7(G), undersigned counsel conferred with counsel for EcoFactor in a good faith attempt to resolve this motion by agreement, and counsel for EcoFactor indicated that EcoFactor is opposed to the requested relief.

## I.  Introduction

This Court should exclude the rebuttal opinions of EcoFactor's expert, Dr. John A. Palmer, concerning alleged secondary considerations of the non-obviousness of the three Asserted Patents.  These opinions ignore the facts, the metes and bounds of each Asserted Patent, and fail to provide any opinion whatsoever as to a nexus between the evidence of secondary considerations and the inventions claimed in the Asserted Patents.  In view of these deficiencies, this Court should exclude Dr. Palmer's opinions purporting to rebut Defendants' obviousness opinions.

- In Section 11 of his report, titled "Secondary Considerations," Dr. Palmer provides only conclusory and unsupported statements purporting to establish that certain secondary considerations of unidentified "EcoFactor's own products," the "relevant products," or "EcoFactor … features" are attributable to unidentified "asserted claims," the "asserted patents," or "EcoFactor patents," despite the fact that multiple claims of multiple patents

---

[1] This joint motion addresses Dr. Palmer's opinions concerning alleged secondary considerations for all patent claims currently asserted by EcoFactor against Google, ecobee, and Vivint in the above captioned cases.

1

are asserted against multiple defendants and accused products in three separate cases. *See generally*, Ex. A at ¶¶ 823-834, Expert Report of Dr. Palmer Regarding Validity (the "Palmer Report").[2]

- However, the law requires that Dr. Palmer tie these alleged secondary considerations to the asserted claims. But his opinion is devoid of any such analysis, as Dr. Palmer provides no substantive analysis regarding the required nexus between the alleged evidence of secondary considerations and any particular claim of the Asserted Patents. Instead of engaging in the required analysis, patent-by-patent and claim-by-claim, Dr. Palmer simply treats all three patents as if they are one and the same.

- The one attempt by Dr. Palmer to establish a nexus between the alleged secondary considerations and a particular claim addresses a patent not asserted against the Defendants. This analysis, instead, is directed to a patent asserted by EcoFactor in an unrelated ITC Investigation instituted in 2019. As such, not only does Dr. Palmer treat all three patents-in-suit as though they were the same, but also opines that claims of an unrelated, non-Asserted Patent are also the same.

Dr. Palmer's opinions regarding secondary considerations fail to establish the requisite nexus between any purported evidence of secondary considerations and any asserted claim; therefore, these opinions are irrelevant and unreliable and must be excluded under *Daubert*. As an expert in electrical engineering, Dr. Palmer is also unqualified to testify regarding any alleged commercial success of EcoFactor's products or the accused products.

---

[2] In Section 11 of his report, Dr. Palmer refers to "Respondents" multiple times. Ex. A at ¶¶ 829, 830, and 831. It is unclear which party Dr. Palmer is referring to when referencing the "Respondents." For purposes of this Motion, it is assumed that Dr. Palmer is referring to the Defendants to the cases identified by Dr. Palmer in his report. *Id.* at ¶ 1.

II.     **Experts Must Demonstrate Nexus Between Evidence of Secondary Considerations and the Claimed Invention**

"Experts may not automatically testify before a jury." *ProTradeNet, LLC v. Predictive Profiles, Inc.*, Civ. No. 6:18-CV-00038-ADA, 2019 WL 6499488, at *2 (W.D. Tex. Oct. 11, 2019).[3] Expert testimony is admissible only "if (1) the expert is qualified; (2) the evidence is relevant to the litigation; and (3) the evidence is reliable." *Id.* The relevancy inquiry requires that the "expert testimony proffered in the case [be] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). "If the patentee fails to tie [its expert's] theory to the facts of the case, the testimony must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). "To be reliable, expert testimony must . . . be more than unsupported speculation or subjective belief." *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (quotation omitted). "In the context of obviousness, generic expert testimony which is conclusory and factually unsupported will be insufficient under Daubert to reach a jury." *Cellular Commc'ns Equip., LLC v. Apple Inc.*, No. 6:14-CV-251, 2016 WL 6884076, at *2 (E.D. Tex. Aug. 30, 2016) (internal quotation omitted).

