**PUBLIC VERSION**

████████████████████████████████

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC. | |
| Plaintiff, | Case No. 6:20-cv-00075-ADA |
| v. | ████████████████████ |
| GOOGLE LLC, | |
| Defendant. | |

### <u>PLAINTIFF ECOFACTOR, INC.'S OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID KENNEDY</u>

███████████████████████████████

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ..................................................................................2

     A.   THE THREE PATENT LICENSES AND SETTLEMENT AGREEMENTS AT ISSUE ..................2

     B.   ECOFACTOR'S TECHNICAL EXPERT'S COMPARABILITY ANALYSIS ............................3

     C.   MR. KENNEDY'S ANALYSIS OF THE LICENSES' COMPARABILITY.................................4

     D.   MR. KENNEDY'S BROADER *GEORGIA-PACIFIC* ANALYSIS.............................................6

III. ARGUMENT ..........................................................................................................7

     A.   MR. KENNEDY'S RELIANCE ON THE PER-UNIT RATE THAT APPEARS EXPRESSLY IN
          THE ███████████ ██ █ PATENT LICENSE AGREEMENTS IS CONSISTENT
          WITH THE EVIDENCE AND THE LAW...................................................................................7

          1.   Google's disagreements about the meaning or import of the evidence relied on
               by Mr. Kennedy goes to the weight of that opinion, which is not a basis for
               exclusion. ...................................................................................................................7

          2.   Mr. Kennedy's reliance on the $5.16 rate as an input in his analysis is
               supported by substantial evidence.................................................................................8

          3.   Google's appeal to allegedly contrary evidence confirms that its complaints
               are about weight, not methodology..................................................................................9

          4.   That the underlying calculations for the $5.16 rate are not in the record does
               not vitiate the evidence supporting reliance on that rate................................11

     B.   MR. KENNEDY'S COMPARABILITY ANALYSIS IS THOROUGH AND FULLY CONSISTENT
          WITH FEDERAL CIRCUIT PRECEDENT .........................................................................14

          1.   Mr. Kennedy analyzes and adjusts for the fact that the patent licenses are
               settlement agreements. ...................................................................................................14

          2.   Ecofactor's experts provide extensive opinions accounting for the fact that the
               settlements are ██████████████████████████████████
               ███████████████████████████████ ..........17

IV.  CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) ( .......................................................................... 8

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020). .................................................................... 14, 19

*CloudofChange, LLC v. NCR Corp.*,
  No. 6:19-CV-00513-ADA, Opinion and Order  (W.D. Tex., Nov. 9, 2021) ......................... 7

*Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*,
  218 F. Supp. 3d 375 (E.D. Pa. 2016) ................................................................. 16

*CSIRO v. Cisco*,
  809 F.3d 1295 (Fed. Cir. 2015) ...................................................................... 9

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ..................................................................... 14

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................... 8

*GREE, Inc. v. Supercell Oy*,
  No. 219CV00070JRGRSP, 2020 WL 4057640 (E.D. Tex., July 20, 2020) ......................... 18

*i4i Ltd. Partnership v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ....................................................................... 7

*Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*,
  No. CV CCB-13-2053, 2016 WL 4426681 (D. Md. Aug. 22, 2016) ................................. 13

*LaserDynamics, Inc. v. Quanta Comput. Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ....................................................................... 16

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
  10 F.4th 1358 (Fed. Cir. 2021), ................................................................... 12

*Omega Pats., LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ..................................................................... 19

*Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*,
  No. 6:18-CV-00388-RWS, 2018 WL 10126008 (E.D. Tex. Oct. 26, 2018) ......................... 15

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
  No. 814CV01352JLSKES, 2019 WL 8138163 (C.D. Cal. Nov. 20, 2019). ..................... 12, 13

*PerdiemCo, LLC v. Industrack LLC*,
  No. 2:15-CV-726-JRG-RSP, 2016 WL 6611488 (E.D. Tex. Nov. 9, 2016) ......................... 16

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
  849 F.3d 1360 (Fed. Cir. 2017) ..................................................................... 15

*ProTradeNet, LLC v. Predictive Profiles, Inc.*,
  No. 6:18-CV-00038-ADA, 2019 WL 6499488 (W.D. Tex. Oct. 11, 2019) ..................... 7, 17

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) .......................................................................... 16

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015) ......................................................................... 7

*US Salt, Inc. v. Broken Arrow, Inc.,*
   563 F.3d 687 (8th Cir. 2009) ........................................................................... 13

*Vectura Ltd. v. Glaxosmithkline LLC*,
   981 F.3d 1030 (Fed. Cir. 2020) ....................................................................... 19

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014). ...................................................................... 14

████████████████████████████████████████

## I.    INTRODUCTION

Plaintiff EcoFactor, Inc. ("EcoFactor") hereby respectfully opposes Defendant Google LLC's ("Google") motion to exclude certain opinions from the expert report of EcoFactor's damages expert, David Kennedy. Google challenges Mr. Kennedy's reliance on three patent license agreements that EcoFactor entered into with Google's competitors in the smart thermostat marketplace: ██████████████████████████████ Two of the patent licenses settled litigation where EcoFactor asserted the patents-in-suit, and the third involved highly comparable patents.

