UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 6:20-cv-00075 (ADA) <br><br> ███████████ |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID KENNEDY**

1774596

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. Mr. Kennedy's opinion has no methodology tying the lump sum settlement amounts to a per-unit royalty rate of $5.16. ............................................................2

        1. *EcoFactor cannot rely upon calculations "not in the record" to bolster Mr. Kennedy's unsupported opinion.* ..............................................2

        2. *Even if calculations existed outside "the record," their existence would not absolve Mr. Kennedy from supporting his own opinion.*............4

    B. Mr. Kennedy's opinion that $5.16 is a reasonable per-unit royalty rate is fundamentally unsupported by the evidence. ..........................................................6

    C. Mr. Kennedy performed no analysis of economic comparability. ........................10

III. CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*,
2016 WL 4426681 (D. Md. Aug. 22, 2016) .......... 5

*Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Solstice ABS CBO II, Ltd.*,
910 F. Supp. 2d 629 (S.D.N.Y. 2012) .......... 7

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .......... 4

*CSIRO v. Cisco Sys, Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) .......... 10

*Doe 1 v. Baylor Univ.*,
320 F.R.D. 430 (W.D. Tex. 2017) .......... 3

*Info-Hold, Inc. v. Muzak*,
2013 WL 4482442 (S.D. Ohio Aug. 20, 2013) .......... 8

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) .......... 5, 6

*In re MSTG, Inc.*,
675 F.3d 1337 (Fed. Cir. 2012) .......... 3

*Omega Patents., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) .......... 10

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
2019 WL 8138163 (C.D. Cal. Nov. 20, 2019) .......... 4, 5, 6

I.      INTRODUCTION

Mr. Kennedy based his reasonable royalty opinion on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ Mr. Kennedy performed *no* calculations to show that rate was used to arrive at the ▓▓▓▓▓▓▓▓ to which the licensees agreed. In its Opposition, EcoFactor insinuates that calculations tying the licensees' sales to the lump sum amounts *were* performed by "▓▓▓▓" but admits that any such calculations are "not in the record," because they are purportedly privileged or protected "by court order." Opp. at 11. But EcoFactor's claim that calculations exist outside of the record cannot save Mr. Kennedy's opinion. To the extent such unproduced calculations were actually performed, EcoFactor cannot simultaneously rely on them to bolster its expert's opinion, while also shielding them from discovery. And in any event, Mr. Kennedy opined as to a reasonable royalty rate without having seen any such calculations or any underlying licensee sales data. Thus, whether calculations were performed by "▓▓▓▓" has no bearing on the fact that no reliable methodology underlies Mr. Kennedy's opinion.

Unable to explain Mr. Kennedy's lack of methodology, EcoFactor attempts to recast Google's motion as an evidentiary dispute. But Google does *not* argue that Mr. Kennedy simply mis-weighed particular evidence. Instead, Google argues that beyond Mr. Kennedy's lack of a reliable methodology, his royalty rate opinion bears *no* relationship to the evidence, which Mr. Kennedy did not account for. Instead, in advancing a royalty rate of $5.16, Mr. Kennedy merely relies upon an email from EcoFactor's trial counsel and testimony from EcoFactor's CEO that does not support Mr. Kennedy's opinion. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But such data

1

would be necessary to calculate a per-unit royalty purportedly based upon "▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Finally, EcoFactor has no response to the fact that Mr. Kennedy's unyielding advance of a per-unit royalty rate of $5.16 fails to account for the fact that those agreements licensed EcoFactor's entire patent portfolio. Because Mr. Kennedy's opinion is unreliable and unsupported under *Daubert* and Rule 702, Google's motion to exclude should be granted.

**II.      ARGUMENT**

     **A.      Mr. Kennedy's opinion has no methodology tying the lump sum settlement amounts to a per-unit royalty rate of $5.16.[1]**

          *1.      EcoFactor cannot rely upon calculations "not in the record" to bolster Mr. Kennedy's unsupported opinion.*

Remarkably, EcoFactor claims in its Opposition that calculations supporting Mr. Kennedy's damages opinion of $5.16 as a per-unit royalty rate exist, but that they "are not in the record." Opp. at 11. According to EcoFactor, such calculations could not be provided to Google or Mr. Kennedy because they are "privileged work product or . . . restricted by court order." Opp. at 11. EcoFactor's reference to these purported, undisclosable calculations is contrary to the testimony of Mr. Kennedy and Mr. Habib, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Kennedy testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and that he did not "▮▮▮▮▮▮▮▮▮▮▮▮▮▮" whether EcoFactor or its counsel ever had "▮▮▮▮▮▮▮" from the licensees. Ex. 5, ECF 114-6, at 111:14-17. Mr. Habib testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] EcoFactor readily concedes that it cannot satisfy the "legal test" for $5.16 to be characterized as an "established" royalty rate, but nonetheless argues that Mr. Kennedy may use the term in a "plain-meaning sense." Opp. at 8 n.2. This is a distinction without a difference. Having admitted that $5.16 is not an "established" royalty rate, there is no basis for Mr. Kennedy to opine that it is.

