# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., | Civil Action No. 6:20-cv-00075 (ADA) |
| Plaintiff, | |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

## DEFENDANT GOOGLE LLC'S RESPONSE TO PLAINTIFF'S OPPOSED MOTIONS IN LIMINE

1783631

CONFIDENTIAL – ATTORNEYS' EYES ONLY VERSION

I.  **Response to EcoFactor's MIL No. 1:  To preclude evidence or argument regarding EcoFactor's attorney fee agreements or regarding payments or non-payments to EcoFactor's litigation counsel, Russ August & Kabat.**

Documents produced in this case reveal that EcoFactor's trial counsel were the architects of a per-unit royalty rate of $▮, a number they inserted into three litigation settlements to create a purported royalty rate for use in subsequent litigation, including this case. Murray Decl.[1], Exs. 1-7. The financial interest of EcoFactor's counsel in the outcome of this case is highly relevant to whether a jury should credit the reasonable royalty rate EcoFactor and its damages expert advance here.

Google does not seek "free reign" to discuss EcoFactor's trial counsel's fees. Evidence of EcoFactor's counsel's stake in the litigation would come in *only* if EcoFactor is permitted to advance the $▮ per-unit royalty in this case. Google has asked the Court to preclude EcoFactor's damages expert from opining that $▮ is a per-unit royalty because the number is not derived from any reliable method. ECF No. 114. Google has also asked the Court to grant a motion *in limine* precluding EcoFactor from arguing that $▮ is an "established royalty" or that a per-unit royalty of $▮ would be appropriate based on EcoFactor's refusal to provide discovery on how (or whether) that rate was calculated. *See* ECF No. 151. If the Court grants Google's motions, Google would not oppose this motion *in limine* because Google would have no need to discuss EcoFactor's counsel's financial motivations for crafting that number. If Google's motions are not granted, however, EcoFactor's counsel's stake in this litigation would be highly relevant to the jury's assessment of the per-unit royalty rate EcoFactor advances.

Google acknowledges that seeking to introduce evidence mentioning trial counsel's financial stake (specifically, Russ August & Kabat's contingency interest in a damages award) is

---

[1] Declaration of Patrick E. Murray in support of Google's Response to Plaintiff's Opposed Motions in Limine ("Murray Decl.")

1

unusual, but the situation here is not normal. The sole reason EcoFactor's counsel included the $█ figure in these agreements is to target an outsized damage award from subsequent defendants like Google, which directly benefits EcoFactor's contingency counsel. Notably, all three settlement and license agreements were consummated *after* this litigation commenced, giving EcoFactor's counsel great incentive to advance a per-unit license number as large as possible. There is no evidence to show how $█ has anything to do with the value of the inventions of the patents-in-suit. Any purported prejudice suffered by EcoFactor in having its counsel's financial arrangements disclosed is plainly outweighed by the probative value to the jury of understanding why EcoFactor's counsel sought to manufacture this per-unit royalty.

EcoFactor alleges in its motion that Google does not need to mention EcoFactor's counsel's incentives for fashioning the $█ figure because "Google will already have the right to cross-examine EcoFactor's CEO, the person who (unlike trial counsel) authorized the offers and signed the agreements." Motion[2] at 3. But, critically, EcoFactor's CEO testified that ███ ████████████████████████████████. *See* Murray Decl., Ex. 8 at 296:15-297:4. Instead, EcoFactor's CEO claimed that ██████ ████████████████████████████ ██████████████. *See, e.g., id.* Ex. 9 at 328:13-331:24. Based on EcoFactor's CEO's sworn testimony, EcoFactor cannot now try to minimize its counsel's role in developing, which indeed is the only basis for, this fictitious per-unit royalty rate. EcoFactor cannot now belatedly assert that its CEO will provide the answers at trial, when its CEO has already testified under oath to ██████████████████████████████████████████

---

[2] Plaintiff EcoFactor, Inc.'s Opposed Motions *in Limine* ("Motion"), ECF No. 153.



