## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| ECOFACTOR, INC., | |
| Plaintiff, | Case No. 6:20-cv-00075-ADA |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

### JOINT PRETRIAL ORDER

Plaintiff EcoFactor, Inc. ("EcoFactor") and Defendant Google LLC ("Google") hereby submit the following proposed Joint Pre-Trial Order pursuant to the Court's Order (Dkt. No. 68), the Court's Standing Order on Pre-Trial Procedures and Requirements in Civil Cases, the Federal Rules of Civil Procedure, and Local Rules of this Court. The parties have stipulated to various matters identified herein and have identified exhibits, witnesses, factual contentions and triable issues.

It is hereby ORDERED as follows:

## I.      APPEARANCES OF COUNSEL

### A.      Attorneys for EcoFactor

Reza Mirzaie
Marc A. Fenster
Paul A. Kroeger
James N. Pickens
Kristopher R. Davis
Minna Y. Chan
Matthew Aichele
Adam S. Hoffman
Jason M. Wietholter
RUSS AUGUST & KABAT

1

12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
rak_ecofactor@raklaw.com

**B.     Attorneys for Google**

Robert A. Van Nest (admitted Pro Hac Vice)
Leo L. Lam (admitted Pro Hac Vice)
Eugene M. Paige (admitted Pro Hac Vice)
R. Adam Lauridsen (admitted Pro Hac Vice)
Jennifer A. Huber (admitted Pro Hac Vice)
Kristin Hucek (admitted Pro Hac Vice)
Anna Porto (admitted Pro Hac Vice)
Patrick E. Murray (admitted Pro Hac Vice)
Gregory Washington (admitted Pro Hac Vice)
Eric B. Hanson (admitted Pro Hac Vice)
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
econest-kvp@keker.com

Michael E. Jones (TX Bar No. 10929400)
mikejones@potterminton.com
Patrick C. Clutter (TX Bar No. 24036374)
patrickclutter@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846

Shamita Etienne-Cummings
(admitted to the Western District of Texas)
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3810
GoogleEcofactorWDTX@AllenOvery.com

1791811

Bijal V. Vakil
(admitted to the Western District of Texas)
Eric Lancaster (admitted Pro Hac Vice)
ALLEN & OVERY LLP
530 Lytton Avenue, 2nd Floor
Palo Alto, CA 94301
Telephone: (650) 388-1703
GoogleEcofactorWDTX@AllenOvery.com

## II.   JOINT STATEMENT OF THE CASE

This is an action for patent infringement. EcoFactor accuses Google of infringing:

- Claims 5 and 8 of U.S. Patent No. 8,738,327 ("the '327 patent"),
- Claims 1 and 8 of U.S. Patent No. 8,412,488 ("the '488 patent"), and
- Claims 2, 6, 12, and 17 of U.S. Patent No. 10,534,382 ("the '382 patent"),[1]

by making, using, selling, offering for sale, and/or importing into the United States the Accused

Products. EcoFactor additionally alleges that Google's infringement is willful. EcoFactor seeks

an injunction, and damages of no less than a reasonable royalty for Google's infringement,

together with interest and costs, as well as enhanced damages under 35 U.S.C. § 284 and

attorneys' fees under 35 U.S.C. § 285.

Google denies that it has infringed, or currently infringes, any of the Asserted Claims,

directly or indirectly, and also denies that any of the alleged infringement was or is willful.

Google further contends that all of the Asserted Claims are invalid under 35 U.S.C. §§ 101, 102,

103, and/or 112, including, without limitation, because they are anticipated and/or rendered

obvious by prior art, are directed to patent-ineligible subject matter, and fail the written

description, enablement, and/or definiteness requirements. Google thus denies that EcoFactor is

entitled to any relief whatsoever. To the extent any Asserted Claim is found to be infringed,

enforceable, and not invalid, Google agrees that a reasonable royalty is the appropriate measure

---

1 The claims enumerated in these bullet points are collectively referred to the "Asserted Claims" throughout this order. The '327 patent, the '488 patent, and the '382 patent are collectively referred to as the "Asserted Patents."

3

of damages. Google disputes, however, EcoFactor's assertions of what constitutes a reasonable royalty and the underlying methodology used by EcoFactor. Google disputes that EcoFactor is entitled to enhanced damages, interest, costs, attorneys' fees in this case, equitable relief, or an injunction.

## III.   CONTENTIONS OF THE PARTIES

### A.   EcoFactor's Contentions

1. The '327 patent was duly and legally issued by the United States Patent and Trademark Office on May 27, 2014.

2. The '327 patent claims priority to Provisional Application No. 60/994,011 filed on September 17, 2007, and thus is entitled to this priority date.

3. The '488 patent was duly and legally issued by the United States Patent and Trademark Office on April 2, 2013.

4. The '488 patent claims priority to Provisional Application No. 60/994,011 filed on September 17, 2007, and thus is entitled to this priority date.

5. The '382 patent was duly and legally issued by the United States Patent and Trademark Office on January 14, 2020.

6. The '382 patent claims priority to Provisional Application No. 61/134,714 filed on July 14, 2008, and thus is entitled to this priority date.

7. Google has been aware of the '488 and '327 patents since at least August 10, 2018.

8. Google has been aware of the '382 patent since February 13, 2020.

9. Google makes, uses, sells, offers for sale and imports products that are accused of infringing the Asserted Patents. Google's products accused of infringement are as follows (collectively "the Accused Products"):

a.      Smart thermostat systems and smart HVAC control systems made, used, offered for sale, or sold by Google;

b.      Nest Learning Thermostat Third Generation;

c.      Nest Thermostat E;

d.      Nest Thermostat;

e.      Google servers or Nest servers that support the Nest Learning Thermostat Third Generation, Nest Thermostat E, or Nest Thermostat;

f.      Google's mobile applications that support the Nest Learning Thermostat Third Generation, Nest Thermostat E, or Nest Thermostat, including the Google Home app and the Nest app.

10.   Google infringes Claims 5 and 8 of the '327 patent, literally or under the doctrine of equivalents, by making, using, selling and offering for sale the Accused Products in the United States.

11.   Google indirectly infringes Claims 5 and 8 of the '327 patent, literally or under the doctrine of equivalents, by inducing infringement, by affirmatively encouraging infringing uses of the Accused Products in the United States, with knowledge of the asserted patents, and with knowledge or willful blindness that the encouraged acts result in infringement.

