# EXHIBIT E-1

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

ECOFACTOR, INC.,

                    Plaintiff,

     v.

GOOGLE LLC,

                    Defendant.

Civil Action No. 6:20-cv-00075 (ADA)

## <u>JOINT PROPOSED PRELIMINARY JURY INSTRUCTIONS</u>

In advance of the jury trial set to begin in this case on January 31, 2022, Plaintiff EcoFactor, Inc. ("EcoFactor") and Defendant Google, Inc. ("Google") (collectively "the Parties") have met and conferred to narrow their disputes regarding the jury instructions in this case. The following are the joint proposed preliminary jury instructions with remaining disputes noted for the Court. The Parties have indicated their competing proposals for any disputed instruction in red text for plaintiff and blue text for defendant. Pursuant to the Court's usual practice, the parties will submit their respective objections, if any, prior to the jury receiving the Court's Final Instructions.

By providing these proposed preliminary jury instructions, the Parties do not waive any claims or defenses.

**JURY INSTRUCTION NO. 1:  INSTRUCTIONS FOR BEGINNING OF TRIAL**

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone or any other wireless communication device with you, please take it out now and turn it off.  Do not turn it to vibrate or silent; power it down.  During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate.  I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court.  You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case.  For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.  Some of the people you encounter may have some connection to the case.  If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method.  Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony.  Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.  If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court.  If you do any research, investigation or experiment that we do not know about, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination.  It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case.  Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct

yourself so as to maintain the integrity of the trial process.  If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice.  It is very important that you abide by these rules.  Failure to follow these instructions could result in the case having to be retried.

**JURY INSTRUCTION NO. 2: PRELIMINARY INSTRUCTIONS TO JURY**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, Snapchat, Instagram, TikTok, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any is- sue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the wit- nesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with

the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiff will present its case through witness testimony and documentary or other evidence. Next, the defendant will have an opportunity to present its case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

1791894

**JURY INSTRUCTION NO. 3:  WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to a United States patent.  Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

[PLAY FEDERAL JUDICIAL CENTER PATENT VIDEO]

Now, I know that you just saw the patent video film, but I want to give you some instructions here and on the record about a patent and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder the right for 20 years from the application filing date to prevent others from making, using, offering to sell, or selling the patented invention within the United States without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents.  The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed.  In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed.  The PTO searches for and reviews information that is publicly available or that is submitted by the applicant.  This information is called "prior art."  The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.  Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed.  A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be

patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

An issued United States patent is accorded a presumption of validity based on the presumption that the Patent Office acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents. In order to overcome this presumption, a person accused of infringement must establish by clear and convincing evidence that the claim is invalid.[1]

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent.[2] For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent.[3]

A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Google has proven that the patent is invalid.

**EcoFactor's Position:**

EcoFactor objects to Google's proposed language because it ignores the presumption of validity and Google's burden to prove invalidity. By referring to the PTO and its involvement in the process of granting a patent, but failing to address the presumption of validity which results from the grant of a patent, Google's proposed language would confuse the jury's understanding of the impact of the PTO's issuance of a patent and the concomitant burden that an alleged infringer must overcome. EcoFactor's language provides context which Google's language fails to

---

[1] EcoFactor's Sources: 35 U.S.C. § 282; *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91 (2011); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Innovative Sciences, LLC v. Amazon.com, Inc.*, 4:18-cv-474, Dkt. No. 845 at 17 (E.D. Tex. Sept. 2, 2020); *Optis Wireless v. Huawei*, 2:17-cv-123-JRG-RSP, Dkt. No. 284 at 15 (E.D. Tex. Aug. 25, 2018); *United Services Automobile Association v. Wells*, 2:18-cv-366-JRG (Dkt. No. 275), at 1313-1314 (E.D. Tex. Jan. 10, 2020).
[2] Google source: FCBA Model Jury Instructions A.1
[3] Google source: FCBA Model Jury Instructions A.1

provide. Moreover, EcoFactor's language here provides context to the instructions which follow and discuss invalidity repeatedly.

**Google's Position:**

Google objects to the paragraph above beginning "An issued United States patent is accorded a presumption of validity" because it is not part of the model instructions. Further, this language is prejudicial and unduly argumentative because EcoFactor repeats language on the presumption of validity at least three times in various instructions. That repetition is an improper attempt to insert EcoFactor's legal and factual theories into the jury instructions. *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997)).

The language Google includes in blue is directly from the FCBA Model Jury Instructions A.1 on which this instruction is based, and should be included.

**JURY INSTRUCTION NO. 4:   SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Plaintiff EcoFactor, Inc. ("EcoFactor") and Defendant Google, LLC ("Google").  The case involves United States Patent No. 8,738,327, 8,412,488, 10,534,382. For your convenience, the parties and I will often refer to these patents by the last three numbers of the patent number, namely, as the "'327 patent," the "'488 patent," and the "'382 patent," and collectively as the "Asserted Patents."