Obviousness "is a question of law based on underlying findings of fact." *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Those underlying findings of fact include: (1) "the scope and content of the prior art," (2) "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) the presence of evidence of secondary considerations, such "as commercial success, long felt but unsolved needs, failure of others," and unexpected results. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17, 86 S.Ct. 684, 15

---

[3] Admission of expert testimony is governed by regional circuit law. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

L.Ed.2d 545 (1966). "[E]vidence of secondary considerations must have a 'nexus' to the claims, i.e., there must be 'a legally and factually sufficient connection' between the evidence and the patented invention." *Fox Factory, Inc. v. SRAM, LLC,* 944 F.3d 1366, 1373 (Fed. Cir. 2019) (quoting *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019)). Though a party challenging the validity of a patent bears the ultimate burden of proof, "the patentee bears the burden of showing that a nexus exists." *Id.* (quoting *WMS Gaming Inc. v. Int'l Game Tech*., 184 F.3d 1339, 1359 (Fed. Cir. 1999)). "To determine whether the patentee has met that burden, we consider the correspondence between the objective evidence and the claim scope." *Id.* (quoting *Henny Penny*, 938 F.3d at 1332).

This Court should exclude expert testimony relating to secondary considerations when a nexus between evidence of secondary considerations and the patent claims has not been shown. *DataTreasury Corp. v. Wells-Fargo & Co.,* Case No. 2:06-CV-072, 2010 WL 11475580, at *4 (E.D. Tex. Feb. 26, 2010) (excluding expert testimony as unreliable under FRE 402 and *Daubert* for failing to demonstrate the required nexus between the claimed invention of the patents-in-suit and commercial success); *Alarm.com, Inc. v. SecureNet Technologies LLC*, Case no. 15-807-RGA, 2019 WL 133228 at *4-5 (D. Del. Jan 8, 2019) (excluding expert testimony for failing to establish nexus between industry praise and the patented technology); *Meridian Manufacturing, Inc. v. C&B Manufacturing, Inc*., 340 F.Supp.3d 808 (N.D. Iowa 2018) (excluding expert testimony for failing to establish nexus between long-felt need, failure of others, commercial success, and copying and the patented technology*); Cot'n Wash, Inc. v. Henkel Corp.,* 56 F.Supp.3d 626 (D. Del. 2014) (excluding expert testimony for failing to establish nexus between commercial success, industry praise, and copying and the patented technology).

**III.     Dr. Palmer Fails to Establish Any Nexus between the Secondary Considerations and the Claimed Inventions.**

In Section 11 of his report, Dr. Palmer opines about alleged secondary considerations regarding (1) copying, (2) commercial success, (3) praise, awards, and/or industry recognition, and (4) long-felt need, skepticism, and failure of others.  Ex. A at ¶¶ 823-834.  Dr. Palmer's boilerplate assertions, however, do not amount to relevant or reliable evidence under the *Daubert* standard because Dr. Palmer fails to engage in any discussion whatsoever tying the alleged evidence to the technology at issue.  His opinions, therefore, fail to establish a nexus between the secondary considerations and claims of the Asserted Patents and should be excluded on that basis.

    **A.     EcoFactor is Not Entitled to a Presumption of Nexus.**

A patentee is only entitled to a presumption of nexus between the asserted evidence of secondary considerations and a patent claim if the patentee shows the asserted evidence is tied to a specific product and that the product "embodies the claimed features and is coextensive with them."  *Fox Factory,* 944 F.3d at 1373 (quoting *Polaris Indus., Inc. v. Arctic Cat, Inc.,* 882 F.3d 1056, 1072 (Fed. Cir. 2018)).  "Conversely, 'when the thing that is commercially successful is not coextensive with the patented invention—for example, if the patented invention is only a component of a commercially successful machine or process,' the patentee is not entitled to a presumption of nexus."  *Id.* (quoting *Demaco Corp. v. F. Van Langsdorff Licensing Ltd.,* 851 F.2d 1387, 1392 (Fed. Cir. 1988)).  Instead, the patentee must show "that the evidence of secondary considerations is the 'direct result of the unique characteristics of the claimed invention.'"  *Id.* at 1374 (quoting *In re Huang,* 100 F.3d 135, 140 (Fed. Cir. 1996)).

Dr. Palmer's report does not show any nexus between the alleged secondary considerations and the claimed inventions of the '488, '327, and '382 patents.  In fact, Dr.

5

Palmer does not address this issue at all in his report, let alone provide any argument or analysis tying the asserted evidence to a specific product that embodies the claimed features and is coextensive with them.