████████████████████████████████████████
█████████████████████████████████ This rate is corroborated by contemporaneous documents and the sworn testimony of the EcoFactor officer who executed the agreements.  Google nonetheless moves to exclude Mr. Kennedy's opinions relying on the $5.16 per unit rate because the calculations upon which the royalty was based are not in the record, and because Google thinks other evidence in the record contradicts ████████████████ on the $5.16 rate.  Each of these criticisms goes to the weight, not admissibility, of Mr. Kennedy's opinions.

Google also argues the licenses are not technically and economically comparable.  Google entirely ignores that EcoFactor's technical expert, Mr. Erik de la Iglesia, submitted opinions establishing the close technical comparability of the licensed patents as well as the licensed products. Google has not moved to exclude Mr. de la Iglesia's opinions, on which Mr. Kennedy relies and builds on.  Combined with Mr. de la Iglesia's analysis, Mr. Kennedy's analysis establishes comparability and recognizes and adjusts for the differences between the licenses and the hypothetical negotiation, including the fact that the licenses are settlements and portfolio licenses.  Indeed the record shows that the three licenses are not only highly comparable, they are the only comparable licenses in the record.  Therefore, Google's demand that Mr. Kennedy ignore these licenses, and ████████████████████████████████ should be denied.

██████████████████████████████████████████

## II.    FACTUAL BACKGROUND

### A.    The Three Patent Licenses and Settlement Agreements at Issue

*Licenses to the Patents-in-Suit*: Mr. Kennedy analyzes EcoFactor's settlements with ██████████████████████████████ Inc. Each agreement includes a license to EcoFactor's patent portfolio. EcoFactor sued ████████████████ in this District on the same three patents that are at issue at the hypothetical negotiation between EcoFactor and Google. ████████████ then negotiated and paid a royalty in response to these specific infringement allegations. Indeed, ███████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ █████████████████████████████ These two agreements were executed in April and June 2020, within five months of the hypothetical negotiation in January 2020. Ex. 2, 3. Meanwhile, EcoFactor's settlement with █████████████ ████ occurred one year later, in July 2021. Ex. 4.  It followed EcoFactor's lawsuit ████████ ████████████████████ asserting patents related to the patents at issue in the hypothetical negotiation between EcoFactor and Google. Once again, the portfolio license specifies the patents that were asserted against ███████████████ in the lawsuit that resulted in the settlement. Ex. 4 at ECODCT 0001239.

*The Per-Unit Royalty Rate:* Each of the ██████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████ Ex. 2 at ECODCT_0001217, Ex. 3 at ECODCT_0001228, and Ex. 4 at ECODCT 0001239.

---

[1] All citations to numbered exhibits herein are to the exhibits to Google's motion.  All citations to lettered exhibits are to the exhibits to this opposition.

██████████████████████████████████

In addition to this express language, Mr. Kennedy relied on the testimony of, and his own conversation with, EcoFactor's CEO, Shayan Habib, who approved and executed the three licenses, including testimony that ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████    Ex. 1, Corrected Expert Report of David Kennedy ("Kennedy Rpt.") at ¶¶ 197, 202, 266, 344, 348; Ex. A, September 15, 2021 Deposition of Shayan Habib, Volume I ("Habib Dep. v. I") at 301:25-303:11; Ex. B, September 16, 2021 Deposition of Shayan Habib, Volume II ("Habib Dep. v. II") at 324:17-325:1, 430:1-432:2.  Mr. Kennedy also cites emails between the EcoFactor and the licensees ████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████

**B.    EcoFactor's Technical Expert's Comparability Analysis**

EcoFactor's technical expert, Erik de la Iglesia, submitted an expert opinion establishing the technical comparability of the ██████████████████████████ including (1) the comparability of the licensed patents, (2) the comparability of the licensed and accused products, and (3) the comparability of the licensed and accused infringing features. Ex. C, September 27, 2021 Expert Report of Erik de la Iglesia ("de la Iglesia Rpt.") ¶¶ 94-101.  As to the patents, beyond the fact that EcoFactor asserted the same three patents against ██████████ ██████ that it now asserts against Google, Mr. de la Iglesia also considered whether the additional patents EcoFactor asserted against ██████████████████████ are comparable to the patent-in-suit. *Id.* He concluded all the patents fall into the same smart thermostat technology categories as the patents-in-suit: HVAC performance modeling, occupancy detection and smart scheduling, and demand reduction. *Id.* ¶¶ 98-99.

As to the licensed products, Mr. de la Iglesia's considered each smart thermostat made by Google, ██████████████████████ including their features relevant to the smart thermostat technologies protected by EcoFactor's patents, such as HVAC modeling, occupancy,

██████████████████████████████████████████████

and demand reduction features. *Id.* ¶¶ 95-97. As to the infringing features, Mr. de la Iglesia also considered EcoFactor's infringement allegations against the licensees' products. *Id.* ¶¶ 99-101. He concluded that EcoFactor's allegations against these same smart thermostat technology features are comparable to the features of Google's smart thermostats that infringe the three asserted patents in this case. *Id.* (Tables describing three to five common elements from each patent that were asserted to infringe in the licensees' products).