███████████████████████████████████████████

Suppl. Porto Decl. Ex. 16 at 296:15-20; 297:16-25; Ex. 17 at 328:13-22, 331:21-24; 440:3-9.[2]

Even assuming that EcoFactor's counsel possesses the licensees' past and future sales data or per-unit royalty calculations (as its Opposition implies), EcoFactor cannot now rely on that to prop up the opinion of its expert, after having failed to produce the information in response to Google's motion to compel, and having confirmed EcoFactor had produced *all* information to support Mr. Kennedy's opinion.  Google's motion sought all information related to calculations and sales data underlying the $5.16 per unit royalty rate.  *See* Ex. 8, ECF 114-9.  In filing its motion, Google sought to avoid the very scenario it now faces, in which EcoFactor refers to out-of-record data and calculations that allegedly support its expert's opinion, having failed to disclose those documents in discovery.  Thus, even accepting EcoFactor's specious claims that licensee sales data or calculations are privileged, work product, or could not be produced under the protections of a protective order, EcoFactor cannot now suggest that such out-of-record information insulates its expert's opinion from scrutiny.  *See Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 439 (W.D. Tex. 2017) (a party may not "use[] confidential information against his adversary" without "implicitly waiv[ing] its use protectively" as a "shield" under the privilege).  "As a matter of fairness," EcoFactor "cannot at one and the same time have its expert rely on information about the settlement negotiations and deny discovery as to those same negotiations." *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (refusing to recognize settlement negotiation privilege).  Given EcoFactor's decision not to produce allegedly existing licensee

---

[2] ████████████████████ there is ***nothing*** in the record to support this and such information has never been produced.

sales data or calculations in the face of this Court's Order requiring it do so, it cannot now claim those calculations would have supported Mr. Kennedy's opinion.

> 2. *Even if calculations existed outside "the record," their existence would not absolve Mr. Kennedy from supporting his own opinion.*

Even if EcoFactor could show that calculations existed outside "the record," Mr. Kennedy would be no less obligated to substantiate ███████████ as to a per-unit royalty rate of $5.16.  *See In re ConAgra Foods, Inc*., 302 F.R.D. 537, 556 (C.D. Cal. 2014) ("[A]n expert can appropriately rely on the opinions of others" only where "other evidence supports his opinion and the record demonstrates that the expert conducted an independent evaluation.").  Mr. Kennedy performed no calculations whatsoever.  Thus, his opinion is unreliable regardless of whether unidentified "others" performed calculations of which Mr. Kennedy was not aware.  Instead of explaining (or attempting to defend) Mr. Kennedy's lack of analysis, EcoFactor misconstrues Google's critique as rooted in the fact that the licenses "are for a lump sum." Opp. at 12.  But as Google's Motion makes clear, Mr. Kennedy's opinion is unreliable not because he relies on lump sums, but because he has *no method* for tying those lump sums to a per-unit rate of $5.16.

EcoFactor fails to distinguish any of the cases in Google's Motion, all of which conclude that a damages expert relying upon lump sum agreements for a reasonable royalty rate must perform calculations tying those lump sums to the royalty rate.  In *Pavo Sols. LLC v. Kingston Tech. Co., Inc*., 2019 WL 8138163, at *5 (C.D. Cal. Nov. 20, 2019), for example, Pavo's expert's opinion was excluded because she had "not demonstrated **how the lump sums extracted from [the license] agreements could be accurately converted to a royalty rate**."  EcoFactor has no response to the court's analysis in *Pavo*, except to say that *Pavo* did not determine "that a lump sum agreement cannot be relied on," which is undisputed.  Opp. at 12.  Incapable of distinguishing the relevant analysis, EcoFactor focuses on the *Pavo* court's "later rulings," which

4

are "heavily redacted" and relate to a different expert. Opp. at 13 (arguing "the more relevant holding in *Pavo* is its holding on the other expert's opinion"). But just like the expert in *Pavo*, Mr. Kennedy is "incapable" of tying the lump sum amounts to the royalty rate he proposes, because "the relevant sales numbers" are not in the record. *Pavo,* 2019 WL 8138163, at *5.