███. EcoFactor's CEO's testimony directly contradicts the suggestion that ███████████████████████████████████████████████████████████████. Cross examining the company's CEO without being able to mention EcoFactor's counsel's financial motivations for inserting the supposed "reasonable royalty" rate would hamstring Google's ability to cast legitimate doubt on the origin and validity of the $███ number.

If the Court allows EcoFactor to advance the $███ per-unit royalty number that came from its trial counsel with a contingency interest in this case, it also should allow Google to elicit evidence showing the financial motivations its counsel had for concocting that number.

**II.     Response to EcoFactor's MIL No. 2: To preclude evidence or argument regarding how, or to whom, a damages award to EcoFactor may be distributed, including its members' or shareholders' ownership interests in the company.**

The Court should not exclude evidence regarding how a damages award to EcoFactor may be distributed or evidence concerning EcoFactor's members' or shareholders' ownership interests in EcoFactor.

Google seeks to elicit testimony regarding EcoFactor's ownership and the financial interests of individuals that have been identified as witnesses for trial: EcoFactor's CEO, Mr. Shayan Habib, and its vice president of engineering, Mr. Glen Okita.[3] EcoFactor's first motion *in limine* makes clear that EcoFactor plans to rely on Mr. Habib to support its $███ per unit royalty number. *See* Motion at 2-3. In fact, this motion states that "Google can probe EcoFactor's reasoning and motivation for offering the per-unit royalty rate of $███, and for entering into settlement agreements based on a per-unit royalty rate of $███, through the cross-examination of EcoFactor's CEO, Shayan Habib." *See id.* at 2. The financial interest, and the associated

---

[3] Each of these witnesses, for example, ██████████████████████████████████████████████████████████████. Murray Decl., Ex. 13.

potential bias, of the very witness that EcoFactor plans to rely upon to support the purported $■ per-unit royalty rate adopted by Ecofactor's damages expert, is highly relevant to the merits of this case and should not be excluded. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2015 WL 627430 (E.D. Tex. Jan. 31, 2015) (recognizing that preclusion of evidence relating to counsel's financial interest "does ***not*** apply to testifying witnesses' financial interests") (emphasis in original).

As EcoFactor notes, this Court recently addressed a similarly worded motion *in limine* in the *MV3 Partners LLC v. Roku, Inc.*, No. 18-cv-00308-ADA, Dkt. No. 332 at 2 (W.D. Tex. Sept. 29, 2020). But the facts in that case are not analogous to the present one. Here, EcoFactor intends to use its CEO to vouch for the settlement agreements as supporting a royalty rate of $■ per unit. There is ***no*** evidence to support this except for an EcoFactor representation contained in settlement agreements drafted by its trial counsel. Google must be permitted to explore the financial interest and biases of EcoFactor witnesses, particularly Mr. Habib, who is expected to testify to the $■ number at the heart of EcoFactor's damages case, as well as that of its counsel, as discussed above.

**III.    Response to EcoFactor's MIL No. 3:  To preclude evidence or argument that if the jury were to award EcoFactor the damages that it is seeking from Google, this would increase the price of Google's products to customers, put Google's manufacturers or partners out of business, or lead to the loss of jobs.**

Google does not intend to present evidence regarding the effect a potential damages award would have on customers, manufacturers and partners, or any resulting job losses. So long as Google has the ability to present the sort of evidence contemplated by the *Georgia-Pac. Corp. v. U.S. Plywood Corp.* opinion and its progeny, Google does not oppose EcoFactor's motion. In particular, as it relates to the present motion, Google must be permitted to present evidence and argument addressing the fifteenth factor enumerated in *Georgia-Pac. Corp.,* which requires

consideration of the amount "a prudent licensee . . . would have been willing to pay as a royalty and yet be able to make a reasonable profit." 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**IV.    Response to EcoFactor's MIL No. 4: To preclude evidence or argument regarding an "advice of counsel" defense.**

It is unclear what evidence EcoFactor seeks to exclude by motion *in limine* No. 4, since EcoFactor does not define the scope of the term "regarding." The Court should deny this motion because it is vague and can be addressed when specific "advice of counsel" evidence or argument is sought to be introduced at trial, or the Court should at least narrow the scope of the sought-after prohibition.