12.   Google indirectly infringes Claims 5 and 8 of the '327 patent, literally or under the doctrine of equivalents, by contributorily infringing, by making, using, selling, and offering for sale the Accused Products in the United States, with knowledge or willful blindness that the Accused Products are

1791811

especially made or adapted for use in infringement of the patent, are not staple articles of commerce, and are incapable of substantial non-infringing use.

13.     Google infringes Claims 1 and 8 of the '488 patent, literally or under the doctrine of equivalents, by making, using, selling and offering for sale the Accused Products in the United States.

14.     Google indirectly infringes Claims 1 and 8 of the '488 patent, literally or under the doctrine of equivalents, by inducing infringement, by affirmatively encouraging infringing uses of the Accused Products in the United States, with knowledge of the asserted patents, and with knowledge or willful blindness that the encouraged acts result in infringement.

15.     Google indirectly infringes Claims 1 and 8 of the '488 patent, literally or under the doctrine of equivalents, by contributorily infringing, by making, using, selling, and offering for sale the Accused Products in the United States, with knowledge or willful blindness that the Accused Products are especially made or adapted for use in infringement of the patent, are not staple articles of commerce, and are incapable of substantial non-infringing use.

16.     Google infringes Claims 2, 16, 12, and 17 of the '382 patent, literally or under the doctrine of equivalents, by making, using, selling and offering for sale the Accused Products in the United States.

17.     Google indirectly infringes Claims 2, 16, 12, and 17 of the '382 patent, literally or under the doctrine of equivalents, by inducing infringement, by

6

affirmatively encouraging infringing uses of the Accused Products in the United States, with knowledge of the asserted patents, and with knowledge or willful blindness that the encouraged acts result in infringement.

18.   Google indirectly infringes Claims 2, 16, 12, and 17 of the '382 patent, literally or under the doctrine of equivalents, by contributorily infringing, by making, using, selling, and offering for sale the Accused Products in the United States, with knowledge or willful blindness that the Accused Products are especially made or adapted for use in infringement of the patent, are not staple articles of commerce, and are incapable of substantial non-infringing use.

19.   Google's infringement has been and continues to be willful.

20.   At no point in time did Google redesign the Accused Products in an attempt to avoid infringement of the Asserted Patents.

21.   EcoFactor has suffered damages in an amount to be determined at trial as a direct and proximate cause of Google's direct infringement, and is entitled to an award of damages adequate to compensate it for Google's infringement.

22.   EcoFactor is entitled to a running royalty.

23.   EcoFactor is entitled to injunctive relief.

24.   EcoFactor is also entitled to enhanced damages for past and continued willful conduct, as well as an award of interest, costs, attorneys' fees and any other relief the Court deems equitable and just.

25.     Google's infringement and conduct justifies finding this dispute an

exceptional case.

**B.      Google's Contentions**

Google's contentions in this case are detailed in its pleadings, discovery responses, expert

reports, and Google's motions, including its motions for summary judgment, *Daubert* motions,

and motions *in limine*, which are incorporated here by reference. By providing these contentions,

Google does not concede that all of these issues are appropriate for trial. In particular, Google

does not waive any of its pending or future filed motions, which if granted, would render some

or all of these issues moot.

**1.      '488 Patent**

26.     Google denies that it has infringed or currently infringes Claims 1 or 8 of

the '488 patent, directly or indirectly. Specifically, Google denies that the

Nest Learning Thermostat Third Generation, Nest Thermostat E, or the

Nest Thermostat[2] infringe Claims 1 or 8 of the '488 patent directly or

indirectly.

27.     Google contends that it has not induced or contributed to infringement of

the '488 patent because direct infringement cannot be proven.

Furthermore, if a finding of direct infringement is entered, Google

contends that it has not induced or contributed to any infringement

because it lacked the requisite knowledge and intent. No notice of

infringement of any EcoFactor patent was given prior to the filing of the

---

2 Google objects to EcoFactor's definition of "Accused Products" in its contentions to the extent
it includes products other than the Nest Learning Thermostat Third Generation, Nest Thermostat
E, or the Nest Thermostat.

1791811

lawsuit. In addition, it cannot be shown that Google knew or knows that the acts of others that EcoFactor alleges Google induced constitute infringement of the '488 patent, or that Google knew or knows that components it supplied were made or adapted for use in an infringing product and lack substantial non-infringing uses.

28.     Google contends that the Asserted Claims of the '488 patent are directed to patent-ineligible subject matter, and thus invalid, under 35 U.S.C. § 101. *See* Dkt. No. 111.

29.     Google contends that each of the Asserted Claims of the '488 patent is invalid under 35 U.S.C. § 103, at least based on one or more of the following prior art references:

- U.S. Patent Application No. 2004/0117330 ("Ehlers '330");

- U.S. Patent No. 7,216,016 ("Van Ostrand");

- U.S. Patent No. 5,729,474 ("Hildebrand"); and

- U.S. Patent No. 4,897,798 ("Cler").

30.     Google contends that the prior art can be applied to the claims to prove obviousness as shown:

| Claim of the '488 Patent | References |
|---|---|
| 1 | Ehlers '330 |
| | Ehlers '330 + Van Ostrand |
| | Hildebrand + Van Ostrand |
| | Cler + Van Ostrand |

| 8 | Ehlers '330 |
|---|---|
| | Ehlers '330 + Van Ostrand |
| | Hildebrand + Van Ostrand |
| | Cler + Van Ostrand |
| | Hildebrand + Van Ostrand + Ehlers '330 |
| | Cler + Van Ostrand + Ehlers '330 |

31.     Google contends that the Asserted Claims of the '488 patent are not

adequately enabled, and thus are invalid under 35 U.S.C. § 112.

32.     Google contends that the Asserted Claims of the '488 patent are invalid

under 35 U.S.C. § 112 for failure to comply with the written description

requirement.

33.     Google contends that the Asserted Claims of the '488 patent are invalid

under 35 U.S.C. § 112 for indefiniteness because the language of the

claims fails to inform with reasonable certainty those skilled in the art

about the scope of the invention.

34.     Google contends that the priority date for the '488 patent is its earliest

filing date, July 31, 2008. Google disputes EcoFactor's contention that the

applicable priority date for the '488 patent is September 17, 2007.

35.     Google denies that it received notice of the '488 patent before EcoFactor

filed this suit on January 31, 2020. Google also denies that it knew or

should have known of any risk that it was infringing the '488 patent.

36.   Google contends that it has not willfully infringed, and is not willfully infringing, the '488 patent, and that EcoFactor has not put forward any sufficient basis for willful infringement.