EcoFactor filed suit in this court seeking money damages from Google for allegedly infringing the '327, '488, and '382 patents by making, using, selling, and/or offering for sale within the United States products that EcoFactor argues are covered by claims 5 and 8 of the '327 patent, claims 1 and 8 of the '488 patent, and claims 2, 6, 12, and 17 of the '382 patent. These are known as the "Asserted Claims."

The products that are alleged to infringe are smart thermostat systems made, used, offered for sale, or sold by Google, including the Nest Learning Thermostat Third Generation, Nest Thermostat E, and the Nest Thermostat. Google servers or Nest servers that support the Nest Learning Thermostat Third Generation, Nest Thermostat E, or Nest Thermostat, and Google's mobile applications that support the Nest Learning Thermostat Third Generation, Nest Thermostat E, or Nest Thermostat, including the Google Home app and the Nest app. These may be referred to as the "Accused Products."

Google denies that it has infringed any of the Asserted Claims of the Asserted Patents.  Google also argues that the Asserted Claims are invalid.  I will instruct you later as to the ways in which a patent may be invalid.  In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the elements of the asserted claims involve only technology considered to be well-understood, routine, and conventional at the relevant time.

Your job will be to decide whether or not any Asserted Claims have been infringed and whether or not those claims are invalid.  If you decide that any Asserted Claims both have been infringed and are valid, you will then need to decide any money damages to be awarded to EcoFactor to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

**EcoFactor's Position:**

EcoFactor has consistently identified the Accused Products as encompassing Google's Nest Learning Thermostat Third Generation, Nest Thermostat E, and the Nest Thermostat in conjunction with Google's mobile application and the Google Nest service backend which provides cloud-supported features of Google's smart thermostats. EcoFactor's infringement

contentions and Mr. de la Iglesia's expert report are both replete with references to the Google thermostats themselves, Google's mobile application, and the Nest service or Google Cloud Platform. Moreover, even taking Google's characterization of Mr. de la Iglesia's deposition testimony at face value (in describing its position on this instruction), Google fails to take into account the other two Asserted Patents besides the '382 Patent and the features accused of infringing those patents.

**Google's Position:**

Google objects to EcoFactor's attempt to broaden the definition of "Accused Products" in this case. EcoFactor's purported infringement expert Mr. de la Iglesia has made clear that the Accused Products in this case include the Nest Learning Thermostat Third Generation, Nest Thermostat E, and the Nest Thermostat only.  Consistent with this definition, Mr. de la Iglesia made clear at his deposition that he was only accusing the processors contained within these Nest devices when interpreting the '382 Patent's claim limitations that refer to "one or more processors." The instruction given to the jury should contain the narrower (and correct) definition of "Accused Products" in this case that Google proposes above.

**JURY INSTRUCTION NO. 5:  PATENTS AT ISSUE**

I have already determined the meaning of the claims of the Asserted Patents. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent.  You are to apply my definitions of the terms I have construed throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**JURY INSTRUCTION NO. 6:  OVERVIEW OF APPLICABLE LAW**

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Google has infringed the Asserted Claims of the Asserted Patents.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.  To prove infringement, EcoFactor must prove by a preponderance of the evidence that Google made, used, sold, or offered for sale in the United States a product meeting all the requirements of an Asserted Claim of the Asserted Patents. I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the Asserted Claims of the Asserted Patents are invalid. A patent when issued is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But the presumption of validity can be overcome if there is clear and convincing evidence presented in Court that proves that the patent is invalid.[4] A patent claim may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious.  For a claim to be invalid because it is not new, Google must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent.  We call these "prior art."  If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious.  Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether the invention(s) claimed in the Asserted Patents are obvious.  I will provide you detailed instructions on these questions at the conclusion of the case.

Another way that a claim may be invalid is that it is directed to ineligible subject matter.  To succeed on this claim for invalidity, Google must show by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention.  I will provide you detailed instructions on patent ineligibility at the conclusion of the case.

---

[4] EcoFactor's Sources: *Profectus Technology LLC v. Google LLC*, Case No. 6:20-cv-00101-ADA, Dkt. No. 170 at 11 (Sept. 27, 2021).

A patent may also be invalid if its description in the specification does not meet certain requirements.  To be valid, a patent must meet the "written description" requirement.  In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as claimed in the issued patent.  The disclosure of a patent must also meet the "enablement" requirement.  To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention without undue experimentation, at the time the patent application was originally filed. The patent claims must also be sufficiently definite. To meet this requirement, the words used in a patent claim must be sufficiently definite to allow one skilled in the art to determine the precise limits of the claimed invention.

If you decide that any of the Asserted Claims of the Asserted Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to EcoFactor to compensate it for the infringement.  A damages award should put EcoFactor in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what EcoFactor would have received had it been paid a reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.  The damages you award are meant to compensate EcoFactor and not to punish Google.  You may not include in your award any additional amount as a fine or penalty in order to punish Google.  I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

## EcoFactor's Position:

EcoFactor's language provides important context that Google's proposed instruction fails to provide on the issue of validity. Further, EcoFactor's proposed language tracks the language of the similar instruction given in *Profectus Technology LLC v. Google LLC*. *See Profectus*, Case No. 6:20-cv-00101-ADA, Dkt. No. 170 at 11 (Sept. 27, 2021).