Indeed, throughout his report, Dr. Palmer attributes all alleged evidence of secondary considerations to all three patents and all accused products, even though the patents-in-suit are directed to different claimed inventions and the accused products comprise many different products with different features.[4] *See id*. at ¶¶823-834. It is improper to lump together all three patents-in-suit and ascribe all alleged evidence of secondary considerations to them generally without any technical analysis. In fact, EcoFactor's assertion of three patents directed to different claimed inventions alone highlights that the accused products are not coextensive with any particular patent claims and therefore not entitled to any presumption of nexus. *Fox Factory,* 944 F.3d at 1378 ("The same evidence of secondary considerations cannot be presumed to be attributable to two different combinations of features."); *UCB, Inc. v. Actavis Laboratories UT, Inc.*, Case No. 19-474-KAJ, 2021 WL 1880993, at *26 (D. Del. March 26, 2021) (patentee must establish a nexus between the Asserted Patent and any alleged secondary considerations, and no presumption of nexus applies when the patentee alleges numerous patents cover the accused product). Nor do any of the Asserted Patents claim "essentially the same invention" such that nexus could be presumed. *See, e.g., Fox Factory,* 944 F.3d at 1377-78. As stated by Dr. Palmer in his report, the three patents at issue claim different technology:

---

[4] Further illustrating the unreliability of Dr. Palmer's opinions is the fact that only the '327 and '382 patents are asserted against ecobee and only the '382 patent is asserted against Vivint, yet it is impossible to discern whether any of the evidence cited by Dr. Palmer relates exclusively to the '488 patent. *See, e.g.*, Ex. B, Excerpts from Expert Report of Mr. de la Iglesia Regarding Infringement by Google at ¶ 25; Ex. C, Excerpts from Expert Report of Mr. Zeidman Regarding Infringement by ecobee at ¶ 37; Ex. D, Excerpts from Expert Report of Mr. de la Iglesia Regarding Infringement by Vivint at ¶ 15.

6

'488 patent: Dr. Palmer opines that the '488 patent provides a solution to monitoring the operational status of an HVAC system that "depends on a combination of inside temperature measurement received with the HVAC control system which are then compared to outside temperature measurements received with the server processors over time to derive an estimation for the rate of change in inside temperature in response to outside temperature, and a comparison of reported temperatures to the processors' derived estimate of the rate of change to determine if the connected HVAC system is on or off." Ex. A at ¶ 133; *see also* '488 patent, claims 1, 9.

'327 patent: The claims of the '327 patent require a similar estimation of the rate of change in inside temperature in response to outside temperature; however, the claims of the '327 patent do *not* require a comparison of inside temperature with the estimated rate of change or use of this comparison to determine if the HVAC system is on or off. '327 patent, claim 1; Ex. A at ¶ 141 (explaining that the '327 patent claims do not require a comparison of inside temperature with an estimated rate of change to determine if the HVAC system is on or off). Instead, Dr. Palmer opines that "the claimed system [of the '327 patent] must support demand reduction requests" and "provide a technical solution to the technical problem of controlling an HVAC system by changing the setting to a second setting to reduce electricity demand." *Id*. "Demand reduction requests" are not recited in any of the '488 patent claims.

'382 patent: The '382 patent is in a different patent family and is directed to different technology—namely, as Dr. Palmer opines, "technical improvement to automatic occupancy-based temperature control with remote capabilities." Ex. A at ¶ 79. The '382 patent claims do not recite any limitations directed to estimated rates of change of indoor temperature, use of those rates to determine the operational status of the HVAC system, or demand reduction requests.

7

Because the '488, '327, and '382 patent claims do not cover the same invention, EcoFactor is not entitled to a presumption of nexus. "In such situations, the patentee retains the burden of proving the degree to which evidence of secondary considerations tied to a product is attributable to a particular claimed invention." *Fox Factory,* 944 F.3d at 1378.