        **C.**    **Mr. Kennedy's Analysis of the Licenses' Comparability.**

As part of his *Georgia-Pacific* analysis, EcoFactor's damages expert, Mr. Kennedy, analyzed the similarities and differences between the litigation settlements with ██████ ████████████████████ and the hypothetical negotiation between EcoFactor and Google. Mr. Kennedy considered substantial evidence that ████████████████ are "major participants in the [smart thermostat] market," just like Google. Ex. 1, Kennedy Rpt., ¶¶ 72, 365-384. He also considered substantial evidence that the licensed products and technologies are economically comparable in terms of market demand. *Id.* ¶¶ 133-171, ¶¶ 194-208, ¶¶ 365-384. Mr. Kennedy relies on Mr. de la Iglesia's opinion that the asserted patents cover the HVAC performance modeling, occupancy detection and smart scheduling, and demand reduction features, and analyzes dozens of pieces of marketing materials to establish the comparabilty of the licensed and accused products. *See, e.g., id.* at ¶¶75-105, ¶¶ 133-171, ¶ 345, ¶ 384.

Mr. Kennedy also contrasted this evidence of an acceptable per-unit rate in comparable agreements with the circumstances at the hypothetical negotiation. For example, Mr. Kennedy adjusts for the effect of litigation risk on the ████████████████████ settlements by recognizing that it depressed the rate EcoFactor was able to obtain in the licenses. He considers the fact that the ████████████████████████████████████ ████████████████████████████████████ ███████████████████████ *Id.* ¶ 348. ████████████ ████████████████████████████████████ ████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ a consideration that does not exist at the Hypothetical Negotiation." *Id.* ¶ 349.

Finally, Mr. Kennedy adjusted for the difference in the number of licensed patents and products. *Id.* ¶¶ 344-349. Mr. Kennedy considers that at the hypothetical negotiation, Google would argue that the $5.16 per-unit rate needs to be apportioned down to reflect the additional patents in the portfolio that were also licensed. *Id.* ¶¶ 355-360. However, Mr. Kennedy relies on Mr. de la Iglesia's technical analysis to conclude that each licensee acquired coverage for the same smart thermostat technologies that Google is obtaining coverage for at the hypothetical negotiation, on highly related patents or on the exact same patents. *Id.* ¶ 360. He then relies on his own analysis of the facts and circumstances surrounding the settlements to conclude that both EcoFactor and its licensees negotiated the $5.16 per-unit based on asserted patents, not the other patents in the portfolio:

> The three patents asserted against Google cover the same interrelated smart thermostat technologies as the seven patents asserted against ██████ which include the three patents asserted against Google. Further, only the seven patents that EcoFactor asserted in litigation against ██████ were the focus of the negotiation and the determination of the agreed royalty, rather than the remainder of EcoFactor's portfolio. ████████ agreed to take a license after being sued on seven specific EcoFactor patents. ████████ litigated against EcoFactor on those patents, disputing infringement and validity, Accordingly, Daikin's agreement to take a license followed its evaluation of the value of the three technology areas covered by those seven patents. Further, ████████████████████████████████ [confirming they] were the focus of the deal."

*Id.* ¶ 347.  Mr. Kennedy confirmed this understanding of the evidence with Mr. Habib, who told him that ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶

173. *See also id.* ¶¶ 276, 325.

██████████████████████████████████████████

Mr. Kennedy performs a similar analysis for the other licenses, concluding that for each one, the asserted patents drove the value of the deal. *Id.* ¶ 348-349. Further, he opines that "while the final license may ultimately include other EcoFactor patents, … the royalty EcoFactor receives is derived from those patents EcoFactor believes are infringed by the licensee. Therefore, little to no value is assigned to other patents that may be included in the license." *Id.* ¶ 267. He opines that therefore, at the hypothetical negotiation, EcoFactor would have a strong argument that "only the asserted patents against ███████████████ were the focus of the agreements, the same patents infringed by Google were asserted against ███████████████ all of the asserted patents covered the same three interrelated smart technology areas, [and] EcoFactor's licenses reflected a discount due to the fact that the licensees disputed infringement and validity." *Id.* ¶ 357.

### D.   Mr. Kennedy's Broader *Georgia-Pacific* Analysis

Google's claim that Mr. Kennedy bases his royalty opinion "solely on these three settlement agreements" (Mot. at 5) ignores vast swaths of his *Georgia-Pacific* analysis unrelated to these settlements, including Mr. Kennedy's apportionment analysis using an analytical approach that calculates Google's marginal profit per-unit on the smallest saleable patent practicing unit that is attributable to the patented technology. Ex. 1, ¶¶ 165-171, ¶¶ 350-354, Exhibit 11A (applying the percentages appearing in Google's conjoint survey regarding the relative importance of the accused features to Google's internal financial documents on the marginal profits from each infringing sale). This approach relies on Mr. de la Iglesia's unchallenged opinion establishing which product attributes are attributable to Google's use of the patented technology. Ex. C, de la Iglesia Rpt. ¶¶ 75-76. Mr. Kennedy opines that the parties to the hypothetical negotiation would consider these per-unit profit figures under *Georgia-Pacific* factors 9, 10, 11, and 13 alongside the $5.16 per-unit rate that appears in the comparable patent license agreements under *Georgia-Pacific* factor 1. Ex. 1, Kennedy Rpt., ¶¶ 350-354, 359. Mr. Kennedy also considers the upward pressure from convoyed sales under *Georgia-Pacific* factor 6, alongside his other adjustments for the upward pressure from the litigation uncertainty discount

███████████████████████████

that applied to the litigation settlements, and the downward pressure from the number of licensed patents in the ████████████████████████ agreements. *Id.* ¶¶ 338-342, 349, 355-360.