Nor does EcoFactor distinguish Mr. Kennedy's opinion from *Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*, 2016 WL 4426681, at *25 (D. Md. Aug. 22, 2016), where the expert derived a royalty rate from a lump sum using "[the defendant's] projected sales," rather than the licensee's sales. *Id.* Like Mr. Kennedy, the expert had "no justification" for failing to tie the royalty rate to the lump sum, "**besides lacking information on [the licensee's] sales**." *Id.* EcoFactor argues that Mr. Kennedy's complete lack of analysis was *more* reliable than had he attempted to perform a calculation, because any "calculation would have been speculative" given that the rate was allegedly "based on . . . [some] estimates of future sales." Opp. at 12. But EcoFactor has no support for its argument that it is acceptable for an expert to forgo any analysis whatsoever because it may rely on an estimate of future sales, and the caselaw holds otherwise. Without any calculations, Mr. Kennedy's "opinion offers mere speculation masquerading as quantitative analysis." *Baltimore Aircoil Co.*, 2016 WL 4426681, at *25.

Finally, EcoFactor fails to distinguish *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1368 (Fed. Cir. 2021), in which the court excluded an expert's opinion because he "**did not provide mathematical analysis** to derive the [asserted] royalty rate from the lump-sum payments in the [relevant] licenses." Like Mr. Kennedy, the expert in *MLC* hinged his opinion on a single clause that referenced a running royalty rate. *Id.* at 1364. Though the court acknowledged that the expert's testimony "may well have been proper had he merely asserted" that the clause was "a relevant consideration," he "crossed the line when he stated that he understood that the .25% rate *was applied* . . . in calculating the lump-sum license payment." *Id.*

5

at 1368 (alterations adopted).  EcoFactor offers no distinction between Mr. Kennedy's opinion and the expert's opinion in *MLC*, both of which lacked any "mathematical analysis" showing that "the lump-sum payments were, in fact, based on [a] royalty rate." *Id.*[3]  Without a methodology to justify the extraction of a per-unit royalty rate from the three lump sum payments, Mr. Kennedy's opinion amounts to little more than a "recitation of royalty numbers," and it must be excluded. *Pavo*, 2019 WL 8138163, at *5.

> **B.     Mr. Kennedy's opinion that $5.16 is a reasonable per-unit royalty rate is fundamentally unsupported by the evidence.**

Unable to justify Mr. Kennedy's lack of methodology, EcoFactor attempts to recast Google's Motion as disputing the evidence upon which Mr. Kennedy relies.  But Google's criticism of Mr. Kennedy's opinion is that he fails to account for any contradictory evidence, and thus that his opinion is "fundamentally unsupported," which EcoFactor concedes warrants exclusion.  Opp. at 8.  Contrary to EcoFactor's arguments, Mr. Kennedy's opinion is not supported by the licenses themselves, Mr. Habib's testimony, or the "negotiation documents."

*First*, contrary to EcoFactor's characterization, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  Opp. at 1.  EcoFactor's description is misleading at best, given that it fails to acknowledge the statement is contained within a "▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  Opp. at 1.  Mr. Kennedy does not address (or acknowledge) this limitation in his report.  Nor does Mr. Kennedy acknowledge explicit



---

[3] EcoFactor attempts to equate Mr. Kennedy's reliance on lump sums to support a per-unit royalty with Google's damages expert's reliance on lump sum agreements. Opp. at 11.  But unlike Mr. Kennedy, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  *See* Suppl. Porto Decl. Ex. 18 (Schoettelkotte Rpt.) ¶¶ 143, 147, 153.  There was thus no need for Google to tie the lump sum amounts to a reasonable royalty rate via a calculation; the total amounts were clear from the face of the licenses and did not depend on any claim as to what those lump sum amounts represent.

statements evidencing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

For example, Mr. Kennedy makes no mention in his report of the statement in the ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇," nor does he acknowledge the statements in the ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *See* Ex. 2, ECF 114-3; Ex. 3, ECF-114-4 (emphasis added).