Though Google does not plan to invoke advice of counsel as a defense, EcoFactor should not be allowed to argue that Google willfully infringed because its engineers did not rely on an opinion of counsel when developing Nest products. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (en banc) ("The adverse inference that an opinion was or would have been unfavorable, flowing from the infringer's failure to obtain or produce an exculpatory opinion of counsel, is no longer warranted."); 35 U.S.C. § 298 (the lack of a formal opinion of counsel "may not be used to prove that the accused infringer willfully infringed the patent."). Any such argument by EcoFactor would be legally impermissible and highly prejudicial, and indeed purports to provoke (by using as a sword) the very issue that EcoFactor seeks to preclude Google from introducing (as a shield).[4]

---

[4] To the extent EcoFactor seeks a broader prohibition, the Court should deny it. For example, Google should not be precluded from offering evidence about its engineering and product-development process. Google engineers should also be allowed to explain, as EcoFactor already knows, that any potential patent issues that arise during product development are referred to the legal team.

5

**V.     Response to EcoFactor's MIL No. 5:  To preclude evidence or argument relating to documents originating with Trane that were not timely produced in this case, and further to preclude evidence, argument, or suggestion that EcoFactor's expert witnesses should have addressed those documents in their expert reports.**

EcoFactor argues that evidence related to EcoFactor's agreement with Trane—an HVAC provider to whom EcoFactor sold or licensed software, patents, and other assets for $▮ ▮—should be excluded because it would confuse and mislead the jury. *See* Motion at 7. But EcoFactor's agreement gave ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and is thus probative of the value of the patents-in-suit. *See* ECF No. 117-4 at EF_0665798-99.

The documents about which EcoFactor complains were produced by Trane in response to a third-party subpoena. ECF No. 127 at 8-9. EcoFactor specifically seeks to exclude two documents, both of which are highly relevant to the value of the asserted patents. *See* Motion at 7 (citing DTX 98 and DTX 100). The first document is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ECF No. 127-2. The second document is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." ECF No. 127-4 at TRANE0000100. These documents are directly relevant to the value of EcoFactor's intellectual property. Courts have repeatedly held that agreements involving rights to the asserted patents can be considered in assessing a reasonable royalty for a hypothetical license.[5]  Indeed, even "negotiations" and "offers" that

---

[5] *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (upholding damages expert's testimony about licenses that "relate[d] to the actual patents-in-suit"); *Robocast, Inc. v. Microsoft Corp.*, 2014 WL 202399, at *3 (D. Del. Jan. 16, 2014) (explaining that the "sale of patent rights . . . serves as a relevant data point in determining the value which the parties to the hypothetical negotiation would place on technologically similar patents."); *Integra Lifesciences*

were not incorporated into a final, executed agreement "may be probative of a reasonable royalty." *Pioneer Corp. v. Samsung SDI Co.*, 2008 WL 11344761, at *5 (E.D. Tex. Oct. 2, 2008).[6] EcoFactor thus has no support for its argument that documents related to its agreement with Trane should be excluded. To the extent EcoFactor questions these emails because they are "internal Trane documents" that were not contemporaneously shared with EcoFactor, it can take the issue up on cross examination. Motion at 7.[7]

Finally, EcoFactor argues that Google should not be permitted to criticize EcoFactor's damages expert, David Kennedy, for failing to address the Trane documents, because those documents were not produced during fact discovery. *See* Motion at 8-9. But as Google explained in opposing EcoFactor's related *Daubert* motion, Mr. Kennedy testified that he **did review and consider** the Trane Agreement, and would not have addressed it under any circumstance, because he deemed it non-comparable to the license that would be produced by the hypothetical negotiation. *See* ECF No. 127-11 at 184:22-185:19. He made clear that he would not have considered the two Trane emails, either, testifying that even if some ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," his "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.* Given Mr. Kennedy's view of the Trane Agreement, EcoFactor chose not to seek any extension