37.   Google contends that EcoFactor is barred from asserting infringement under the doctrine of equivalents for Claim 1 of the '488 patent due to prosecution history estoppel. *See* Dkt. No. 124.

### 2.   '327 Patent

38.   Google denies that it has infringed or currently infringes Claims 5 or 8 of the '327 patent, directly or indirectly. Specifically, Google denies that any of the Accused Products infringe Claims 5 or 8 of the '327 patent directly or indirectly.

39.   Google contends that it has not induced or contributed to infringement of the '327 patent because direct infringement cannot be proven. Furthermore, if a finding of direct infringement is entered, Google contends that it has not induced or contributed to any infringement because it lacked the requisite knowledge and intent. No notice of infringement of any EcoFactor patent was given prior to the filing of the lawsuit. In addition, it cannot be shown that Google knew or knows that the acts of others that EcoFactor alleges Google induced to constitute infringement of the '327 patent, or that Google knew or knows that components it supplied were made or adapted for use in an infringing product and lack substantial non-infringing uses.

1791811

40.     Google contends that the Asserted Claims of the '327 patent are directed
to patent-ineligible subject matter, and thus invalid, under 35 U.S.C. §
101. *See* Dkt. No. 111.

41.     Google contends that each of the Asserted Claims of the '327 patent is
invalid under 35 U.S.C. §§ 102 and/or 103, at least based on one or more
of the following prior art references:

- U.S. Patent Application No. 2004/0117330 ("Ehlers '330");

- U.S. Patent No. 6,868,293 ("Schurr");

- WebCTRL building automation system ("WebCTRL"); and

- U.S. Patent No. 4,897,798 ("Cler").

42.     Google contends that the prior art can be applied to the claims to prove
anticipation and/or obviousness as shown:

| Claim of the '327 Patent | References |
|---|---|
| 5 | Ehlers '330 |
| | WebCTRL |
| | WebCTRL + Cler |
| 8 | Ehlers '330 |
| | WebCTRL |

43.     Google contends that the Asserted Claims of the '327 patent are not
adequately enabled, and thus are invalid under 35 U.S.C. § 112.

12

44.     Google contends that the Asserted Claims of the '327 patent are invalid
        under 35 U.S.C. § 112 for failure to comply with the written description
        requirement.

45.     Google contends that the Asserted Claims of the '327 patent are invalid
        under 35 U.S.C. § 112 for indefiniteness because the language of the
        claims fails to inform with reasonable certainty those skilled in the art
        about the scope of the invention.

46.     Google contends that the priority date for the '327 patent is its earliest
        filing date, July 31, 2008. Google disputes EcoFactor's contention that the
        applicable priority date for the '327 patent is September 17, 2007.

47.     Google denies that Google received notice of the '327 patent before
        EcoFactor filed this suit on January 31, 2020. Google also denies that it
        knew or should have known of any risk that it was infringing the '327
        patent.

48.     Google contends that it has not willfully infringed, and is not willfully
        infringing, the '327 patent, and that EcoFactor has not put forward any
        sufficient basis for willful infringement.

        **3.      '382 Patent**

49.      Google denies that it has infringed or currently infringes Claims 2, 6, 12,
        or 17 of the '382 patent, directly or indirectly. Specifically, Google denies
        that any of the Accused Products infringe Claims 2, 6, 12, or 17 of
        the '382 patent directly or indirectly.

50.     Google contends that it has not induced or contributed to infringement of
        the '382 patent because direct infringement cannot be proven.

Furthermore, if a finding of direct infringement is entered, Google contends that it has not induced or contributed to any infringement because it lacked the requisite knowledge and intent. No notice of infringement of any EcoFactor patent was given prior to the filing of the lawsuit. In addition, it cannot be shown that Google knew or knows that the acts of others that EcoFactor alleges Google induced to constitute infringement of the '382 patent or that Google knew or knows that components it supplied were made or adapted for use in an infringing product and lack substantial non-infringing uses.

51.    Google contends that the Asserted Claims of the '382 patent are directed to patent-ineligible subject matter, and thus invalid, under 35 U.S.C. § 101. *See* Dkt. No. 111.

52.    Google contends that each of the Asserted Claims of the '382 patent is invalid under 35 U.S.C. §§ 102 and/or 103, at least based on one or more of the following prior art references:

- U.S. Patent Application Publication No. 2009/0302994 ("Rhee");

- Ehlers '330;

- U.S. Patent No. 8,196,185 ("Geadelmann");

- A peer reviewed paper entitled "Demand Response Enabling Technology Development" that was published by the University of California – Berkeley on April 4, 2006 ("Arens");

- U.S. Patent No. 8,880,047 ("Konicek"); and

14

- U.S. Patent Application Publication No. 2005/0171645 ("Oswald '645").

53.     Google contends that the prior art can be applied to the claims to prove anticipation and/or obviousness as shown:

| Claim of the '382 Patent | References |
| --- | --- |
| 2 | Rhee |
| | Ehlers '330 |
| | Ehlers '330 + Rhee |
| | Oswald '645 |
| | Oswald '645 + Rhee |
| | Oswald '645 + Ehlers '330 |
| | Oswald '645 + Geadelmann |
| 6 | Rhee |
| | Ehlers '330 |
| | Ehlers '330 + Arens |
| | Ehlers '330 + Konicek |
| | Ehlers '330 +Rhee + Arens |
| | Ehlers '330 +Rhee + Konicek |
| | Rhee + Arens |
| | Rhee + Konicek |
| | Oswald '645 + Arens |
| | Oswald '645 + Konicek |
| | Oswald '645 + Ehlers '330 + Arens |
| | Oswald '645 + Ehlers '330 + Konicek |
| | Oswald '645 + Geadelmann + Arens |

| | |
|---|---|
| | Oswald '645 + Geadelmann + Konicek |
| 12 | Rhee |
| | Rhee + Ehlers '330 |
| | Rhee + Geadelmann |
| | Ehlers '330 |
| | Oswald '645 |
| | Oswald '645 + Rhee |
| | Oswald '645 + Ehlers '330 |
| | Oswald '645 + Geadelmann |
| 17 | Rhee |
| | Rhee + Ehlers '330 |
| | Rhee + Geadelmann |
| | Ehlers '330 |
| | Ehlers '330 + Rhee |
| | Oswald '645 |
| | Oswald '645 + Rhee |
| | Oswald '645 + Ehlers '330 |
| | Oswald '645 + Geadelmann |

54.     Google contends that the Asserted Claims of the '382 patent are not adequately enabled, and thus are invalid under 35 U.S.C. § 112.