## Google's Position:

Google objects to the two sentences beginning "A patent when issued is presumed to be valid…" because they are not part of the model instructions. Further, this language is prejudicial and unduly argumentative because EcoFactor repeats language on the presumption of validity at least three times in various instructions. That repetition is an improper attempt to insert EcoFactor's legal and factual theories into the jury instructions. *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997)).

**JURY INSTRUCTION NO. 7:  OUTLINE OF TRIAL**

The trial will begin shortly. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

After the opening statements, EcoFactor will present its evidence in support of its contention that the Asserted Claims of the Asserted Patents have been infringed by Google and that the infringement has been willful. To prove infringement of any claim, EcoFactor must persuade you that it is more likely than not that Google has infringed that claim. To persuade you that any infringement was willful, EcoFactor must prove that it is more likely than not that the infringement was willful.

Google will then present its evidence that the Asserted Claims of the Asserted Patents are invalid. To prove invalidity of any claim, Google must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, Google will put on evidence responding to EcoFactor's evidence of infringement and willfulness.

EcoFactor may then put on additional evidence responding to Google's evidence that the Asserted claims of the Asserted Patents are invalid, and to offer any additional evidence of infringement and willfulness. This is referred to as "rebuttal" evidence. EcoFactor's "rebuttal" evidence may respond to any evidence offered by Google.

Finally, Google may have the option to put on its "rebuttal" evidence to support its contentions as to the validity and enforceability of the Asserted Claims of the Asserted Patents by responding to any evidence offered by EcoFactor on that issue.

During the trial, both parties will also present evidence related to the issue of damages, or the amount of money EcoFactor should receive if it can prove infringement of a valid claim.

EcoFactor has the burden of proving the amount of its damages by a preponderance of the evidence. Google will have the opportunity to present evidence that contests EcoFactor's proposed amount of damages, but in presenting this evidence Google is not agreeing that EcoFactor is entitled to any damages. I will give you more detailed instructions about damages later.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

**JURY INSTRUCTION NO. 8: EVIDENCE**

The evidence you will hear consists of the testimony of the witnesses, the documents, and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.  Nothing else is evidence.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you will hear in this case, whether direct, circumstantial, or any combination.

In judging the facts, you must consider all the evidence, both direct and circumstantial.  That does not mean you have to believe all of the evidence.  It is entirely up to you to give the evidence you will receive in this case whatever weight you individually believe it deserves.  It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection.  If I sustained an objection, then just pretend the question was never asked.  If there was an answer given, ignore it.  If I overruled the objection, act like the objection was never made.  If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction.  If I gave any limiting instruction during trial, you must follow it.  Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation.  You must make your decision based only on the evidence here, and nothing else.

1791894

**JURY INSTRUCTION NO. 9: WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

In determining the weight to give to the testimony of a witness, consider whether there was evidence at some other time the witness said or did something or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. We are people. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or just a mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. That being said, it is exclusively in your province to believe every word that any witness says, or to disregard anything they say or do, because you all are the exclusive judges of the facts in this case.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.[5]

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**EcoFactor's Position:**

EcoFactor objects to the sentence starting "even though a witness" as it is inconsistent with the law.  It can be read to improperly instruct the jury that statements by a party may be believed only if there is no evidence or inference contradicting the witness.

**Google's Position:**

The sentence EcoFactor objects to appears verbatim in the proposed jury instructions EcoFactor initially served, as well as in Fifth Circuit Pattern Jury Instruction §3.4. The removal of this

---

[5] Google Source: Fifth Circuit Pattern Jury Instructions.

language would be prejudicial to Google, and contrary to the law and the model instructions, as well as instructions used in this District. *See, e.g.*, *Profectus Technology, LLC, v. Google, LLC*, No. 6:20-cv-00101-ADA, Dkt. No. 193 at 21 (W.D. Tex. Oct. 6, 2021).

1791894

**JURY INSTRUCTION NO. 10:  EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

1791894

**JURY INSTRUCTION NO. 11:  DEPOSITION TESTIMONY**

Certain testimony may be presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers may be shown to you.  This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**JURY INSTRUCTION NO. 12:  REMOTE LIVE TESTIMONY**

In addition, certain testimony may be presented to you through a remote live video.  These witnesses have been permitted to testify by remote live video due to travel restrictions.  Some of the live remote video of witnesses you may see may be of lower quality because the witnesses is testifying remotely.  This is due to travel restrictions in place at the time and in the location where the witness is located. You should not hold the quality of the video or the location of the witness against either party.

This testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**JURY INSTRUCTION NO. 13:  OBJECTIONS**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.

Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence.  As stated before, the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer these questions. You should not be influence by the objection or by the Court's ruling on it.

1791894