### B. Dr. Palmer's Unsupported Nexus Arguments are Irrelevant and Unreliable

Because there can be no presumption of nexus under these circumstances, Dr. Palmer was required to establish "that the evidence of secondary considerations is the 'direct result of the unique characteristics of the claimed invention.'" Dr. Palmer addresses nexus in a total of three sentences unsupported by any citation to evidence:[5]

> On the other hand, there is evidence that suggests the asserted claims contribute to the commercial success of the relevant products. As one example, I understand that EcoFactor has accused smart thermostat and HVAC systems with capabilities for **determining a first time prior to a target time to begin heating or cooling based at least in part on determined thermal performance values for a structure**, a **performance characteristic of the HVAC**, a **first internal temperature**, a **first external temperature**, and a **forecasted temperature forecasted to occur at the target time**. These features appear relevant to the products' commercial success, including features for **reducing energy consumption while maximizing occupant comfort during the period of reduced HVAC usage**, and the Williams Report provides no evidence that these features are not relevant to the commercial success of the products.

Ex. A at ¶ 824 (emphasis added). Notably, not only does Dr. Palmer's "analysis" fail to explain *which* of the Asserted Patents or accused features he is referencing, these alleged features are nowhere claimed in the Asserted Patents. Instead, these features mimic the claim language of a

---

[5] Dr. Palmer accuses Defendants' expert, Mr. Williams, of failing to assert evidence in support of his opinion that EcoFactor had not set forth any evidence of nexus. Ex. A at ¶ 824. However, it is *EcoFactor's* burden to prove nexus. *Fox Factory,* 944 F.3d at 1373.

8

*different* EcoFactor patent, U.S. Patent No. 8,498,753 (the '753 patent"), asserted in an International Trade Commission ("ITC") investigation,[6] *In the Matter of Certain Smart Thermostats, Smart HVAC Systems, and Components Thereof*, Inv. No. 337-TA-1185. *See, e.g.,* Ex. E, 1185 Complaint at p. 2; Ex. F, the '753 patent, at claim 1. The '753 patent, which is unrelated to any of the Asserted Patents addressed by Dr. Palmer in his report, requires in part:

> storing said one or more **thermal performance values of said structure**;
> retrieving **a target time at which said structure is desired to reach a target temperature**;
> acquiring at least **a first internal temperature** inside said structure at a third time prior to said **target time**;
> acquiring at least **a first external temperature** relating to a temperature outside said structure at the third time prior to said **target time**;
> obtaining at least **one forecasted temperature forecasted to occur outside the structure at the target time**;
> retrieving at least said one or **more thermal performance values of said structure** that indicate said rate of change of temperature in said structure in response to changes in outside temperatures;
> retrieving at least **one performance characteristic of said climate control system**;
> **determining a first time prior to said target time at which said climate control system should turn on to reach the target temperature by the target time based at least in part on said one or more thermal performance values of said structure, said performance characteristic of said climate control system, said first internal temperature, said first external temperature, and the forecasted temperature**;

Ex. F, '753 patent, claim 1 (emphasis added). Dr. Palmer's conclusory statements regarding nexus should be excluded as irrelevant and unreliable because he describes the accused features in these cases—a variety of features from multiple products unique to different defendants—with

---

[6] Dr. Palmer's report repeatedly refers to "Respondents" and "domestic industry" (Ex. A at ¶¶829, 831), terminology used in an ITC proceeding, *not* a district court patent infringement case.

9

respect to an unasserted and unrelated EcoFactor patent. *Daubert,* 509 U.S. at 591 ("expert testimony proffered in the case [must be] sufficiently tied to the facts of the case").

The remaining portions of Dr. Palmer's report concerning secondary considerations are likewise irrelevant and unreliable, as Dr. Palmer provides no substantive analysis regarding a nexus between the evidence of alleged secondary considerations and the claimed inventions:

- Copying: "[C]opying requires the replication of a specific product." *Iron Grip Barbell Co. v. USA Sports, Inc.,* 392 F.3d 1317, 1325 (Fed. Cir. 2004)). Dr. Palmer's characterization of the alleged inventions supposedly copied by other companies in the market place—"HVAC performance monitoring features," "demand response features," and "energy efficiency features"—is so vague as to render it impossible to understand what he is referencing.[7] Ex. A at ¶ 828. These unsupported and vague conclusions are inadmissible as unreliable. *See Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488, at *4 (E.D. Tex. July 16, 2015) (holding that conclusory expert opinions are not adequate to establish a successful non-obviousness defense).

- Commercial Success: "Commercial success is relevant only if it flows from the merits of the claimed invention." *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988). Dr. Palmer provides an opinion as to the commercial success of the "claimed inventions" and "patented subject matter" without providing any indication or substantive analysis as to which claims and which products he attributes the commercial success. Ex. A at ¶ 829. Because each Asserted Patent has different claims and each accused product has different

---

[7] Although Dr. Palmer claims that "EcoFactor has submitted expert reports showing that these products [including "EcoFactor's articles"] meet the limitations of the asserted claims of the asserted patents" (Ex. A at ¶ 828), this is simply false. None of EcoFactor's experts submitted reports mapping the claims of the Asserted Patents against any EcoFactor product.