## III.    ARGUMENT

### A.    Mr. Kennedy's Reliance on the Per-Unit Rate that Appears Expressly in the ████████████████████ License Agreements Is Consistent With the Evidence and the Law.

#### 1.    Google's disagreements about the meaning or import of the evidence relied on by Mr. Kennedy goes to the weight of that opinion, which is not a basis for exclusion.

Google claims that Mr. Kennedy has failed to substantiate his reliance on the $5.16 rate ████████████████████ but it is clear that Google merely disagrees about what the evidence shows and does not show. Such a dispute about issues of fact is not a basis for exclusion. "[I]n a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. . . . Rather, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Ex. D, *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-00513-ADA, Opinion and Order at *3 (W.D. Tex., Nov. 9, 2021) (citations omitted).

Consistent with this general rule, "'questions relating to the *bases* and *sources* of an expert's opinion affect the *weight* to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration.'" *ProTradeNet, LLC v. Predictive Profiles, Inc.*, No. 6:18-CV-00038-ADA, 2019 WL 6499488, at *3 (W.D. Tex. Oct. 11, 2019), quoting *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) ("[D]isputes over . . . the accuracy of the underlying facts are for the jury."). *See also i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its

███████████████████████████████████████████

admissibility."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("Verizon's disagreements are with the conclusions reached by ActiveVideo's expert and the factual assumptions and considerations underlying those conclusions, not his methodology. These disagreements go to the weight to be afforded the testimony and not its admissibility.").  Thus, while a total lack of evidentiary support or "unjustified extrapolations" from the record can be the basis for exclusion, "[a]n expert's opinion and testimony should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the fact finder. " *ProTradeNet,* 2019 WL 6499488, at *2-3, citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

### 2.    Mr. Kennedy's reliance on the $5.16 rate as an input in his analysis is supported by substantial evidence.

Mr. Kennedy's opinion is not so "fundamentally unsupported that it cannot possibly help the fact finder" or based on "unjustified extrapolations."  Instead, as discussed in detail above in Sections II. B. and C., and further addressed in Section III.B below, EcoFactor's experts have provided extensive analyses establishing the comparability of the ████████████████████ ████████ agreements.  Having determined that the licenses are highly comparable, and indeed are the only comparable licenses in the record (see Section III.B.1. below), Mr. Kennedy looked to the substantial evidence regarding the royalty rate provided in the licenses, and in corroborating evidence elsewhere in the record.[2]  No "extrapolation" is needed to understand the import of the

███████████████████████████████████████████

---

[2] Google takes Mr. Kennedy to task for purporting to provide evidence of an "established rate." Mot. at 1, 5-6. What Google means is that Mr. Kennedy does not meet the multi-factor legal test for finding a rate is so well "established" that no reasonable royalty analysis is required at all. *See, e.g.*, Ex. E, Report of Google's Damages Expert W. Todd Schoettelkotte "Scheottelkotte Rpt." at  ¶¶ 18, 81.  Google well knows that Mr. Kennedy is not using the term "established" in that specialized sense, but uses the term in the in the plain-meaning sense in which it is used in *Georgia Pacific* Factor 1: "The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove **an established royalty**," *i.e.* comparable licenses entered into by the patent holder providing information relevant to determining a reasonable royalty. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Ex. 1, Kennedy Rpt. ¶¶  263-269; Ex. 5, "Kennedy Dep.", at 89:8-24.

██████████████████████████████████████████

██████████████████████████████████████████ And the fact that this statement is consistent across all three comparable licenses in itself corroborates its relevance in any one of the licenses.  But Mr. Kennedy also relies on other corroborating evidence including the sworn testimony of the EcoFactor decisionmaker who agreed to and executed the licenses, Shayan Habib,[3] his own discussion with Mr. Habib confirming that testimony and obtaining additional detail, and negotiation documents ███████████████████████████████████████

██████████  Ex. 1, Kennedy Rpt. ¶¶ 197, 202, 266, 344, 348; Ex. 2 at ECODCT_0001217; Ex. 3 at ECODCT_0001228; Ex. 4 at ECODCT_0001239; Ex. A, Habib Dep. v. I at 301:25-303:11; Ex. B, Habib Dep. v. II at 324:17-325:1, 430:1-432:2; Ex. 10; Ex. 9.