In its Opposition, EcoFactor attempts to perform Mr. Kennedy's analysis for him, by explaining at length that ▇▇▇▇▇▇ statement should be discounted because ▇▇▇▇▇▇ did not disagree that the $5.16 was applied as a per-unit reasonable royalty, and making similar arguments related to the ▇▇▇▇▇ license. *See* Opp. at 10; *see id.* n.5. But EcoFactor offers no explanation for the fact that Mr. Kennedy's report fails to even acknowledge the terms of the ▇▇▇▇▇▇ and ▇▇▇▇▇ licenses, and EcoFactor cannot substitute the arguments of its counsel for its expert's silence. EcoFactor's post hoc explanations (without citation to Mr. Kennedy's report) are themselves unsupported and do not cure Mr. Kennedy's unsupported opinion. *See* Opp. at 10; *id.* at 10 n.5 (EcoFactor counsel offering explanation of Daikin agreement without citation to any analysis by Mr. Kennedy). *See Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 648 (S.D.N.Y. 2012) (excluding damages calculation based on expert's "faulty assumption" that contradicted contractual terms).

*Second*, EcoFactor has no response to Google's argument that Mr. Kennedy cannot rely on Mr. Habib to support a royalty rate of $5.16, because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Thus, Mr. Kennedy's "discussion[s]" with Mr. Habib, during which he purportedly "obtain[ed] additional detail," are meaningless. Opp. at 9. Mr. Habib testified under oath that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

7

1774596

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

*See* Suppl. Porto Decl. Ex. 16, Ex. 17.  Mr. Habib himself could not perform any calculation tying the lump sums to a per-unit royalty.  Given Mr. Habib's lack of personal knowledge, Mr. Habib, like Mr. Kennedy, is nothing more than a mouthpiece for the arguments of EcoFactor's counsel.  And again, EcoFactor fails to distinguish the cases upon which Google relies.  In *Info-Hold, Inc. v. Muzak*, 2013 WL 4482442, at *5 (S.D. Ohio Aug. 20, 2013), which EcoFactor never addresses in its Opposition, the court rejected the opinion of an expert who failed to "verify anything that Plaintiff's CEO or Plaintiff's counsel told him."  *Id.*  As in *Info-Hold*, Mr. Kennedy's testimony parroting unverified statements from EcoFactor's CEO and its counsel is "more advocacy for Plaintiff than expert testimony," and thus "his opinion is unreliable."  *Id.*

*Third*, EcoFactor suggests that "negotiation documents" provide Mr. Kennedy with "significant evidence" that $5.16 is a reasonable per-unit royalty rate.  Opp. at 9.  But based on EcoFactor's representations to Google and this Court, Mr. Kennedy cannot rely on any of these "negotiation documents" (and in fact only cites one such document in his report).  During the hearing on Google's motion to compel all evidence related to its purported calculations at $5.16 per unit, EcoFactor's counsel stated that its damages "expert is ***not relying*** on" emails from "current trial counsel."  Suppl. Porto Decl. Ex. 19 (Hr'ing Tr.) at 9:25‑10:1.  EcoFactor's counsel explained that "***the expert doesn't need to rely on these at all***" but instead, that Mr. Kennedy was "relying on these settlement agreements[.]"  *Id.* at 10:5‑7.  Now, EcoFactor's trial counsel's attempt to bolster Mr. Kennedy's opinion by reference to ***its own*** emails is inconsistent with its representation to the Court.[4]  This Court has made clear that EcoFactor *cannot* rely upon these

---

[4] In another contradiction, EcoFactor's Opposition states that Mr. Kennedy "is not relying on statements by counsel," but then otherwise cites to counsel's emails.  Opp. at 14.

communications at trial.  As the Court explained, "[c]ommunications between counsel and somebody else, unless you have prepared those up in a way that will get them into evidence, *they're not coming in*."  *Id.* at 9:18‑20.  Thus, EcoFactor's attempt to recast Mr. Kennedy's citation to one email as "significant evidence" must be rejected.  Opp. at 9.