---

*I, Ltd. v. Merck KGaA*, 331 F.3d 860 (Fed. Cir. 2003), *vacated and remanded on other grounds*, 545 U.S. 193 (2005) ($15 million jury award for infringement of only some patents "seem[ed] unbalanced" with a $20 million acquisition that included all the company's patents, products, and know-how); *Parthenon Unified Memory Architecture LLC v. Apple Inc.,* 2016 WL 7670833, at *1 (E.D. Tex. Sept. 21, 2016) (permitting damages expert to provide opinion that relied in part on patent purchase agreements).

[6] *See also In re ChanBond, LLC Patent Litig.*, 2020 WL 550786, at *3 (D. Del. Feb. 4, 2020) (unconsummated offer to sell patent-in-suit is relevant "datapoint" and admissible evidence at trial).

[7] EcoFactor also argues that Google cannot rely on the Trane emails because they are "hearsay." Motion at 7. But Google expects to establish a business records exception at trial. *See Hobbs v. Alcoa Inc.*, 2005 WL 8157351, at *5 (W.D. Tex. Nov. 28, 2005) (permitting defendant to rely on "emails and [a] transcribed telephone message" that had been "authenticated as business records"). A representative from Trane authenticated both of the documents that EcoFactor seeks to exclude. *See* Murray Decl., Ex. 10 at 40:21-41:11; 46:2-48:23.

for Mr. Kennedy's report despite its own awareness of the Trane Agreement (which EcoFactor itself produced), the outstanding Trane subpoena, and the impending deposition of a Trane representative, in which EcoFactor's counsel participated. *See* ECF No. 127-10 at 5. There is thus no basis for EcoFactor to exclude evidence related to Mr. Kennedy's strategic decision to avoid the Trane documents.

VI. **Response to EcoFactor's MIL No. 6: To preclude evidence or argument regarding the alleged number of Nest Learning Thermostat Third Generation, Nest Thermostat E, or Nest Thermostat products that are not currently connected to a Wi-Fi network, based on documents not produced during fact discovery and Google's rebuttal experts' off-the record conversations with fact witness Manu Sharma, who was never identified during fact discovery as a person with knowledge relevant to this case.**

EcoFactor asserts that Google should not be permitted to reference the number of Nest Thermostats that are not connected to a Wi-Fi network, because the underlying information was disclosed in connection with the rebuttal expert report of Mr. Todd Schoettelkotte, Google's damages expert. EcoFactor specifically complains about a spreadsheet reflecting the number of Nest thermostats paired and not paired with a Wi-Fi network (the "Wi-Fi Spreadsheet"), and Mr. Schoettelkotte's conversations with Manu Sharma. Motion at 9. But EcoFactor never sought this information during discovery, and Mr. Schoettelkotte addressed it only in rebuttal to Mr. Kennedy's opening damages report, which overstated the royalty base.

Furthermore, EcoFactor has articulated no prejudice arising from Google's disclosure of this information with Google's rebuttal expert report. With respect to the Wi-Fi spreadsheet, Google's damages expert relied on the spreadsheet as but one example of the way in which EcoFactor's royalty base had been overstated. *See Wapp Tech Ltd. P'ship v. Seattle Spinco, Inc.*, 2021 WL 414812, at *3 (E.D. Tex. Feb. 5, 2021) (plaintiffs suffered "little prejudice" where untimely documents were "cumulative" or "fill[ed] a gap in the record in a predictable manner."). And as for Mr. Schoettelkotte's reliance on conversations with Mr. Sharma,