55.     Google contends that the Asserted Claims of the '382 patent are invalid under 35 U.S.C. § 112 for failure to comply with the written description requirement.

56.     Google contends that the Asserted Claims of the '382 patent are invalid under 35 U.S.C. § 112 for indefiniteness because the language of the

claims fails to inform with reasonable certainty those skilled in the art about the scope of the invention.

57.   Google contends that the priority date for the '382 patent is its earliest filing date, July 13, 2009. Google disputes EcoFactor's contention that the applicable priority date for the '382 patent is July 14, 2008.

58.   Google denies that it received notice of the '382 patent before EcoFactor filed this suit on January 31, 2020. Google also denies that it knew or should have known of any risk that it was infringing the '382 patent.

59.   Google contends that it has not willfully infringed, and is not willfully infringing, the '382 patent, and that EcoFactor has not put forward any sufficient basis for willful infringement.

**4.      Damages**

60.    Google contends that EcoFactor is not entitled to damages at all, much less in the amount that EcoFactor seeks.

61.   Google contends that should any Asserted Claims of the '327 patent, '488 patent, and/or the '382 patent be determined to be not invalid, infringed, and not unenforceable, EcoFactor's damages calculations are inflated and inaccurate. Google contends in particular, as detailed in Google's motion to exclude the expert testimony of David Kennedy, Dkt. No. 114, that EcoFactor's damages theory is legally deficient and methodologically unsound and thus should be excluded from trial. Google further contends that additional deficiencies in the expert report of Mr. Kennedy, as set forth in the expert report of W. Todd Schoettelkotte, causes EcoFactor's

requested damages to be inflated, inaccurate, and not reflective of a hypothetical negotiation between the parties.

62.   Google contends that should any Asserted Claim of the '327 patent, '488 patent, and/or the '382 patent be determined to be not invalid, infringed, and not unenforceable, damages, if any, are limited to a reasonable royalty as calculated through the methodology set forth in the expert report of W. Todd Schoettelkotte.

63.   Google contends that if one or more of the Asserted Claims are found to be not invalid and not unenforceable, and if Google is found to have infringed such claims, EcoFactor is not entitled to enhanced damages under 35 U.S.C. § 284.

64.   Google contends that this case is not exceptional and that EcoFactor is not entitled to its costs (including expert witness fees), expenses, or reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

65.   Google contends that EcoFactor is not entitled to recover pre-judgment or post-judgment interest.

66.   Google contends that EcoFactor is not entitled to an injunction or any other equitable relief.

67.   Google contends that EcoFactor is not entitled to any supplemental damages.

68.   Google contends that EcoFactor is not entitled to any post-judgment ongoing royalty.

### 5.   Other Contentions

18

69.    Google objects to EcoFactor's definition of "Accused Products" to the extent it includes products other than the Nest Learning Thermostat Third Generation, Nest Thermostat E, and the Nest Thermostat.

70.    Google contends that the Court should exclude the rebuttal opinions of EcoFactor's purported expert Dr. John A. Palmer concerning alleged secondary considerations of the non-obviousness of the Asserted Patents. Google also contends that Dr. Palmer is unqualified to testify regarding any alleged commercial success of EcoFactor's products of the Accused Products. *See* Dkt. No. 108.

71.    Google contends that EcoFactor's unreasonable and inexcusable delay in filing suit against Google supports a laches defense against EcoFactor's request for injunctive relief. *See* Dkt. No. 124.

72.    Google contends that EcoFactor has failed to disclose its reliance on the doctrine of equivalents for each of the Asserted Claims in its infringement contentions and has failed to adequately describe the bases for its assertion of the doctrine of equivalents for each of the Asserted Claims in the expert report of Mr. Erik de la Iglesia. Google objects to EcoFactor asserting the doctrine of equivalents for any of the Asserted Claims where EcoFactor failed to disclose and/or failed to provide a basis for a finding of infringement under the doctrine of equivalents.

73.    Google contends that to the extent that EcoFactor attempts to recapture any subject matter relinquished during the patent examination process

through broad claim construction, such a recapture is barred by the

doctrine of prosecution history disclaimer. *See* Dkt. No. 124.

74.    Google objects to any of EcoFactor's contentions that were not properly

disclosed pursuant to the Court's rules and orders.

75.    Google objects to EcoFactor's contentions regarding issues excluded by

agreement and/or by the rulings of the Court.

76.    Google objects to any contention that is subject to a currently pending

motion in this matter.

77.    Google objects to the relitigation of any issue that has already been

determined by the Court.

## IV.    STIPULATED FACTS

The parties agree to the following stipulated facts:

1.    This Court has personal jurisdiction over the parties and subject matter

jurisdiction over all claims and defenses in this action.

2.    EcoFactor is a privately held company, having its principal place of business at

441 California Avenue, Number 2, Palo Alto, CA 94301.

3.    Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of

Alphabet, Inc. Google LLC is a Delaware limited liability company with a

principal place of business at 1600 Amphitheatre Parkway, Mountain View,

California 94043.

4.    On January 31, 2020, EcoFactor filed the Complaint asserting infringement of

the '488 Patent, the '327 Patent and the '382 Patent (collectively the "Asserted

Patents").

20

5.      On June 17, 2020, EcoFactor filed the First Amended Complaint asserting

infringement of the '488 Patent, the '327 Patent and the '382 Patent.

## V.      DISPUTED ISSUES OF FACT AND LAW

The parties identify the following issues that remain to be litigated. The parties reserve

the right to identify additional factual or legal issues that may arise, including issues raised by

any further discovery undertaken in this case, the Court's rulings on any pending motion, or

ruling made at the pretrial conference in this action. By providing this statement, the parties do

not concede that all of these issues are appropriate for trial. The parties also do not waive any of

their pending motions.

1.      Whether Google directly infringes Claims 5 and/or 8 of the '327 patent.

2.      Whether Google indirectly infringes Claims 5 and/or 8 of the '327 patent.

3.      Whether Google directly infringes Claims 1 and/or 8 of the '488 patent.

4.      Whether Google indirectly infringes Claims 1 and/or 8 of the '488 patent.

5.      Whether Google directly infringes Claims 2, 6, 12, and/or 17 of the '382 patent.

6.      Whether Google indirectly infringes Claims 2, 6, 12, and/or 17 of the '382 patent.

7.      Whether Google's infringement, if any, has been and continues to be willful.

8.      Whether EcoFactor has suffered damages in an amount to be determined at trial

as a direct and proximate cause of Google's direct infringement of claims found

not to be invalid.