10

features, it is wholly inappropriate for Dr. Palmer to provide these opinions without any substantive analysis, identifying what claimed invention is responsible for what purported commercial success. *DataTreasury,* 2010 WL 11475580, at *4, 6; *see also Wonderland Nurserygoods Co., Ltd. v. Thorley Industries LLC,* Case No. 2:13-cv-00387, at *14 (W.D. Pa. Aug. 21, 2015).

- Industry Praise: An expert is required to establish that industry praise is directed to the patented technology, and not generally to a product or company. *Alarm.com,* 2019 WL 133228, at *4-5; *Cot'n Wash,* 56 F.Supp.3d at 650-651. In his report, Dr. Palmer fails to meet this burden and merely provides the conclusory statement that "I have reviewed EcoFactor's contentions and agree that the industry has recognized the value of the claimed solutions in each of the Asserted Patents." Ex. A at ¶ 830.

- Long felt, unresolved Need: Dr. Palmer's opinions concerning the asserted claims fulfilling a long-felt need are devoid of any substantive analysis as to which claim(s) solved the "long-felt, but unresolved needs of the HVAC and smart thermostat industries." Ex. A at ¶ 831. To demonstrate long-felt need, there must be an "articulated identified problem and evidence of efforts to solve that problem." *Perfect Web Techs., Inc. v. InfoUSA, Inc.,* 587 F.3d 1324, 1332-33 (Fed. Cir. 2009). Dr. Palmer provides no such analysis and instead generically refers to "the patented inventions" and "asserted patent[s]" as providing a purported solution to some unidentified long-felt, unresolved needs in the industry. This analysis falls short of what is required by an expert, as each of the "patented inventions" asserted against the Defendants recite different claims relating to different subject matter.

For at least these reasons, Dr. Palmer's opinions on the secondary consideration of copying, commercial success, industry praise, and long felt, unresolved need do not meet the *Daubert* standard for relevance or reliability.

### IV. Dr. Palmer is Not Qualified to Opine on Commercial Success

Dr. Palmer's degrees and work experience all relate to electrical engineering and electrical power engineering and he represents himself as having "a strong understanding of the practices and terminology of the electric power industry, energy efficiency objectives and implementation, energy control systems, load management technologies and procedures, HVAC operation and control, etc." Ex. A, at ¶¶ 6-13. His CV does not reflect any education or experience in finance, marketing, or economics. *See id.* at Ex. B. Although Dr. Palmer may be qualified to testify about whether a product embodies a claimed invention (he provided no such analysis), he does not have the requisite education and/or experience to testify about the commercial aspects of a commercial success analysis. *See, e.g., Wonderland,* 2015 WL 5021416 at *13; *Tinnus Enterprises, LLC v. Telebrands Corp.,* No. 6:15-cv-00551 RC-JDL, 2016 WL 9245441, at *2-3 (E.D. Tex. Dec. 15, 2016); *XpertUniverse, Inc. v. Cisco Sys., Inc.,* No. 9-157, 2013 WL 865974, at *3 (D. Del. Mar. 7, 2013); *Rambus Inc. v. Hynix Semiconductor Inc.,* 254 F.R.D. 597, 604 (N.D.Cal. 2008). Accordingly, his testimony regarding commercial success should be excluded for this reason as well.

### V. Conclusion

Accordingly, with respect to his opinions concerning alleged secondary considerations of non-obviousness, Dr. Palmer does not meet the requirements of Federal Rule of Evidence 702 and *Daubert*. As such, Dr. Palmer should not be allowed to testify regarding secondary considerations of non-obviousness.