The negotiation documents would be significant evidence of a reasonable royalty, even if the same $5.16 rate was not ████████████████████████ as is the case here.[4] Evidence of what even one party to the hypothetical negotiation would have regarded to be a reasonable royalty is relevant evidence on which an expert can rely, if the agreement being contemplated is comparable to the hypothetical negotiation.  In *CSIRO v. Cisco*, 809 F.3d 1295, 1303-04 (Fed. Cir. 2015), for example, the Federal Circuit found no methodological fault with the use of CSIRO's "Rate Card" as part of the hypothetical negotiation analysis despite the fact that "CSIRO did not execute any licenses under the Rate Card terms" because of similarities with the circumstances of the hypothetical negotiation.  *See also Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1121 (N.D. Cal. 2011) (basing a real-world "offer" of the patents-in-suit "as the starting point" for the hypothetical negotiation).

### 3.   Google's appeal to allegedly contrary evidence confirms that its complaints are about weight, not methodology.

---

[3] Google's claim that Mr. Habib is not a reliable source because he has an interest in the outcome (Mot. at 12) is further evidence that what Google is disputing are the bases and sources of Mr. Kennedy's opinions, not his methodology.
[4] Google falsely claims that EcoFactor has stated that ████████████████ Mot. at n. 5. In fact, what EcoFactor said is that ████████████████████████████████████████████████ *i.e.,* the same documents cited by Mr. Kennedy. Ex. 8.

████████████████████████████████████████████

That Google's argument is really about a dispute of fact rather than any putative flaw in Mr. Kennedy's methodology is conclusively demonstrated by their arguments regarding allegedly contrary evidence.  Google demands not only that the Court put greater weight on this evidence than the evidence relied on by Mr. Kennedy, but that the Court hold as a matter of law that Mr. Kennedy was required to put the same gloss on what is, at best, disputed contrary evidence.

For example, Google claims that the statement ███████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████ And as Mr. Kennedy has pointed out, parties to licenses often make statements denying that rates in a license represent a reasonable royalty, to avoid having rates agreed to in one instance be used against them in later litigations. Ex. 5, Kennedy Dep. at 101:15-102:12.   That is also his understanding as to ██████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
supports Mr. Kennedy's view that this statement is ██████ hedging against future litigation.[5]

Moreover, the  fact  that ███████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████ The negotiation documents cited

---

[5] The same applies to ████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████ Ex. 2 at ECODCT_0001219.
And notably the ██████████████████ has no such statement.  Ex. 4 at ECODCT_0001241.

██████████████████████████████

by Google similarly do not support its position. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██ meaning EcoFactor would seek and accept more if it could, but would not accept less.

Google's request that this Court act as a finder of fact and adopt Google's interpretation of the record is not a proper basis for a motion to exclude expert testimony.

> **4.     That the underlying calculations for the $5.16 rate are not in the record does not vitiate the evidence supporting reliance on that rate.**

Google claims that Mr. Kennedy must ignore the extensive evidence discussed above regarding a $5.16 rate because the calculations by which EcoFactor determined ████████████ ██████████████████████████████ and in which this rate was applied in the ██████████████████ license agreements, is not in the record.  But Google is well aware that these calculations are not in the record because they represent privileged work product or are otherwise restricted by court order.  *See, e.g.,* Ex. 8 at 2.  Mr. Kennedy can only rely on the evidence available to him, and the evidence of the $5.16 rate, including the licenses themselves, contemporaneous documents and testimony under oath, does not evaporate simply because issues of privilege have made some potentially relevant information unavailable to him. It is not particularly unusual to rely on evidence of a royalty rate in a license without having the sales data or other information on which that royalty is based.  Google itself relies on two of its own agreements, even though Google asserted that information regarding the extent to which Google used the technology licensed in the agreements is privileged, to the extent such

████████████████████████████████████████████████

information even exists.  Ex. F, August 4, 2021 Deposition of James Maccoun at 149:21-150:3; 152:20-25; Ex. G, October 28, 2021 Deposition of W. Todd Schoettelkotte at 81:15-25, 82:20-83:9.  Google suggests that Mr. Kennedy should nevertheless have come up with some calculation resulting in $5.16, but any such calculation would have been speculative, especially as it is clear from the record █████████████████████████████████████████████████  Ex. 2 at ECODCT_0001217, Ex. 3 at ECODCT_0001228, and Ex. 4 at ECODCT_0001239 █████████

████████████████████████████████████████████████████████

███████████████████████████.  Thus, what Google demands of Mr. Kennedy would actually be more speculative than what he actually does, which is rely on the actual evidence in the record.