In any event, the email thread cited in Mr. Kennedy's report does not support his opinion.[5]  In that email, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *See* Ex. 10, ECF 114-11.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *See* Ex. 2, ECF 114-3.  Thus, even if EcoFactor could rely on emails from its own trial counsel—which this Court made clear that it cannot—Mr. Kennedy's opinion remains fundamentally unsupported.  As discussed in Google's Motion, this email, among others, further demonstrates the unreliability of Mr. Kennedy's opinions by showing that ▇▇▇▇▇▇▇▇ ▇▇▇▇▇—a rate that was plucked out of nowhere and proposed by EcoFactor's trial counsel.  The cases EcoFactor cites permitting damages experts to rely on negotiation documents to inform their reasonable royalty opinions are wholly irrelevant.  The issue here is not, as a general matter, an expert's reliance on negotiations or settlement "offers" to inform an opinion.  Opp. at 9.  Instead, Mr. Kennedy's reliance on *this* negotiation email not only fails to support his royalty rate opinion but is improper because the only sponsoring witness for it is EcoFactor's trial counsel.[6]  Thus

---

[5] The Opposition also cites an email from EcoFactor's counsel referencing a "rate card" that Mr. Kennedy never addressed.  *See* Opp. n.4 (citing Exhibit 8 to Google's Motion).  EcoFactor has never produced this "rate card."  *See* Ex. 8, ECF 114-9.

[6] As this Court has made clear, trial counsel testifying is "not going to happen."  *See* Hr'ing Tr. at 8:14-21; *see also* ABA Rule 3.7 ("A lawyer shall not act as advocate at trial in which the lawyer is likely to be necessary witness…."); Texas Disciplinary Rules of Professional Conduct, Rule 3.08 ("A lawyer shall not accept or continue employment as an advocate before a tribunal . . . if the lawyer knows or believes that the lawyer is or may be a witness").

*CSIRO v. Cisco Sys, Inc.*, 809 F.3d 1295 (Fed. Cir. 2015), which permitted a damages methodology involving an unused rate card, is inapposite.

### C.  Mr. Kennedy performed no analysis of economic comparability.

Finally, Mr. Kennedy is so committed to a per-unit royalty rate of $5.16 that he performed no analysis to show that the three settlement licenses were economically comparable to the license in the hypothetical negotiation; they are not.  Most glaringly, EcoFactor cannot explain Mr. Kennedy's failure to account for the fact that, although the hypothetical negotiation would have provided a license to only three patents-in-suit, the licenses used to support the alleged $5.16 per unit royalty ▬▬▬▬▬▬▬▬▬▬▬▬▬▬  Instead of addressing this, EcoFactor focuses on its technical expert's analysis, erroneously suggesting that this remedies Mr. Kennedy's failure to address the economic comparability (or lack thereof) of the settlement agreements' portfolio-wide licenses.  *See* Opp. at 3-4, 19.  EcoFactor also fails to distinguish *Omega Patents., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1379 (Fed. Cir. 2021), where, like Mr. Kennedy, the expert opined that the defendant "should pay the same rate no matter how many claims or . . . patents it infringes."  *Id*.  Just like in *Omega Patents*, Mr. Kennedy fails to "account for [] distinguishing facts" in the allegedly comparable portfolio licenses.  *Id*.  Mr. Kennedy's opinion that only the few patents "▬▬▬▬" in each settlement agreement had any value, Kennedy Rept. ¶ 347, cannot be reconciled with EcoFactor's assertion of distinct sets of patents against Google (and other defendants) in the ITC and the Western District of Texas.  EcoFactor's own litigation conduct reveals that it sees value in the other patents within its portfolio, lest it wouldn't expend resources enforcing them.  Mr. Kennedy's attribution of no value to the other patents covered by the settlement agreements does not satisfy *Daubert*.

### III.  CONCLUSION

Google respectfully requests that Mr. Kennedy's opinion be excluded in its entirety.

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated:  December 10, 2021

By:  J*ennifer A. Huber with permission,*
     *by Michael E. Jones*

Shamita Etienne-Cummings
(*admitted to the Western District of Texas*)
Allen & Overy LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3810
GoogleEcofactorWDTX@AllenOvery.com

Bijal V. Vakil
(*admitted to the Western District of Texas*)
Eric Lancaster (admitted *Pro Hac Vice*)
Allen & Overy LLP
530 Lytton Avenue, 2nd Floor
Palo Alto, CA 94301
Telephone: (650) 388-1703
GoogleEcofactorWDTX@AllenOvery.com

ROBERT A. VAN NEST
LEO L. LAM
EUGENE M. PAIGE
R. ADAM LAURIDSEN
JENNIFER A. HUBER
KRISTIN HUCEK
PATRICK E. MURRAY
ANNA PORTO
GREGORY WASHINGTON
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
econest-kvp@keker.com

POTTER MINTON
Michael E. Jones (TX Bar No. 10929400)
mikejones@potterminton.com
Patrick C. Clutter (TX Bar No. 24036374)
patrickclutter@potterminton.com
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

Attorneys for Defendant GOOGLE LLC

11