8

EcoFactor never asked to depose Mr. Sharma following Google's rebuttal report. Given its failure to articulate any prejudice, EcoFactor has no basis to seek the exclusion of evidence related to the Nest thermostats connected to Wi-Fi. *See Powers v. Target Corp.*, 2020 WL 1986968, at *8 (S.D. Fla. Apr. 27, 2020) (denying motion to exclude evidence not timely produced where the "[p]laintiff fail[ed] to explain the prejudice suffered by the introduction of this [late produced evidence]"); *Smith v. Cnty. of Riverside*, 2018 WL 7500278, at *3 (C.D. Cal. Nov. 14, 2018) (rejecting motion to exclude evidence not timely produced where the "[p]laintiff had sufficient notice of the existence of the [evidence] and is not prejudiced by Defendants' initial failure to produce [the evidence].").

**VII.    Response to EcoFactor's MIL No. 7:  To preclude evidence or argument on Google's affirmative defenses of prosecution history estoppel, equitable defenses, improper venue, or failure to state a claim.**

Google has made clear that the Court, not the jury, should decide issues concerning prosecution history estoppel, laches, and prosecution history disclaimer. *See* Dkt. No. 124 at 3 n.2, 6 n.4. For improper venue, Google does not plan to introduce evidence or argument to the jury about EcoFactor's choice of venue but maintains that the Northern District of California is the proper forum and reserves its rights on appeal. *See In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018) (recognizing that "an appeal will usually provide an adequate remedy for a defendant challenging the denial of an improper-venue motion"). And while Google no longer asserts the affirmative defense of failure to state a claim, the Court should not preclude Google from introducing relevant evidence about Nest products and EcoFactor's allegations against them, for example, when the accused features of the Nest thermostats were released and when EcoFactor knew about the accused Nest products. To the extent that EcoFactor's motion seeks to prohibit introducing evidence or argument related to Google's other affirmative defenses, the Court should deny it.

**VIII.    Response to EcoFactor's MIL No. 8:  To preclude evidence or argument that is derogatory of the USPTO or its examiners, including that they are "overworked" or substantially similar language; provided, however, the parties may use the following, or substantially similar language about the USPTO: "There is the possibility that mistakes were made, or important information overlooked. Examiners have a lot of work to do, and no process is perfect."**

Granting EcoFactor's motion *in limine* No. 8 would improperly tie Google's hands in making arguments relating to the invalidity of the Asserted Patents. The relief EcoFactor seeks by its motion is overbroad, and the subjective nature of the term "derogatory" renders the imposition of such a restriction unworkable.

One of Google's primary defenses in this lawsuit is that the Asserted Patents are invalid. A vague prohibition on any "evidence or argument that is derogatory of the USPTO" would prejudice Google's ability to advance its invalidity defense. Assessing invalidity of a patent necessarily requires the jury to decide whether the PTO reached the correct decision in issuing a patent. Accordingly, Google must be able to introduce evidence that the PTO did not have all the relevant evidence when it issued the Asserted Patents and that it misread or misunderstood certain prior art references it actually considered. This evidence is fundamental to Google's invalidity defense and is entirely appropriate.[8]

In making the specific argument that the PTO examiners erred in granting the patents-in-suit, Google should be able to provide general evidence about the Patent Office and the patent examination process that would give the jury the appropriate context for how the Asserted

---

[8] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016) ("[Defendant] may offer evidence and argument that specific mistakes were made in connection with the prosecution of the asserted patents."); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 1995 WL 261407, at *3 (N.D. Cal. Apr. 25, 1995) (holding that evidence "show[ing] that the Patent Office did not consider certain invalidating evidence" is proper to rebut the presumption of validity); Federal Circuit Bar Association Model Instruction A.1 ("The fact that the PTO grants a patent does not necessarily mean that [an] invention claimed in [this] patent, in fact, deserves the protection of a patent.  For example, the PTO may not have had available to it all other prior art that will be presented to you.").