9.      What award of damages through trial should be awarded to EcoFactor to

compensate for Google's direct infringement, if any, including pre-judgment and

post-judgment interest.

10.    Whether EcoFactor is entitled to any running royalty.

11.    Whether EcoFactor is entitled to any injunctive relief.

12.      What award of damages after trial should be awarded to EcoFactor to compensate for continued infringement that is willful, if any.

13.      Whether Google has proven by clear and convincing evidence that one or more of the Asserted Claims of the '327 patent are invalid.

14.      Whether Google has proven by clear and convincing evidence that one or more of the Asserted Claims of the '488 patent are invalid.

15.      Whether Google has proven by clear and convincing evidence that one or more of the Asserted Claims of the '382 patent are invalid.

## VI.     EXHIBITS

A Joint Exhibit List, including documents identified by both parties and not objected to, is attached as **Exhibit A-1**. EcoFactor's Exhibit List and Google's objections thereto are attached as **Exhibit A-2**. Google's Exhibit List and EcoFactor's objections thereto are attached as **Exhibit A-3**. EcoFactor's Physical Exhibit list is attached hereto as **Exhibit A-4**. Google's Physical Exhibit list is attached as **Exhibit A-5**.

## VII.     WITNESSES

EcoFactor's witness list for the jury trial, with Google's objections, is attached as **Exhibit B-1**. Google's witness list for the jury trial, with EcoFactor's objections, is attached as **Exhibit B-2**.

## VIII.     DEPOSITION DESIGNATIONS

EcoFactor's deposition designations, with Google's objections and counter-designations, are attached as **Exhibit C-1**. Google's deposition designations, with EcoFactor's objections and counter-designations, are attached as **Exhibit C-2**.

## IX.     DISCOVERY DESIGNATIONS

1791811

EcoFactor's discovery designations, with Google's objections, are attached as **Exhibit D-1**. Google's discovery designations, with EcoFactor's objections, are attached as **Exhibit D-2**.

## X.    STIPULATIONS AND TRIAL DISCLOSURES

The following stipulations were agreed upon by the parties as discussed below and are made a part of this Pretrial Order.

The parties agree to the following procedure which will govern the disclosure of witnesses, exhibits, deposition testimony and demonstratives to use at trial and the process to identify any objections remaining between the parties with regard to these disclosures:

### A.    Motions

All motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) may be brought to the Court orally or in writing. Unless the Court sets alternative deadlines, all oppositions to motions filed pursuant to Fed. R. Civ. P. 50(b) must be filed within 28 days of the filing of the motion. All replies in support of the motions must be filed within 21 days of service of any oppositions. The parties reserve their right to seek reasonable extensions of these deadlines, subject to the Court's approval.

### B.    Exhibits

The Exhibit Lists set forth the parties' exhibits for their respective cases-in-chief; the lists do not include potential impeachment material that is not introduced into evidence. The parties reserve the right to offer exhibits for purposes of impeachment that are not included in the Exhibit Lists.

No later than **7:00 p.m.**[3] two (2) calendar days before their introduction (*e.g.,* Sunday evening for a witness to be called on Tuesday), counsel shall (1) provide opposing counsel with

---

3 All times noted herein are Central Time.

1791811

an identification of trial exhibits to be used on direct examination of each witness (both live and

by deposition) and (2) make any non-documentary trial exhibits to be used with the witness

available for physical inspection. Any objections to the identified exhibits shall be provided no

later than **7:00 p.m.** one (1) calendar day before the exhibits are proposed to be introduced and

the parties shall meet and confer telephonically or in person in an attempt to resolve any

objections to the exhibits at **9:00 p.m.** the day the objections are provided. The parties will

continue in good faith to meet and confer regarding exhibits and if objections remain unresolved,

the parties will cooperate in seeking to have the Court resolve any disputes prior to the

introduction of the exhibit.

The parties stipulate to the authenticity of each document that on its face appears to be

generated by a party (plaintiff or defendant). The parties reserve the right to add additional

deposition designations to establish the foundation and authenticity of an exhibit to the extent the

admissibility of a particular document is challenged. Notwithstanding this stipulation, each party

preserves its right to object to the document on any ground other than authenticity. The Final

Exhibit Lists must be filed by January 28, 2022. Those Final Exhibit Lists shall not be

supplemented without approval of all parties or leave of the Court upon a showing of good

cause.

No exhibit will be admitted unless offered into evidence through a witness, who must at

least be shown the exhibit. At some point before the completion of the witness's testimony, any

party that has used an exhibit with the witness and wishes that exhibit to be admitted into

evidence must formally move the exhibit into evidence by exhibit number. Exhibits may not be

published, displayed, or otherwise shown to the jury until after they have been admitted into

evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

The parties may use each other's exhibits listed on the parties' respective exhibit lists attached hereto to the same effect as though it were on their own exhibit list, subject to all evidentiary objections. However, another party's exhibit is not admissible by virtue of being on an exhibit list or over an objection; a party seeking to introduce another party's exhibit must still have a witness sponsor the exhibit into evidence as described above subject to any objections.

The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

Finally, legible copies of United States and foreign patents, the file prosecution histories of United States patents, published foreign patent applications, and certified translations thereof (if in English or translated into English) may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

### C.    Witnesses

The parties agree to disclose the witnesses in the order that they will be called. No later than **7:00 p.m.** two (2) calendar days before they are to be called, counsel shall provide to opposing counsel the names and order of witnesses to be called (both live and by deposition). Any objections to the identified witnesses shall be provided no later than **7:00 p.m.** the day before the witness is offered to testify and the parties shall meet and confer telephonically or in person in an attempt to resolve any objections to the witnesses at **9:00 p.m.** the day the objections are provided. If counsel intends to change the order of witnesses or the matter of presentation of witness testimony (*i.e.*, by live video feed) due to a COVID-19 pandemic-related disruption, they shall notify the other side immediately according to the parties' agreement regarding how to deal with such disruptions, set forth below in the undisputed portions of section

25

XV. The parties will continue in good faith to meet and confer regarding exhibits and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to the introduction of the exhibit.

Fact witnesses are not to be allowed into the courtroom before they testify on the stand, or after, if they are subject to recall. The only exception is the parties' client representative, who will be allowed in the courtroom even if testifying in the case.