Date:  November 19, 2021

Respectfully submitted,

By: */s/ Bijal V. Vakil*
Shamita Etienne-Cummings (CA Bar No. 202090)
(*admitted to the Western District of Texas*)
Allen & Overy LLP
1101 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 683-3810
Email: GoogleEcofactorWDTX@AllenOvery.com

Bijal V. Vakil (CA Bar No. 192878)
(*admitted to the Western District of Texas*)
Eric Lancaster (admitted *Pro Hac Vice*)
Allen & Overy LLP
530 Lytton Avenue, 2nd Floor
Palo Alto, CA  94301
Telephone:  (650) 388-1703

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (admitted *Pro Hac Vice*)
Leo L. Lam (admitted *Pro Hac Vice*)
Eugene M. Paige (admitted *Pro Hac Vice*)
R. Adam Lauridsen (admitted *Pro Hac Vice*)
Jennifer A. Huber (admitted *Pro Hac Vice*)
Kristin Hucek (admitted *Pro Hac Vice*)
Anna Porto (admitted *Pro Hac Vice*)
Patrick E. Murray (admitted *Pro Hac Vice*)
Gregory Washington (admitted *Pro Hac Vice*)
Eric B. Hanson (admitted *Pro Hac Vice*)
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
econest-kvp@keker.com

POTTER MINTON
Michael E. Jones (TX Bar No. 10929400)
mikejones@potterminton.com
Patrick C. Clutter (TX Bar No. 24036374)
patrickclutter@potterminton.com
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

*Attorneys for Defendant GOOGLE LLC*

13

Date:  November 19, 2021                    */s/ Daisy Manning "by permission"*
                                            Rudolph A. Telscher, Jr.
                                            Missouri Bar No. 41072*
                                            rudy.telscher@huschblackwell.com
                                            Kara R. Fussner
                                            Missouri Bar No. 54656*
                                            kara.fussner@huschblackwell.com
                                            Daisy Manning
                                            Missouri Bar No. 62134*
                                            daisy.manning@huschblackwell.com
                                            HUSCH BLACKWELL LLP
                                            190 Carondelet Plaza, Suite 600
                                            St. Louis, MO 63105
                                            314.480.1500 Telephone
                                            314.480.1505 Facsimile

                                            Ryan B. Hauer
                                            Illinois Bar No.6320758*
                                            ryan.hauer@huschblackwell.com
                                            HUSCH BLACKWELL LLP
                                            120 South Riverside Plaza, Suite 2200
                                            Chicago, IL 60606
                                            312.655.1500 Telephone
                                            312.655.1501 Facsimile

                                            *Admitted *Pro Hac Vice*

                                            Jennifer P. Ainsworth
                                            WILSON, ROBERTSON & CORNELIUS, P.C.
                                            909 ESE Loop 323, Suite 400
                                            Tyler, Texas 75701
                                            (903) 509-5000 Main
                                            (903) 509-5001 Direct
                                            (903) 509-5092 Fax
                                            Email: jainsworth@wilsonlawfirm.com

                                            Manny J. Caixeiro
                                            VENABLE, LLP
                                            2049 Century Park East, Suite 2300
                                            Los Angeles, CA 90067
                                            310-229-9900
                                            Fax: 310-229-9901
                                            Email: MJCaixeiro@venable.com

                                            Timothy J. Carroll
                                            Vivian Sandoval

|  |  |
|---|---|
|  | Steve M. Lubezny<br>VENABLE LLP<br>227 West Monroe Street, Suite 3950<br>Chicago, IL 60606<br>312-820-3400<br>Fax: 312-820-3401<br>Email: tjcarroll@venable.com<br>vsandoval@venable.com<br>smlubezny@venable.com<br><br>*Attorneys for Defendant ecobee, Inc.* |
| Dated: November 19, 2021 | */s/ Fred I. Williams "by permission"*<br>Fred I. Williams<br>fwilliams@wsltrial.com<br>Williams Simons & Landis PLLC<br>601 Congress Ave., Suite 600<br>Austin, TX 78701<br>Tel: 521-543-1354<br><br>Todd E. Landis<br>tlandis@wsltrial.com<br>Williams Simons & Landis PLLC<br>2633 McKinney Ave., Ste. 130 #366<br>Dallas, TX 75204<br>Tel: 562-543-1357<br><br>John Wittenzellner<br>jwittenzellner@wsltrial.com<br>Williams Simons & Landis PLLC<br>1735 Market St., Suite A #435<br>Philadelphia, PA 19103<br>Tel: 512-543-1373<br><br>*Attorneys for Defendant Vivint, Inc.* |

## **CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 19, 2021, all counsel of record who have appeared in this case are being served with a copy of the foregoing via electronic mail.

Dated: November 19, 2021                                  */s/ Bijal V. Vakil*
                                                                                  Bijal V. Vakil