None of Google's cases stand for the principle that Mr. Kennedy must ignore the evidence in the record supporting his rate because the consideration in the ████████████████████████ license agreements is a lump sum.  The *Wordtech* line of cases on which Google relies holds that an expert cannot derive a royalty at from a black-box lump sum based on irrelevant or speculative evidence, not that the expert cannot rely on statements within the agreement itself evidencing the rate underlying that lump sum.  The *Pavo* case cited by Google is illustrative.  There, the expert's opinion deriving a rate from a lump sum was excluded because she did so relying on the number of the licensee's stores, in one case, and on worldwide sales, in another, without establishing that these were relevant "stand ins" for sales data.  *Pavo Sols. LLC v. Kingston Tech. Co., Inc*., No. 814CV01352JLSKES, 2019 WL 8138163, at *4 (C.D. Cal. Nov. 20, 2019). However, the *Pavo* court noted that this does not mean that a lump sum agreement cannot be relied on, if the expert shows how the evidence supports that reliance.  *Id.*

Similarly, in *MLC Intell. Prop., LLC v. Micron Tech., Inc.,* 10 F.4th 1358, 1368 (Fed. Cir. 2021), the Federal Circuit affirmed exclusion of an expert's opinion that the rate in a "most favored customer" provision was the basis of the lump sum royalty in two licenses.  The Federal Circuit acknowledged that it "may well have been proper" to consider the most favored nations rate as relevant evidence of a reasonable royalty, but it agreed with the district court's finding that there was no evidence that the most favored customer rate was related to the lump sums actually

12

paid, as the "most favored customer provision did not state that [the rate therein] was applied to calculate the lump sum payment in either [] license; nor did the licenses provide any insight as to how the lump sum payments were actually calculated." *Id.* at 1366, 1368. And the expert in *Baltimore Aircoil Co., Inc. v. SPX Cooling Techs. Inc.*, No. CV CCB-13-2053, 2016 WL 4426681, at *25 (D. Md. Aug. 22, 2016), assumed, without any evidence, that the sales of the defendant were the same as that of the licensee.

As addressed above, in this case, Mr. Kennedy does show why he believes the lump-sum agreements apply to the facts of this case, describing how the evidence supports his reliance on the per-unit rate stated within the licenses. In this respect, the more relevant holding in *Pavo* is its holding on the other expert's opinion in the case. *See Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 814CV01352JLSKES, 2019 WL 8138163, at *18 (C.D. Cal. Nov. 20, 2019). While the heavily redacted ruling is somewhat difficult to follow, later rulings in the case make clear that the plaintiff's expert relied on a comparable license agreement which included both a royalty and a statement regarding how that royalty was determined. *See Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, No. 814CV01352JLSKES, 2020 WL 9158697, at *8 (C.D. Cal. Aug. 7, 2020) (order denying Rule 50(b) motion and describing expert's opinion in detail). The court ruled that it was not methodologically improper for the expert to rely on the statement within the agreement about how the royalty was determined, as well as corroborating statements in negotiations, rather than the agreed-to royalty amount. *Id.; Pavo*, 2019 WL 8138163, at *18 ("It is clear that Bergman's conclusions on the IPMedia License royalty structure do not result from the sort of unsupported analysis that has been rejected by the Federal Circuit. . . . in examining the IPMedia license and relying upon the license's own description of payments totaling [redacted], Bergman did not engage in impermissible speculation.").

Google also cites case law supporting the principle that an expert should not rely solely on statements by parties or counsel without any evidence supporting those facts. Mot. at 12-13. *See, e.g., US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 689-691 (8th Cir. 2009) (excluding lay opinion of CEO as speculative, and then excluding expert's opinion based on that speculative



lay opinion).  This caselaw is inapposite, because Mr. Kennedy is relying on signed, arms-length agreements, is not relying on any statements by counsel, and only relies on statements by EcoFactor's CEO that are supported by contemporaneous documents and consistent with the testimony of that witness under oath.  The reliability of Mr. Habib's statements ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  And none of Google's cases involve the circumstance that is at issue here, where Mr. Kennedy relies on ████████████████████████████  in addition to other evidence.

### B.  Mr. Kennedy's Comparability Analysis Is Thorough and Fully Consistent with Federal Circuit Precedent

The "'degree of comparability' of [] license agreements is a 'factual issue[ ] best addressed by cross examination and not by exclusion.'" *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373-74 (Fed. Cir. 2020).  Indeed, exclusion of opinions on comparability is warranted only where the licenses have "no relationship to the claimed invention," no "discernible link to the claimed technology," or where the subject matter of the agreements is not even ascertainable. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014).  Moreover, the Federal Circuit, has repeatedly emphasized that "[p]rior licenses ... are almost never perfectly analogous to the infringement action." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014).

As discussed in detail above, EcoFactor's technical and damages experts both establish the comparability of the ████████████████████████  licenses. *See supra* Sections II. B. and C. Google claims that Mr. Kennedy's analysis does not address the fact that the licenses are settlements of litigation, ████████████████████████████████████ ████████████████████  None of these assertions is  true.

### 1.  Mr. Kennedy analyzes and adjusts for the fact that the patent licenses are settlement agreements.

███████████████████████████████████████████████

Far from ignoring the fact that the three patent licenses are settlement agreements, Mr. Kennedy both acknowledges and accounts for this difference relative to the hypothetical negotiation. Google's central claim, that Mr. Kennedy does not even acknowledge they are settlements, is easily proven false.  Taking the ████ agreement as an example, Mr. Kennedy notes the ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ *See e.g.* Ex. 1 ¶ 192-197 (emphasis added); *see also* ¶ 201 (specifying which lawsuits were settled).