Patents were evaluated by the PTO.[9] While Google does not intend to disparage or condemn the PTO, a broad order like the one contemplated by EcoFactor threatens to prejudice Google's ability to advance its invalidity defense.

Finally, insofar as EcoFactor opens the door to this subject matter by offering argument or evidence before the jury about how to the PTO handles patent examination (e.g., the quality of examination, credentials of examiners, amount of time spent on applications, etc.) or by referencing the presumption of validity beyond the specific instruction provided in the Court's jury instructions, Google should be permitted to respond as appropriate to provide the jury with a balanced perspective on the examination process.[10] Accordingly, Google respectfully requests that the Court deny EcoFactor's motion *in limine* No. 8.

## IX. Response to EcoFactor's MIL No. 9: To preclude evidence or argument that individual claim elements were known in the prior art.

EcoFactor's motion does not specify what evidence it seeks to prohibit Google from referencing and should be denied.

To the extent that EcoFactor is arguing that Google should be prohibited from referencing any "background" prior art at trial because Google has not elected to assert that such prior art itself anticipates or renders obvious the asserted claims, such argument should be denied. Prior art references disclosed in discovery and discussed in Google's expert reports,

---

[9] *Datatreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11468934, at *4 (E.D. Tex. Oct. 5, 2010) ("Defendants may submit PTO workload and efficiency statistics, may argue that the PTO may make mistakes, and may urge that the jury has an independent role in assessing validity."); *Applied Materials, Inc.*, 1995 WL 261407, at *4 ("[S]ome general evidence about the Patent Office and its procedures is necessary" to understand how the PTO evaluates the obviousness of a patent claim.).

[10] *See Applied Materials, Inc.,* 1995 WL 261407 at *3 (holding that the Court would consider permitting evidence about "overwork, quotas, awards or promotions at the Patent Office, or the number of patents that issue annually or . . . that the Patent Office does not do its job properly . . . if [plaintiff] opens the door by presenting evidence suggesting that some extraordinary deference is due in this case").

CONFIDENTIAL – ATTORNEYS' EYES ONLY VERSION

including in any background of the art section, are relevant to Google's obviousness defense because they show the state of the art and could be used to "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418–19 (2007). Instead of narrowly focusing on individual documents when considering an obviousness defense, the Court must take into account "demands known to the design community," "the background knowledge possessed by a person having ordinary skill in the art," and "the inferences and creative steps that a person having ordinary skill in the art would employ." *Id.* at 418. Even EcoFactor acknowledges as much, as it must, in its proposed jury instructions. *See* Murray Decl., Ex. 11 (EF Proposed Jury Instructions) at 35–38 (instructing jury on obviousness and on level of person of ordinary skill in the art).

It would thus be error for this court to prohibit Google and its experts from mentioning any prior art besides the elected references, especially specific prior art that was previously disclosed during discovery and described in Google's expert reports. *See Meyer Intell. Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1374 (Fed. Cir. 2012) (vacating and remanding for new trial on obviousness after concluding that the district court's "erroneous evidentiary rulings" had "improperly narrowed the scope of prior art that [defendant] could introduce at trial" and thus prejudiced defendant's "ability to present its invalidity defense"); *see also Freeny v. Murphy Oil Corp.*, 2015 WL 5144347, at *2 (E.D. Tex. June 4, 2015) (denying motion to strike portions of expert report discussing non-elected prior art references after denying motion *in limine* on same grounds).

To the extent that EcoFactor is arguing instead that any evidence to be presented by Google is not sufficient to support an obviousness defense, such argument is more properly the

12

subject of a motion for summary judgment than a motion *in limine* and should therefore be denied on this ground as well.[11] *See, e.g.*, *Meyer Intell. Props.*, 690 F.3d at 1378 (concluding that it was error to transform plaintiff's motion *in limine* to bar the presentation of evidence in support of inequitable conduct defense for "fail[ing] to meet demanding requirements" to prove such a defense into a motion for summary judgment); *AMAG Pharms. v. Sandoz, Inc.*, 2018 WL 1041035, at *2 (D.N.J. Feb. 22, 2018) (denying motion *in limine* because "broad" request was "outside the scope" of such a motion because it raised issue of sufficiency of evidence).