### D.    Deposition Testimony[4]

The parties shall identify a list of deposition designations to be played or read to the jury by **7:00 p.m.** five (5) calendar days before the designations are to be played or read to the jury. Any objections and counter-designations shall be provided no later than **3:00 p.m.** three (3) calendar days before the designations are to be played or read to the jury. Any objections to counter-designations shall be provided no later than **7:00 p.m.** two (2) calendar days before the counter-designations are provided. The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony, and remove any attorney objections, and provide a final version of the deposition testimony excerpts (testimony clip report) to the other party by **7:00 p.m.** the day before it is to be shown to the jury. If the party intends to read the deposition testimony into the record instead of playing the video, the party shall state that in writing by **7:00 p.m.** the day before the testimony is to be introduced. The parties shall meet and confer at **9:00 p.m.** the day before the deposition testimony is to be shown to the jury in an attempt to resolve any objections to the deposition. The parties may continue to cooperate in good faith to narrow deposition

---

4 **EcoFactor's Position:** To the extent permitted by the Federal Rules of Evidence and rulings from the Court, the parties agree that depositions may be used at trial whether or not the transcripts of such depositions have been signed and filed as set forth in Federal Rule of Civil Procedure 30(b).

designations and counter-designations to be played or read to the jury after they have been disclosed in accordance with the above procedures. The parties will continue in good faith to meet and confer regarding the proposed deposition testimony and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the proposed testimony.

All designated deposition testimony may be played by video or may be read live in court. The parties agree that any counter-designations, to which the other party did not object or to which the Court overruled the objection, will be included in the reading or video playing of deposition designations. To the extent that the trial is subject to specific time limitations, the time required to read or play back testimony shall count against the party that designated or counter-designated the testimony. The designations and counter-designations must be presented in the order they appear in the transcript. All colloquy between counsel and objections will be eliminated when deposition testimony is presented at trial.

Any deposition testimony not specifically identified on a party's deposition designation list may still be used at trial for the purposes of impeachment, if otherwise competent for that purpose. When a party uses deposition testimony for impeachment, the party may elect to either play the deposition testimony by video or to read the deposition testimony live, unless the Court orders otherwise.

### E.    Demonstrative Exhibits

Demonstrative exhibits that the parties intend to use at trial need not be included on the parties' respective exhibit lists. "Demonstratives" are exhibits specifically created for the purpose of the trial and do not include (1) exhibits created in the courtroom during testimony or opening at trial, (2) the enlargement, highlighting, ballooning, etc. of trial exhibits or transcripts of testimony, or to composites of admitted exhibits and/or testimony, so long as the enlargement,

highlighted exhibit, ballooning exhibit, and/or composite only includes factual descriptions of the underlying exhibit or testimony. Any physical demonstratives, including any poster boards, must be made available for inspection at a time pre-arranged by the parties (see competing proposals below). Photos or electronic images of the physical demonstratives must also be disclosed at the same time along with the other demonstratives. The parties competing positions regarding the disclosure of demonstratives during the trial are as follows:

**EcoFactor's Position:** The parties shall exchange copies of all documentary, graphic, slide, animation, and any other form of demonstratives, such as prototypes, that they plan to use at trial during direct examination, by **7:00 p.m.** one (1) calendar day before their anticipated use. EcoFactor further proposes that the parties need not exchange copies of documentary, graphic, slide, animation, and any other form of demonstratives, such as prototypes, if they have previously been displayed during the course of trial. Any objections to the demonstrative exhibits shall be provided by **8:00 p.m.** one (1) calendar day before their anticipated use. The parties shall meet and confer telephonically in an attempt to resolve any objections to the demonstratives at **9:00 p.m.** the day the objections are provided. The parties will continue in good faith to meet and confer regarding the proposed demonstratives and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the proposed demonstratives.

**Google's Position:** The parties shall exchange copies of all documentary, graphic, slide, animation, and any other form of demonstratives, such as prototypes, that they plan to use at trial during direct and cross-examination, by **7:00 p.m.** two (2) calendar days before their anticipated use.  Google agrees that the parties need not exchange copies of documentary, graphic, slide, animation, and any other form of demonstratives, such as prototypes, if they have previously

been displayed during the course of trial, but if a party wishes to use a previously-disclosed demonstrative they must provide notice to the opposing party at 7:00 p.m. two (2) calendar days before their anticipated use. Any objections to the demonstrative exhibits shall be provided by **7:00 p.m.** one (1) calendar day before their anticipated use. The parties shall meet and confer telephonically in an attempt to resolve any objections to the demonstratives at **9:00 p.m.** the day the objections are provided. The parties will continue in good faith to meet and confer regarding the proposed demonstratives and if objections remain unresolved, the parties will cooperate in seeking to have the Court resolve any disputes prior to presenting the proposed demonstratives.

### F.    Disclosures for Opening Statements

With respect to opening statements, by no later than **12:00 p.m.** on the day before the opening statements the parties shall exchange by email (a) lists of all exhibits the party intends to use in its opening statement and (b) electronic copies of any demonstrative exhibits that the party intends to use in its opening statement. Any physical demonstratives, including any poster boards, must be made available for inspection at the same time and physical demonstratives must also be made available for inspection at the same time.

Any objections to the opening statement disclosures must be provided by **3:00 p.m.** the day the disclosures are received. The parties shall meet and confer telephonically in an attempt to resolve any objections to these disclosures at **4:00 p.m.** If the parties cannot resolve the objections, the unresolved issues will be raised with the Court in the morning, before opening statements are presented to the jury.

### G.    Disclosures for Closing Arguments

With respect to closing arguments that will be given on a day following a non-trial day (i.e. closing arguments to be given on a Monday following the weekend), by no later than **12:00 p.m.** on the day before the closing arguments the parties shall exchange by email electronic

1791811

copies of any demonstrative exhibits that the party intends to use in its closing argument and that have not already been shown to the jury during the course of the trial. Demonstratives setting forth witness testimony given at trial do not have to be exchanged. Any physical demonstratives that have not already been shown to the jury during the course of the trial, including any poster boards, must be made available for inspection at the same time and physical demonstratives must also be made available for inspection at the same time.

Any objections to the closing arguments disclosures must be provided by **3:00 p.m.** the day the disclosures are received. The parties shall meet and confer telephonically in an attempt to resolve any objections to these disclosures at **4:00 p.m.** If the parties cannot resolve the objections, the unresolved issues will be raised with the Court in the morning, before opening statements are presented to the jury.