Mr. Kennedy also considers how to adjust for the fact that the negotiators to the settlement agreements did not operate under the presumption of infringement and validity that is present at the hypothetical negotiation. *See supra* Section II.C.  For example, Mr. Kennedy relied on the testimony of, and his own conversations with, EcoFactor's CEO, Shayan Habib, establishing that

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. 1 at ¶ 349. This analysis is consistent with cases such as *Prism*, which in which the Federal Circuit has held that there is both a "discount for the probability of losing" and a risk that royalties in settlements are influenced by the costs of litigation, usually in favor of the licensee.  *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017)  ("A settlement tends to undervalue the technology where it reflects a discount for the probability of losing. A patent owner may also accept too little, relative to the patent's value, when it accepts an amount out of a desire to avoid further expenditure of (presumptively unrecoverable) litigation costs.").  *See also Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*, No. 6:18-CV-00388-RWS, 2018 WL 10126008, at *2 (E.D. Tex. Oct. 26, 2018) ("[T]he danger of improperly skewing the damages model in favor of the plaintiff is less here where Papst contends that Mr. Benoit's market approach damages rate actually decreases as a result of his reliance on the four settlement agreements.").

██████████████████████████████

Google argues that Mr. Kennedy ignored evidence that the settlements were ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████  Mot. at 17. Yet Google articulates no reason why Mr. Kennedy should

have placed more weight on such negotiation puffery than on statements than the express

provisions of the executed agreements, and offers made during those negotiations, that he did rely

on. This is, again, a dispute about issues of fact and weight rather than methodology.

Moreover, "the Federal Circuit has repeatedly recognized the relevance of settlement

agreements to the issue of reasonable royalties" (*PerdiemCo, LLC v. Industrack LLC*, No. 2:15-

CV-726-JRG-RSP, 2016 WL 6611488, at *4 (E.D. Tex. Nov. 9, 2016)), holding that whether it

is reasonable to rely on a settlement is in part a function of what other evidence of comparable

agreements is available.  For example, in *LaserDynamics, Inc. v. Quanta Comput. Inc*., 694 F.3d

51, 77-78 (Fed. Cir. 2012), the Federal Circuit ruled a settlement should have been excluded

because, among other reasons, it was "the least reliable license [in the record] by a wide

margin" where there were twenty-nine other licenses involving the patent-in-suit, many of which

were "far more reliable." *Id. See also ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 872 (Fed.

Cir. 2010) ("This court observes as well that the most reliable license in this record arose out of

litigation."); *Comcast Cable Commc'ns, LLC v. Sprint Commc'ns Co., LP*, 218 F. Supp. 3d 375,

385 (E.D. Pa. 2016) (denying motion to exclude opinion based on settlement which was "not the

'least reliable license' in the record, and the record is not replete with 'far more reliable'

licenses.").   Thus, in *PerdiemCo* for example, an expert's reliance on a single settlement

agreement "cross[ed] the threshold of admissibility" where the expert could "reasonably conclude

that such agreements are the most comparable licenses available," and discussed the differences

and similarities between the settlement and the hypothetical negotiation.  *PerdiemCo*, 2016 WL

6611488, at *4.

Here, Mr. Kennedy concluded that not only were the ████████████████████

████████  agreements very much comparable to the hypothetical negotiation, there were no other

████████████████████████████████

relevant license in the record. *See, e.g.,* Ex. 1, Kennedy Rpt., ¶¶ 250-259.[6]  Google disagrees, but the licenses they point to as comparable are clearly not as relevant, if they are relevant at all.  As addressed in EcoFactor's motion to exclude opinions of Mr. Schoettelkotte (D.I. 117, 120 at 1-9), a ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████ Google also relies on two patent licenses between Google and licensors named ██████████████████████ But Google has stated it does not know if it ever used the technology licensed in these agreements, and if it did that would be privileged information. Ex. F, Maccoun Dep. at 149:21-150:1; 152:20-25; Ex. G, Schoettelkotte Dep. at 81:15-25, 82:20-83:9.   There is thus no basis to compare the black box lump sums in those agreements to the hypothetical negotiation. Ex. 1, ¶¶ 255, 257. Nor is there any evidence ████████████ are competitors of EcoFactor in the same respect as Google/Nest, if at all.  *Id.*

Mr. Kennedy could thus reasonably conclude that the ██████████████████████ ████████ settlements are the most comparable licenses available.  And while the expert in *PerdiemCo* had only one such license, Mr. Kennedy has three licenses ████████████████

**2.    EcoFactor's experts provide extensive opinions accounting for the fact that the settlements are** ██████████████████████
████████████████████████████████

As discussed above in Section II.B. and C., EcoFactor's experts acknowledged and accounted for differences in the number of licensed patents relative to the hypothetical negotiation. Ex. 1, ¶¶ 194-208, 344-349, ¶¶ 355-360; Ex. C, de la Iglesia Rpt. ¶¶ 94-102. Mr. Kennedy opines that the parties to the settlements calculated the royalty based on the patents asserted to be infringed by the licensee. Ex. 1, ¶ 267.  This is an entirely reasonable inference, especially for an expert with extensive experience in licensing.  Ex. 1, ¶¶ 4-7; *ProTradeNet, LLC v. Predictive Profiles, Inc.*, No. 6:18-CV-00038-ADA, 2019 WL 6499488, at *3 (W.D. Tex. Oct.