None of the cases cited by EcoFactor in support of its argument (that Google and its experts should be precluded from referencing any prior art outside of what is has elected to rely on as anticipatory or rendering the asserted claims obvious) provide any reasoning from which it can be discerned why the motions were granted or how the situation in this case is analogous. *See, e.g.*, *CloudofChange LLC v. NCR Corporation*, No. 6:19-cv-00513-ADA, Dkt. No. 204 at 4 (W.D. Tex. Nov. 8, 2021) (order granting sealed motion *in limine*, the public version of which does not contain the Court's analysis); *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, 2015 WL 11072170, at *3 (E.D. Tex. Sept. 2, 2015) (same). It could be, therefore, that the basis to grant the motions in those cases was the defendant's failure under Rule 37 to properly disclose the references during discovery or in an expert report, which is inapplicable here. *See, e.g.*, *Takeda Pharm. Co., Ltd. v. Zydus Pharms. USA Inc.*, 2013 WL 1164864, at *2 (D.N.J. Mar. 20, 2013). And contrary to its own requested relief, EcoFactor itself cites a case expressly permitting the defendant's expert to "discuss non-elected prior art when explaining the state of the art." *See*

---

[11] And even if the Court had granted a summary judgment motion as to Google's obviousness defense, which it has not, these prior art references would still be admissible as relevant to Google's damages analysis through *Georgia-Pacific* factor number 9. *See, e.g.*, *Vaporstream, Inc. v. Snap Inc.*, 2020 WL 978731, at *9 (C.D. Cal. Feb. 28, 2020) (noting that the effect of court's order granting summary judgment of defendant's obviousness defense "does not render evidence inadmissible" because it "remains relevant to a different issue in the case"). *See also* Murray Decl., Ex. 12 (Schoettelkotte Report) at pp. 97–100.

CONFIDENTIAL – ATTORNEYS' EYES ONLY VERSION

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 2016 WL 4718963, at *2 (E.D. Tex. July 12, 2016); *see also Chrimar Sys., Inc. v. Alcatel-Lucent USA, Inc.*, 2016 WL 11673958, at *1 (E.D. Tex. Sept. 14, 2016) (denying motion *in limine* after parties agreed not to use non-elected prior art to invalidate the patents-in suit, but "may discuss generally with respect to the state of the art").

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

Dated:  December 29, 2021

By:  /s/ *Leo L. Lam with permission, by Michael E. Jones*

ROBERT A. VAN NEST
LEO L. LAM
EUGENE M. PAIGE
R. ADAM LAURIDSEN
JENNIFER A. HUBER
KRISTIN HUCEK
PATRICK E. MURRAY
ANNA PORTO
GREGORY WASHINGTON
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
econest-kvp@keker.com

Shamita Etienne-Cummings
(*admitted to the Western District of Texas*)
Allen & Overy LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3810
GoogleEcofactorWDTX@AllenOvery.com

Bijal V. Vakil
(*admitted to the Western District of Texas*)
Eric Lancaster (admitted *Pro Hac Vice*)
Allen & Overy LLP
530 Lytton Avenue, 2nd Floor
Palo Alto, CA 94301
Telephone: (650) 388-1703
GoogleEcofactorWDTX@AllenOvery.com

POTTER MINTON
Michael E. Jones (TX Bar No. 10929400)
mikejones@potterminton.com
Patrick C. Clutter (TX Bar No. 24036374)
patrickclutter@potterminton.com
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

Attorneys for Defendant GOOGLE LLC

14

CONFIDENTIAL – ATTORNEYS' EYES ONLY VERSION

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 29, 2021, the foregoing was served on all counsel of record by e-mail.

*/s/ Michael E. Jones*