With respect to closing arguments that will be given on a day following a trial day (i.e. closing arguments to be given on a Friday following a day that the parties were in trial), by no later than **7:00 p.m.** on the day before the closing arguments the parties shall exchange by email electronic copies of any demonstrative exhibits that the party intends to use in its closing argument and that have not already been shown to the jury during the course of the trial. Any physical demonstratives that have not already been shown to the jury during the course of the trial, including any poster boards, must be made available for inspection at the same time and physical demonstratives must also be made available for inspection at the same time.

Any objections to the closing arguments disclosures must be provided by **9:00 p.m.** the day the disclosures are received. The parties shall meet and confer telephonically in an attempt to resolve any objections to these disclosures at **10:00 p.m** If the parties cannot resolve the

objections, the unresolved issues will be raised with the Court in the morning, before opening statements are presented to the jury.

**H.     Stipulations Regarding Subject Matter Not To Be Presented To the Jury**

The parties have stipulated to the following:

1.    There will not be any testimony, argument, or evidence about the possibility that damages could be enhanced.

2.    There will not be any attempt to use the COVID-19 pandemic or related conditions against any party or its witnesses, or how any party structures its trial presentation (*i.e.*, through use of video testimony).

3.    The parties shall not refer to EcoFactor as a "troll," "pirate," "privateer," "extortionist," "litigious," a "shell-company," engaged in a "shakedown."

4.    The parties shall not offer evidence or argument that EcoFactor has engaged in forum shopping, litigation abuse, or suggesting that the Western District of Texas is an improper venue or is otherwise a popular or notorious venue for patent litigation.

5.    The parties shall not offer evidence or argument regarding inter parties reviews, reexaminations, or other post-grant proceedings.

6.    The parties shall not offer evidence or argument regarding alleged misconduct during patent prosecution, the duty of candor to the USPTO, or any other issue of alleged inequitable conduct.

7.    The parties shall not offer evidence or argument regarding post-filing communications between the parties, including settlement discussions or settlement offers.

1791811

8. The parties shall not offer evidence or argument regarding no-longer asserted patents, dropped patent claims, non-asserted infringement theories, no-longer asserted non-infringement, and no-longer asserted invalidity theories.

9. The parties shall not offer evidence or argument suggesting or implying that the conduct of EcoFactor is responsible or the cause for (i) the timing of the trial as it relates to the specific date of the trial, (ii) jurors having to come to the courthouse and/or serve on the jury during the pandemic, (iii) any risk to health or safety of the jurors, their families, members of the community, or anyone else, or (iv) any burden or inconvenience to the jurors as it relates to the pandemic or the specific date of the trial.

10. The parties shall not offer evidence, argument, or testimony regarding expert opinions not disclosed in expert reports.

11. The parties shall not offer evidence or argument contrary to the court's claim construction rulings.

12. The parties shall not offer evidence or argument regarding if or how often either party's experts—including Erik de la Iglesia, who is EcoFactor's technical expert witness in this matter—have worked with either EcoFactor's or Google's counsel outside the context of this specific matter.  The parties are not precluded from using prior inconsistent statements for impeachment.

13. The parties shall not offer evidence or argument regarding Google's overall size, wealth, revenues, including advertising revenues.

1791811

14. The parties shall not offer evidence or argument relating to legal proceedings involving Google that have no relationship to EcoFactor or licenses considered by the parties' damages experts.

15. The parties shall not offer evidence or argument regarding damages or royalties owed to EcoFactor by Vivint, Inc. or ecobee, Inc.

16. The parties shall not offer evidence or argument regarding labor issues or working conditions at Google.

17. The parties shall not offer evidence or argument using the terms "monopoly," "antitrust," or Big Tech" to describe Google.

18. The parties shall not offer evidence or argument regarding the number of times a fact witness has been deposed in other cases not involving the parties or regarding the number of times a party has been accused of infringing intellectual property where such accusation did not involve the parties.

19. The parties shall not offer evidence or argument regarding the impact of a potential damages award on Google's customers, manufacturers, partners, or job losses. Google shall not be precluded from offering evidence related to the cost of goods sold or its profits and operating costs, including, for example, as set forth in Google's expert's report.

## I.    Handling of Source Code and Confidential Material

The parties agree to request that the courtroom be sealed when a party's confidential information, including source code or evidence concerning highly sensitive business documents, testimony, or information is expected to be presented.

**EcoFactor's Position**: Regarding source code, the Protective Order allows the "receiving party . . . to make up to five (5) additional hard copies for the Court in connection with a Court

filing, hearing, or trial" and "Electronic copies of Source Code may be made to be included in documents which, pursuant to the Court's rules, procedures, and order(s), may be filed or served electronically." Dkt. No. 72, para. 19(c)(x)(2)-(3). For purposes of trial this includes creating an electronic image of the entirety of EcoFactor's and Google's printed hard copy source code in order to pre-mark the electronic copy as an exhibit. Only the specific code files or source code pages discussed at trial may be offered into evidence to become part of the record, not the entirety of the printed source code hard copies during fact discovery or their electronic image.

**Google's Position**:  Google agrees that its source code may be displayed in a closed courtroom only. Google also agrees that the parties may include references to Google's source code in their argument and may elicit testimony from witnesses permitted to view this source code pursuant to the Protective Order in this case. Google objects to its source code being included as an exhibit and objects to copies of source code materials being provided to jurors in this case as it will serve no useful purpose and creates a greater risk of improper or inadvertent disclosure of highly confidential material. Once the trial is complete, EcoFactor must delete and/or destroy any copies of source code material in its possession, whether they be hard copies or digital copies. EcoFactor must confirm deletion/destruction of any source code material no later than 60 days following the entry of judgment. For the avoidance of any doubt, any presentation of the parties' source code in electronic or paper form in open court requires sealing of the court room.

## XI.    PROPOSED JURY INSTRUCTIONS

The parties' joint and disputed proposed preliminary jury instructions are attached as **Exhibit E-1** and the joint and disputed proposed charge instructions are attached as **Exhibit E-2**.

## XII.   LIST OF PENDING MOTIONS

The following motions remain pending:

1791811

1.  Defendants Google, ecobee, Inc., and Vivint Inc.'s Joint Motion for Summary Judgment of Subject Matter Ineligibility Under 35 U.S.C. § 101. Dkt. No. 111.

2.  Defendants' Google, ecobee, Inc., and Vivint Inc.'s Joint Daubert Motion to Exclude Certain Testimony of Dr. Palmer. Dkt. No. 113.