---

[6] Except for one Google's settlement that is not comparable, but "is qualitative evidence of the premium placed on a settlement with a competitor." Ex. 1 ¶ 259.

████████████████████████████████████████████████

11, 2019) ("The Court finds that experts are permitted to rely on reasonable assumptions when reaching their conclusions.").  But this inference is also supported by the evidence, including information from Mr. Habib (Ex. 1, ¶¶ 173, 276, 325), and the agreements themselves, which:



Ex. 1 ¶ 192-197.

Mr. Kennedy also relies on Mr. de la Iglesia's conclusion that each licensee acquired coverage for the same smart thermostat technologies as in the hypothetical negotiation, on highly related patents (in the case of ███████████ or on the exact same patents (in the case of ██████ ████████ . *Id.* Ex. C, de la Iglesia Rpt. ¶¶ 99. Google fails to address Mr. de la Iglesia's comparability opinions, and it should not be permitted to collaterally attack those opinions through this motion. *See GREE, Inc. v. Supercell Oy*, No. 219CV00070JRGRSP, 2020 WL 4057640, at *6 (E.D. Tex., July 20, 2020) (holding that it is appropriate for damages experts to rely on technical experts on technical issues, and those technical opinions and the damages expert's reliance thereon cannot be attacked through a *Daubert* motion against the damages expert.).

Mr. Kennedy opines that nevertheless, Google would argue that the $5.16 per-unit rate needs to be apportioned down to reflect the ███████ – including patents never asserted in litigation, and patents asserted in litigation but that are not asserted against Google. *Id.* ¶¶ 355-360.  But he concludes that "only the asserted patents against ████████████████ were the focus of the agreements, the same patents infringed by Google were asserted against ████████ ████████ all of the asserted patents covered the same three interrelated smart technology areas, [and] EcoFactor's licenses reflected a discount due to the fact that the licensees disputed infringement and validity." *Id.* ¶ 357.

████████████████████████████████████

Mr. Kennedy's opinion is wholly distinguishable from the opinion excluded in *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1380 (Fed. Cir. 2021).  There, the expert exclusively relied on plaintiff's purported licensing policy that applied a five dollar per unit royalty regardless of the number of patents licenses.  The expert's evidence of this rate was most-favored-nations clauses that did not, in fact, show that that such policy would have been applied at the hypothetical negotiation.  *Id.* ("Omega simply has not pointed to evidence that any of the relevant most-favored-nation clauses would be implicated by a one-patent license to CalAmp at a rate of less than $5.00 per unit.").  And there is no indication that this expert was relying on a technical expert's analysis.

Here, Mr. Kennedy relies on the technical analysis by Mr. de la Iglesia explaining that the seven patents asserted against ████████████  and the four patents asserted against ████████████, all cover the same technologies as are covered by the patents asserted against Google: HVAC Performance Modeling, Smart Scheduling and Occupancy Detection, and Demand Reduction. Ex. C, de la Iglesia Rpt. ¶ 99. Because ██████████████████ ██████ each acquired patent rights covering the same technologies, the jury has a proper basis from which to conclude that the $5.16 per-unit rate in the executed settlement agreements represents the market value for the specific features covered by the three patents EcoFactor asserts against Google.  The Federal Circuit condones this real-world approach to determining a royalty rate on comparable features and products. *Elbit Systems Land et al. v. Hughes Network Systems*, 927 F.3d 1292, 1302-03 (Fed. Cir. 2019). Moreover, ████████████████████████ ████████████████████████████████████ ████████████████████████████

A more relevant case is *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030 (Fed. Cir. 2020), in which the court found the license relied on by the expert sufficiently comparable even though: the license was from 2010 and the hypothetical negotiation was in 2016; the 2010 license encompassed rights to more than 400 patents; and the royalty established in that license was subject to a cap for sales above a certain amount. *Id.* The expert addressed these and other

differences, and the Federal Circuit concluded (citing *Bio-Rad*) that "[the defendant] cross-examined [the expert] on those matters, and the disputes over that evidence were properly left for the jury to resolve. " *Id*. at 1041.

## IV. CONCLUSION

For the foregoing reasons, EcoFactor respectfully requests that the Court issue an Order denying Google's motion to exclude Mr. Kennedy's opinions.

Date:  December 3, 2021

Respectfully submitted,

/s/ *Reza Mirzaie*

Reza Mirzaie
Marc A. Fenster
Paul A. Kroeger
Adam Hoffman
James Pickens
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
prkoeger@raklaw.com
ahoffman@raklaw.com
jpickens@raklaw.com

*Attorneys for Plaintiff EcoFactor, Inc.*

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that my firm, including my colleagues James Pickens and Kris Davis, conferred with Defendant's counsel regarding the foregoing Motion to Exclude on Thursday, November 11, 2021, where EcoFactor explained that it would oppose the requested relief.

/s/ Reza Mirzaie

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document is being served upon counsel of record for Defendant on December 3, 2021 via electronic service.

/s/ Reza Mirzaie