3.  Google's Motion to Exclude Expert Testimony of David Kennedy. Dkt. No. 114.

4.  Google's Motion for Summary Judgment as to the '488 Patent. Dkt. No. 115.

5.  EcoFactor's Motion to Strike Expert Opinions on Non-Infringing Alternatives. Dkt. No. 109.

6.  EcoFactor's Motion to Exclude Printed Publication Opinions and Summary Judgment as to Public Availability of References. Dkt. No. 112.

7.  EcoFactor's Motion for Summary Judgment of Google's Affirmative Defenses. Dkt. No. 116.

8.  EcoFactor's Motion to Exclude Expert Opinions of Todd Schoettelkotte. Dkt. No. 117.

9.  The Parties' Joint Motion to Amend Scheduling Order. Dkt. No. 118.[5]

## XIII.  PROPOSED JUROR QUESTIONNAIRE & VOIR DIRE QUESTIONS

The Parties' Joint proposed juror questionnaire is attached as **Exhibit F-1**.

EcoFactor's proposed *voir dire* questions are attached as **Exhibit F-2**. Google's proposed *voir dire* questions are attached as **Exhibit F-3**.

## XIV.  VERDICT FORM

---

5 On December 8, 2021, the Parties received confirmation from the Court's clerk via email that the Parties should consider this motion as granted.

EcoFactor's proposed verdict form is attached as **Exhibit G-1**. Google's proposed verdict form is attached as **Exhibit G-2**. EcoFactor's objections to Google's proposed verdict form are attached as **Exhibit G-3**. Google's objections to EcoFactor's proposed verdict form are attached as **Exhibit G-4**.

## XV.    DISPUTED MOTIONS *IN LIMINE*

EcoFactor motions *in limine* still in dispute:

- Motion *In Limine* No. 1: To Preclude Evidence Or Argument Regarding EcoFactor's Attorney Fee Agreements Or Regarding Payments Or Non-Payments To EcoFactor's Litigation Counsel, Russ August & Kabat.

- Motion *In Limine* No. 2: To Preclude Evidence Or Argument Regarding How, Or To Whom, A Damages Award To EcoFactor May Be Distributed, Including Its Members' Or Shareholders' Ownership Interests In The Company.

- Motion *In Limine* No. 4: To Preclude Evidence Or Argument Regarding An "Advice Of Counsel" Defense.

- Motion *In Limine* No. 5: To Preclude Evidence Or Argument Relating To Documents Originating With Trane That Were Not Timely Produced In This Case, And Further To Preclude Evidence, Argument, Or Suggestion That EcoFactor's Expert Witnesses Should Have Addressed Those Documents In Their Expert Reports.

- Motion *In Limine* No. 6: To Preclude Evidence Or Argument Regarding The Alleged Number Of Nest Learning Thermostat Third Generation, Nest Thermostat E, Or Nest Thermostat Products That Are Not Currently Connected To A Wi-Fi Network, Based On Documents Not Produced During Fact Discovery

And Google's Rebuttal Experts' Off-The-Record Conversations With Fact Witness Manu Sharma, Who Was Never Identified During Fact Discovery As A Person With Knowledge Relevant To This Case.

- Motion *In Limine* No. 7: To Preclude Evidence Or Argument On Google's Affirmative Defenses Of Prosecution History Estoppel, Equitable Defenses, Improper Venue, Or Failure To State A Claim.

- Motion *In Limine* No. 8: To Preclude Evidence Or Argument That Is Derogatory Of The USPTO Or Its Examiners, Including That They Are "Overworked" Or Substantially Similar Language; Provided, However, The Parties May Use The Following, Or Substantially Similar, Language About The USPTO: "There Is The Possibility That Mistakes Were Made, Or Important Information Overlooked. Examiners Have A Lot Of Work To Do, And No Process Is Perfect."

- Motion *In Limine* No. 9: To Preclude Evidence Or Argument That Individual Claim Elements Were Known In The Prior Art.

Google motions *in limine* still in dispute:

- Google's Motion *in Limine* No. 1: The Court should exclude references to $5.16 as an "established royalty" and otherwise exclude evidence of a per-unit royalty rate of $5.16.

- Google's Motion *in Limine* No. 2: The Court should exclude evidence of Nest's revenues and profits prior to the January 2020 start of alleged infringement.

- Google's Motion *in Limine* No. 3: The Court should exclude references to the price Google paid to acquire Nest or any other companies.

- Google's Motion *in Limine* No. 4: The Court should exclude references to and evidence of the size, value, and revenue of Google's Nest Division.

- Google's Motion *in Limine* No. 5: The Court should exclude references to the parties' other litigations and claims besides EcoFactor's claims against Google in this case.

- Google's Motion *in Limine* No. 6: The Court should exclude arguments or evidence that EcoFactor's products practice the asserted patents and evidence of industry praise relying on the same.

- Google's Motion *in Limine* No. 7: The Court should exclude any testimony by Erik de la Iglesia that accuses instrumentalities other than the processors in the Nest thermostats of infringing the "one or more processors" claim limitations of the '382 patent.

## XVI.   PROCEDURE FOR POTENTIAL COVID-19 WITNESS DISRUPTIONS

The Parties agree that, in the event any witness that is scheduled and disclosed to appear live to testify, becomes unable to do so due to COVID-19 illness or travel restrictions or is unwilling or unable to travel due to concerns about health and safety, the witness may be called via live videoconference. To the extent that any party intends to offer testimony in this fashion, it will notify opposing counsel as soon as it becomes aware of the issue and provide a revised order of witness appearance if necessary. In the event that a previously and properly disclosed witness is unavailable (as defined in Fed. R. Civ. P. 32) to give live testimony in person or by video due to COVID-19, his or her deposition testimony will be permitted as a substitute.

## XVII.  LENGTH OF TRIAL

**EcoFactor's Position:** The length of trial will be 10 hours per side. This time will not include opening statements and closing arguments. Opening statements be limited to sixty (60) minutes per side, and the closing arguments be limited to sixty (60) minutes per side.

**Google's Position:** Based on the claims EcoFactor currently asserts, the length of trial will be 18 hours per side, excluding opening statements and closing arguments. Opening statements will be limited to sixty (60) minutes per side, and closing arguments will be limited to ninety (90) minutes per side.

This Joint Pre-Trial Order is hereby approved this ___ day of _____, 2022.

_____
Hon. Alan D. Albright
United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document is being served upon counsel of record for Defendant on January 7, 2022 via electronic service.

/s/ Reza Mirzaie          