# EXHIBIT E-2

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| ECOFACTOR, INC., | Civil Action No. 6:20-cv-00075 (ADA) |
| Plaintiff, | |
| v. | |
| GOOGLE LLC, | |
| Defendant. | |

### JOINT PROPOSED JURY INSTRUCTIONS
### TO BE GIVEN AFTER THE CLOSE OF EVIDENCE

In advance of the jury trial set to begin in this case on January 31, 2022, Plaintiff EcoFactor, Inc. ("EcoFactor") and Defendant Google, Inc. ("Google") (collectively "the Parties") have met and conferred to narrow their disputes regarding the jury instructions in this case. The following are the joint proposed jury instructions to be given after the close of evidence with remaining disputes noted for the Court. The Parties have indicated their competing proposals for any disputed instruction in red text for plaintiff and blue text for defendant. Pursuant to the Court's usual practice, the parties will submit their respective objections, if any, prior to the jury receiving the Court's Final Instructions.

By providing these proposed jury instructions, the Parties do not waive any claims or defenses.

**JURY INSTRUCTION NO. 14:  JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case.  The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

Each of you is going to have your own printed copy of these final jury instructions that I am giving you now, so there is really no need for you to take notes unless you want to.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom.  You may not be influenced by passion, prejudice, or sympathy you might have for EcoFactor or Google in arriving at your verdict.

After the remainder of these instructions, you will hear closing arguments from the attorneys.  Statements and arguments of the attorneys, I remind you, are not evidence, and they are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You are to take this verdict form with you to the jury room; and when you have reached a unanimous decision or agreement as to the verdict, you are to have your foreperson fill in the blanks in the verdict form, date it, and sign it.  Answer each

2

question in the verdict form from the facts as you find them to be.  Do not decide who you think should win the case and then answer the questions to reach that result.

Again, your answers and your verdict must be unanimous.

1791893

**JURY INSTRUCTION NO. 15:  EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, the stipulations to which the lawyers agreed, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.  Nothing else is evidence.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you determine the facts from all the evidence that you hear in this case, whether direct, circumstantial, or any combination.

As I instructed you before the trial began, in judging the facts, you must consider all the evidence, both direct and circumstantial.  That does not mean you have to believe all of the evidence.  It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves.  It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

You should never be influenced by my ruling on any objection.  If I sustained an objection, then just pretend the question was never asked.  If there was an answer given, ignore it.  If I overruled the objection, act like the objection was never made.  If I gave you instructions that some item of evidence was received for a limited purpose, you must follow my instruction.  If I gave any limiting instruction during trial, you must follow it.  Any testimony I tell you to exclude or disregard is not evidence and may not be considered.

You must not conduct any independent research or investigation. You must make your decision based only on the evidence here, and nothing else.

1791893

**JURY INSTRUCTION NO. 16:  WITNESSES**

You alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

In determining the weight to give to the testimony of a witness, consider whether there was evidence at some other time the witness said or did something or failed to say or do something, that was different from the testimony given by that witness at trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it.  We are people.  People may forget some things or remember other things inaccurately.  If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or just a mistake.  The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.  That being said, it is exclusively in your province to believe every word that any witness says, or to disregard anything they say or do, because you all are the exclusive judges of the facts in this case.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.[1]

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

---

[1] Source: Fifth Circuit Pattern Jury Instructions.

1791893

**<u>EcoFactor's Position:</u>**

EcoFactor objects to the sentence starting "even though a witness" as it is inconsistent with the law. It can be read to improperly instruct the jury that statements by a party may be believed only if there is no evidence or inference contradicting the witness.

**Google's Position:** The sentence EcoFactor objects to appears verbatim in its own proposed jury instructions, as well as in Fifth Circuit Pattern Jury Instruction § 3.4. The removal of this language would be prejudicial to Google, and contrary to the law and the model instructions, as well as instructions used in this District. *See, e.g.*, *Profectus Technology, LLC, v. Google, LLC*, No. 6:20-cv-00101-ADA, Dkt. No. 193 at 21 (W.D. Tex. Oct. 6, 2021)

1791893

**JURY INSTRUCTION NO. 17:  DEPOSITION TESTIMONY**

Certain testimony has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  The questions and answers have been shown to you.  This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**JURY INSTRUCTION NO. 18:  REMOTE LIVE TESTIMONY**

In addition, certain testimony has been presented to you through a remote live video.  These witnesses have been permitted to testify by remote live video due to travel restrictions.  This remote live video testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Some of the video recordings and live remote video of witnesses you have seen may have been of lower quality because the witnesses testified from home.  This was due to travel restrictions in place at the time and in the location where the witness was located.  You should not hold the quality of the video, the location of the witness, or any other circumstances arising from travel restrictions against either party.

Regardless of whether presented by deposition or live remote video, this testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

1791893

**JURY INSTRUCTION NO. 19:  EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.  You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

**JURY INSTRUCTION NO. 20:  NO INFERENCE FROM FILING SUIT**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment.  Anyone may make a claim and file a lawsuit.  The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

1791893

**JURY INSTRUCTION NO. 21:  STIPULATIONS OF FACT**

A "stipulation" is an agreement.  When there is no dispute about certain facts, the parties may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

1791893

**JURY INSTRUCTION NO. 22:  LIMITING INSTRUCTION**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

1791893

**JURY INSTRUCTION NO. 23:  CHARTS AND SUMMARIES**

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence.  These charts and summaries are not evidence or proof of any facts.  You should determine the facts from the evidence.

1791893

**JURY INSTRUCTION NO. 24:  DEMONSTRATIVE EXHIBITS**

Certain exhibits shown to you, such as PowerPoint presentations, posters, or models, are illustrations of the evidence, but are not themselves evidence.  It is a party's description, picture, or model used to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

14

**JURY INSTRUCTION NO. 25:  BIAS – CORPORATE PARTY INVOLVED**

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

15

**JURY INSTRUCTION NO. 26:  PREPONDERANCE OF THE EVIDENCE**

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."

EcoFactor has the burden of proving patent infringement, willfulness, and damages by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

If you find that EcoFactor has failed to prove any element of its claim by a preponderance of the evidence, then it may not recover on that claim.

**JURY INSTRUCTION NO. 27:  CLEAR AND CONVINCING EVIDENCE**

Google has the burden of proving patent invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.  It is evidence so clear, direct, weighty and convincing as to enable you to come to a clear conviction without hesitancy.

The "clear and convincing evidence" standard is different from what you have heard about in criminal proceedings, where a fact must be proven beyond a reasonable doubt.  On a scale of the various standards of proof, as you move from preponderance of the evidence where proof needs to be sufficient to tip the scales in favor of the party proving the fact, to at the other end, beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you can think of clear and convincing evidence as being between these two ends of the spectrum or these two different standards.

17

**JURY INSTRUCTION NO. 28:  SUMMARY OF CONTENTIONS**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, EcoFactor filed suit in this court seeking money damages from Google for allegedly infringing the '327, '488, and '382 patents by making, using, selling, and/or offering for sale within the United States products that EcoFactor argues are covered by claims 5 and 8 of the '327 patent, claims 1 and 8 of the '488 patent, and claims 2, 6, 12, and 17 of the '382 patent. These are known as the "Asserted Claims."

The products that are alleged to infringe are smart thermostat systems made, used, offered for sale, or sold by Google, including the Nest Learning Thermostat Third Generation, Nest Thermostat E, and the Nest Thermostat, Google servers or Nest servers that support the Nest Learning Thermostat Third Generation, Nest Thermostat E, or Nest Thermostat, and Google's mobile applications that support the Nest Learning Thermostat Third Generation, Nest Thermostat E, or Nest Thermostat, including the Google Home app and the Nest app. These may be referred to as the "Accused Products."[2]

Google denies that it has infringed any of the Asserted Claims of the Asserted Patents.  Google also argues that the Asserted Claims are invalid.

Your job is to decide whether or not Google has infringed any Asserted Claims, and whether or not those claims are invalid.  If you decide that any Asserted Claims both have been infringed and are valid, you will then need to decide any money damages to be awarded to EcoFactor to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

**EcoFactor's Position:**

EcoFactor's has consistently identified the Accused Products as encompassing Google's Nest Learning Thermostat Third Generation, Nest Thermostat E, and the Nest Thermostat in conjunction with Google's mobile application and the Google Nest service backend which provides cloud-supported features of Google's smart thermostats. EcoFactor's infringement contentions and Mr. de la Iglesia's expert report are both replete with references to the Google thermostats themselves, Google's mobile application, and the Nest service or Google Cloud Platform. Moreover, even taking Google's characterization of Mr. de la Iglesia's deposition testimony at face value (in

---

[2] Mirrored from language in Instruction No. 4.

describing its position on this instruction), Google fails to take into account the other two Asserted Patents besides the '382 Patent and the features accused of infringing those patents.

**Google's Position:**

Google objects to EcoFactor's attempt to broaden the definition of "Accused Products" in this case. EcoFactor's purported infringement expert Mr. de la Iglesia has made clear that the Accused Products in this case include the Nest Learning Thermostat Third Generation, Nest Thermostat E, and the Nest Thermostat only.  Consistent with this definition, Mr. de la Iglesia made clear at his deposition that he was only accusing the processors contained within these Nest devices when interpreting the '382 Patent's claim limitations that refer to "one or more processors." The instruction given to the jury should contain the narrower (and correct) definition of "Accused Products" in this case that Google proposes above.

1791893

**JURY INSTRUCTION NO. 29:  PATENT CLAIMS**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth—in words—a set of requirements.  Each claim sets forth its requirements in a single sentence.  The requirements of a claim are often referred to as "claim elements" or "claim limitations."  The coverage of a patent is assessed claim by claim.  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I have provided to you my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The beginning portion of a claim, also known as the preamble, of a claim often uses the word "comprising."  The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed.  This is true even if the accused product contains additional elements.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.

My claim constructions are as follows:

| Claim Term | Construction |
|---|---|
| "rate of change in inside temperature" ('488 patent claim 1; '327 patent claim 1); "rate of change in temperature inside the [said] structure" ('488 patent claim 8; '327 patent claim 5) | "the difference between inside temperature measurements divided by the span of time between the measurements" |
| "measurement of the current outdoor temperature" | "measurement of the outdoor temperature at the present time" |
| "setpoint" | "a temperature setting for a thermostat to achieve or maintain" |
| "compares" | "analyze to determine one or more similarities or differences between" |

**JURY INSTRUCTION NO. 30:  INDEPENDENT AND DEPENDENT CLAIMS**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim.  Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case the following claims are independent claims:

- Claim 1 of the '488 Patent is an independent claim;

- Claims 1 of the '327 Patent is an independent claim; and

- Claims 1 and 17 of the '382 Patent are each independent claims.

The remainder of the Asserted Claims in the Asserted Patents are "dependent claims."  A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim.  A dependent claim incorporates all of the requirements of the claim(s) to which it refers.  The dependent claim then adds its own additional requirements.

To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.  A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

If any requirement of a dependent claim is not met, or if any requirement of a claim from which the dependent claim depends is not met, then the product is not covered by that dependent claim.

On the other hand, if the requirements of an independent claim are met by a product, but a requirement of a dependent claim is not met, the independent claim is still infringed.[3]

**EcoFactor's Position:**

The sentence beginning "on the other hand, if the requirements of an independent claim are met…" comes directly from previous instructions used in this District. *See, e.g.*, *Profectus Technology, LLC, v. Google, LLC*, No. 6:20-cv-00101-ADA, Dkt. No. 193 at 21 (W.D. Tex. Oct. 6, 2021). Further, this sentence provides a reciprocal instruction to the preceding sentence which will help to clarify considerations involving both independent and dependent claims. Google's position that the sentence be removed would serve to confuse the jury with incomplete instructions.

**Google's Position:**

---

[3] EcoFactor's Source: *Profectus Technology LLC v. Google LLC*, Case No. 6:20-cv-00101-ADA, Dkt. No. 193 at 19 (Oct. 5, 2021).

Google objects to the sentence beginning "On the other hand, if the requirements of an independent claim are met…" as not part of the model instructions.   Including this language would be redundant and confusing to the jury. The instruction already explains how the jury should handle an independent claim, and the additional language proposed would only serve to confuse the jury. Further, the language is prejudicial because it repeats statements already present in the instruction. *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997)).

**JURY INSTRUCTION NO. 31:  INFRINGEMENT GENERALLY**

I will now instruct you how to decide whether or not EcoFactor has proven that Google has infringed the Asserted Claims of the Asserted Patents.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another.

A patent owner has the right to prevent others from using the invention covered by his or her patent claims in the United States during the life of the patent. If any person makes, uses, sells or offers to sell within the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.[4]

In this case, there are different ways that a claim may be infringed: (1) direct infringement; (2) active inducement; (3) contributory infringement.  Active inducement and contributory infringement are referred to as indirect infringement.  There cannot be indirect infringement without someone else engaging in direct infringement.

In this case, EcoFactor has alleged that Google directly infringes the Asserted Patents.  In addition, EcoFactor has alleged that Google's customers directly infringe the Asserted Patents and Google is liable for actively inducing or contributing to that direct infringement by Google's customers.

In order to prove infringement, EcoFactor must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of infringement have been proved.[5]

I will now explain each of these types of infringement in more detail.[6]

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the asserted patent claims, as I have defined each of them, to the accused system or process, and determine whether or not there is infringement. You should not compare the accused system or process with any specific example set out in the patent or with the prior art in reaching your decision on the issue of infringement. The only correct comparison is between the accused products and the language of a claim itself, as I have explained its meaning to you. You must reach your decision as to each assertion of infringement based on my

---

[4] EcoFactor's Sources: *Profectus Technology LLC v. Google LLC*, Case No. 6:20-cv-00101-ADA, Dkt. No. 193 at 20 (Oct. 5, 2021); *Videoshare, LLC v. Google LLC,* Case No. 6:19-CV-00663-ADA, Dkt. No. 215 at 21 (Nov. 15, 2021); *MV3 Partners LLC v. Roku, Inc.*, Case No. 6:18-cv-308-ADA, Dkt. No. 379 at 18.

[5] Google Source: FCBA Model Instructions § 3.1.

[6] Google Source: FCBA Model Instructions § 3.1.

instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.[7]

**EcoFactor's Position:**

The paragraph beginning, "A patent owner has the right to prevent others from using the invention…" comes directly from previous instructions used in this District. *Profectus Technology, LLC, v. Google, LLC*, No. 6:20-cv-00101-ADA, Dkt. No. 193 at 20 (W.D. Tex. Oct. 6, 2021); *Videoshare, LLC v. Google LLC,* Case No. 6:19-CV-00663-ADA, Dkt. No. 215 at 21 (Nov. 15, 2021); *see also MV3 Partners LLC v. Roku, Inc.*, Case No. 6:18-cv-308-ADA, Dkt. No. 379 at 18. Further, this language provides context as to a patent owner's rights and the concept of infringement.

Further, the paragraph beginning, "In reaching your decision on infringement…" comes directly from previous instructions used in this District. *Videoshare, LLC v. Google LLC,* Case No. 6:19-CV-00663-ADA, Dkt. No. 215 at 21 (Nov. 15, 2021); *MV3 Partners LLC v. Roku, Inc.*, Case No. 6:18-cv-308-ADA, Dkt. No. 379 at 18. Further, this instruction provides a framework for the jurors when considering the issues of infringement which helps to clarify the instructions which follow. Moreover, a positive instruction (instructing the jurors to compare the accused products to the claims) combined with a negative instruction (instructing the jurors not to compare the accused products to irrelevant considerations to the issue of infringement) would not serve to confuse the jury, but rather would provide greater clarity to the law applicable to their decision.

**Google's Position:**

Google objects to the paragraph beginning, "A patent owner has the right to prevent others from using the invention…" because that paragraph as it is not part of the model instructions, and is prejudicial and redundant. The instructions already make clear what infringement means, and this statement only serves to prejudice the jury by adding inappropriate argument. *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997)).

Further, Google objects to the paragraph beginning, "In reaching your decision on infringement…" because it is not part of the model instructions. It is also repetitive and duplicative of instructions regarding direct and indirect infringement. For example, this statement is already a part of the direct infringement instructions. There is no reason to repeat this sentiment here. Google also objects to the language "compare the accused system or process with any specific example set out in the patent or with the prior art" as contrary to the law,

---

[7] EcoFactor's Sources: *Videoshare, LLC v. Google LLC,* Case No. 6:19-CV-00663-ADA, Dkt. No. 215 at 21 (Nov. 15, 2021); *MV3 Partners LLC v. Roku, Inc.*, Case No. 6:18-cv-308-ADA, Dkt. No. 379 at 18; *Core Wireless Licensing S.A.R.L., v. LG Elecs., Inc*., Case No. 2:14-cv-00912-JRG-RSP, 9/16/16 Morning Trial Transcript at 17-18.

prejudicial, and confusing. There is no reason to tell the jury not to compare the accused system with prior art or examples in the patent as the instructions already tell the jury to compare the accused product to the claims, and suggesting these things would only serve to confuse the jury. *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997)).

26

**JURY INSTRUCTION NO. 32:  DIRECT INFRINGEMENT**

In order to prove direct infringement, EcoFactor must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Google made, used, sold, offered for sale within the United States a product that meets all of the requirements of a claim and did so without the permission of EcoFactor during the time the Asserted Patents were in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met.[8]

A party can directly infringe a patent without knowing of the patent or without knowing what the party is doing is patent infringement.[9]

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed.  A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**EcoFactor's Position:**

The sentence beginning, "A party can directly infringe…" may be found in the AIPLA 2019 Model Patent Jury Instructions, section 3.1 and provides the jury with a more complete understanding of the law applicable to infringement which will help to clarify the jury's role in deciding the issue of infringement.

**Google's Position**

This instruction is modeled after model instruction § 3.1a of the May 2020 Federal Circuit Bar Association Model Patent Jury Instructions.  EcoFactor is opposed to including the sentence above in blue that states "[y]ou must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of a claim are met."  The disputed sentence appears in the Federal Circuit Bar Association's model instruction, it is a correct statement of the law, and this Court has included this langue in an analogous instruction in recent patent case.  *See Profectus Technology, LLC, v. Google, LLC*, No. 6:20-cv-00101-ADA, Dkt. No. 193 at 21 (W.D. Tex. Oct. 6, 2021); *MicroStrategy Inc. v. Bus. Objects*, S.A., 429 F.3d 1344, 1352-53 (Fed. Cir. 2005) (no literal infringement where accused product did not contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309-11 (Fed. Cir.

---

[8] Google Source: FCBA Model Instructions No. 3.1a
[9] EcoFactor's Source: AIPLA 2019 Model Patent Jury Instructions, 3.1.

2005) (no direct infringement where accused product did not include each claim limitation); *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353-54 (Fed. Cir. 2001) (no literal infringement where all of the elements of the claim not present in the accused system); *Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*, No. 2:16-CV-08033-AB (SKx), 2021 WL 3704739, at *11 (C.D. Cal. Aug. 5, 2021) ("You must compare the structure, functionality or operation of the Guest-Tek device or service with each and every one of the requirement of a claim to determine whether all of the requirements of that claim are met"). EcoFactor has not identified any basis for excluding it in this case. Accordingly, this sentence should be included in this instruction given to the jury.

By contrast, the sentence in red above that EcoFactor proposes does not appear in the Federal Circuit Bar Association Model Patent Jury Instruction §3.1a. It is superfluous here and would only serve to confuse the jury. The sentence in red above should be excluded from the instruction given to the jury in this case.

## JURY INSTRUCTION NO. 33: INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[10]

If a company makes, uses, sells, or offers to sell within the United States a product or method that does not literally meet all of the elements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product or method satisfies the claim elements "under the doctrine of equivalents."

Under the doctrine of equivalents, a product or method infringes a claim if they contain elements that literally meet or are equivalent to each and every element of the claim. You may find that an element is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. In order to prove infringement by "equivalents," EcoFactor must prove the equivalency of the structure to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the accused producer method either literally or under the doctrine of equivalents for you to find infringement.

EcoFactor alleges the doctrine of equivalents may apply to the following claim elements of the Asserted Patents: _____.

## EcoFactor's Position:

EcoFactor objects Google's sentence in blue, beginning "EcoFactor alleges the doctrine of equivalents may apply…" because Google has not cited to any support for the inclusion of this sentence in jury instructions. EcoFactor likewise objects because Google's stated reason for inclusion of this instruction—that EcoFactor be limited to presenting doctrine of equivalents only where it has preserved doctrine of equivalents—is an issue for the Court to decide, and is not an issue for the jury.

## Google's Position:

Any instruction regarding the doctrine of equivalents should clearly identify the elements of the Asserted Claims for which the jury can properly consider the doctrine of equivalents. For some of the asserted claim elements in this case, EcoFactor's purported expert Mr. Erik de la Iglesia did not offer any opinion regarding the application of the doctrine of equivalents in his expert report. For several other claim elements, Mr. de la Iglesia offered only boilerplate, conclusory statements that are insufficient to preserve the application of the doctrine of

---

[10] The Parties are in the process of negotiating a narrowing of the Asserted Claims and prior art references in this case. In this instruction and elsewhere the Parties have left placeholders for specific references to Asserted Claims and prior art references.

1791893

equivalents at trial.  *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (holding that a conclusory statement by an expert was insufficient to prove infringement under the doctrine of equivalents); *see also*, *TC Tech. LLC v. Sprint Corp.*, No. CV 16-153-WCB, 2020 WL 365056, at *6 (D. Del. Jan. 22, 2020) (holding that plaintiff was limited to presenting only the specific doctrine of equivalents theories delineated in its expert's reports).  Because EcoFactor has not preserved the doctrine of equivalents for all of the claim elements of the Asserted Claims in this lawsuit, EcoFactor should not benefit from a blanket instruction regarding the doctrine of equivalents.  Without the language in blue above that Google proposes, the jury could improperly apply the doctrine of equivalents to a claim for which EcoFactor has not preserved the doctrine of equivalents.  The disputed sentence should be included to clarify for the jury which claims EcoFactor has articulated a sufficient basis for asserting the doctrine of equivalents at trial.

**JURY INSTRUCTION NO. 34:  INDIRECT INFRINGEMENT – ACTIVE INDUCEMENT**

EcoFactor alleges that Google is liable for infringement by actively inducing Google's customers to directly infringe the Asserted Patents.  As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Google is liable for active inducement of a claim only if EcoFactor proves by a preponderance of the evidence:

(1)     that the acts are actually carried out by another, e.g., Google's customers, and that the other directly infringes that claim;

(2)     that Google took action during the time the Asserted Claim was in force that was intended to cause and led to the infringing acts by another; and

(3)     that Google was aware of the Asserted Patents and knew that the acts, if taken, would constitute infringement of that patent, or that Google believed there was a high probability that the acts by Google's end-user customers infringed the Asserted Patent and took deliberate steps to avoid learning of that infringement.[11]

Although EcoFactor need not prove that Google has directly infringed to prove patent infringement, EcoFactor must prove that someone has directly infringed. If there is no direct infringement by anyone, Google cannot have actively induced infringement of the Asserted Patents.

If you find that Google was aware of the patent, but believed that the acts it encouraged did not infringe that patent, Google cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that Google's customers themselves directly infringe an Asserted Claim.  Nor is it sufficient that Google was aware of the act(s) by Google's customers that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Google specifically intended its customers to infringe the Asserted Patents or that Google believed there was a high probability that its would infringe the Asserted Patents, but deliberately avoided learning the infringing nature of its customers' acts.  The mere fact, if true, that Google knew or should have known that there was a substantial risk that Google's customers' acts would infringe

---

[11] EcoFactor's Sources: The Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) § 3.2 (with modifications); *Profectus Technology LLC v. Google LLC*, Case No. 6:20-cv-00101-ADA, Dkt. No. 193 at 22 (Oct. 5, 2021).

1791893

the Asserted Patents would not be sufficient to support a finding of active inducement of infringement.

**EcoFactor's Position:**

The language in bullet (3) "or that Google believed there was a high probability that the acts by Google's end-user customers infringed the Asserted Patent and took deliberate steps to avoid learning of that infringement," comes from the Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) § 3.2 and previous instructions used in this District. *Profectus Technology, LLC, v. Google, LLC*, No. 6:20-cv-00101-ADA, Dkt. No. 193 at 22 (W.D. Tex. Oct. 6, 2021). Google's 30(b)(6) corporate representative, Jeff Gleeson, provided testimony relevant to this issue.

**Google's Position:**

The Federal Circuit Bar Association Model Patent Jury Instruction 3.2 makes clear that the phrase in red above is only appropriate as an "addition . . . **when willful blindness concerning the [ ] patent's existence is at issue**." *Id.* (emphasis added). In this case, EcoFactor has failed to identify any admissible evidence that would show that Google had a subjective belief that there was a high probability of infringement by others or that Google took deliberate actions to avoid learning this fact—two essential elements for the doctrine of willful blindness. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Since there is no evidentiary basis for EcoFactor asserting a theory of willful blindness in this case, including the sentence in red above would be prejudicial to Google.

**JURY INSTRUCTION NO. 35:  INDIRECT INFRINGEMENT – CONTRIBUTORY INFRINGEMENT**

EcoFactor argues that Google is liable for contributory infringement by contributing to the direct infringement of the Asserted Patents by Google's customers.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Google is liable for contributory infringement of a claim if EcoFactor proves by a preponderance of the evidence:

(1)      Google sells or offers to sell within the United States a component of a product, material, or apparatus for use in a process, during the time the Asserted Patents are in force;

(2)      the component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

(3)      the component, material, or apparatus constitutes a material part of the invention;

(4)      Google was aware of the Asserted Patent and knows that the component, material, or apparatus was especially made or adapted for use as an infringement of the Asserted Claim; and

(5)      Google's customer uses the component, material, or apparatus to directly infringe a claim.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product or in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.[12]

Google's knowledge that the component was especially made or adapted for use in an infringing product or method may be shown with evidence of willful blindness where Google consciously ignored the existence of both the patent and direct infringement of that patent. To find willful blindness (1) Google must have subjectively believed that there was a high probability that a patent existed covering the accused product or method, and (2) Google must have taken deliberate actions to avoid learning of the patent.[13]

**EcoFactor's Position:**

The language EcoFactor proposes may be found in AIPLA 2019 Model Patent Jury Instructions, section 3.10. Furthermore, this language provides further clarification to the issues discussed in the portions of the same instruction which precede it. For example, bullet point (2) of this

---

[12] EcoFactor's Sources: AIPLA 2019 Model Patent Jury Instructions 3.10.
[13] EcoFactor's Sources: AIPLA 2019 Model Patent Jury Instructions 3.10.

instruction discusses "staple article[s]," and bullet point (4) discusses the concept of being especially made or adapted for use in an infringing product. Additionally, Google's 30(b)(6) corporate representative, Jeff Gleeson, provided testimony relevant to the issue of willful blindness.

**Google's Position:**

This instruction is modeled after Federal Circuit Bar Association Model Patent Jury Instruction 3.3.  The model instruction does not include the language EcoFactor proposes in red above.  This language should not be included in the instructions given to the jury, because it raises the issue of willful blindness. EcoFactor has failed to identify any admissible evidence that would show that Google had a subjective belief that there was a high probability of infringement by others or that Google took deliberate actions to avoid learning this fact—two essential elements for the doctrine of willful blindness.  *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  Since there is no evidentiary basis for EcoFactor asserting a theory of willful blindness in this case, including reference to willful blindness in the red text above would be prejudicial to Google.  The Court should exclude the language proposed by EcoFactor and retain the language of the original instruction contemplated by the Federal Circuit Bar Association.

**JURY INSTRUCTION NO. 36:  WILLFUL INFRINGEMENT**

EcoFactor alleges that Google willfully infringed the Asserted Patents. If you have decided that Google has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine whether EcoFactor proved that it is more likely than not that Google knew of the Asserted Patents and that the infringement by Google was deliberate or[14] intentional. Thus, you may not determine that the infringement was willful just because Google was aware of the Asserted Patents and infringed them. Instead, you must also find that Google deliberately infringed the Asserted Patents.

To determine whether Google acted willfully, consider all facts and assess Google's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited, to:

(1) Whether or not Google acted consistently with the standards of behavior for its industry;

(2) Whether or not Google intentionally copied a product of EcoFactor's that is covered by the Asserted Patents.

(3) Whether or not Google reasonably believed it did not infringe or that the patent was invalid.

(4) Whether or not Google made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Google attempted to design around the Asserted Patents; and

(5) Whether or not Google tried to cover up its infringement.

You may not assume that merely because Google did not obtain a legal opinion about whether it infringed the Asserted Patents, that the opinion would have been unfavorable. The absence of a legal opinion may not be used by you to find that Google acted willfully. Rather, the issue is whether, considering all the facts, EcoFactor has established that Google's conduct was willful.[15]

**EcoFactor's Position:**

The inclusion of the language "deliberate or" may be found in instructions previousl given in this district. *See e.g.*, *Profectus Technology LLC v. Google LLC*, Case No. 6:20-cv-00101-ADA, Dkt.

---

[14] EcoFactor's Sources: *Profectus Technology LLC v. Google LLC*, Case No. 6:20-cv-00101-ADA, Dkt. No. 193 at 23 (Oct. 5, 2021); *FreshHub, Inc. V. Amazon.com, Inc.*, Case No. 6:21-CV-00511-ADA, Dkt. No. 247 at 18 (June 22, 2021); *Jiaxing Super Lighting v. CH Lighting*, Case No. 6:20-cv-00018-ADA, Dkt. No. 226 at 19 (Nov. 4, 2021).

[15] EcoFactor's Sources: The Federal Circuit Bar Association Model Patent Jury Instructions (May 2020) § 3.10 (with modifications); *Profectus Technology LLC v. Google LLC*, Case No. 6:20-cv-00101-ADA, Dkt. No. 193 at 23 (Oct. 5, 2021).

1791893

No. 193 at 23 (Oct. 5, 2021); *FreshHub, Inc. v. Amazon.com, Inc.*, Case No. 6:21-CV-00511-ADA, Dkt. No. 247 at 18 (June 22, 2021); *Jiaxing Super Lighting v. CH Lighting*, Case No. 6:20-cv-00018-ADA, Dkt. No. 226 at 19 (Nov. 4, 2021). Additionally, Google's 30(b)(6) corporate representative, Jeff Gleeson, provided testimony relevant to the issue of willful blindness.

The paragraph which begins "You may not assume that merely because Google did not…" is appropriate because, as Google points out, the model instructions contemplate giving this instruction when the jury is made aware that there was not a legal opinion that alleged infringer is relying on. The issue of an advice of counsel defense is the subject of a MIL in this case. Similarly, Google has indicated that it may proffer evidence related to the steps its employees undertake when patented technology may be at issue.

**Google's Position:**

This instruction is modeled after Federal Circuit Bar Association Model Patent Jury Instruction §3.10.  The model instruction makes clear that the red text above that EcoFactor adds to the end of this instruction is only appropriate "[i]f [the] jury is made aware that there was not a legal opinion that alleged infringer is relying on." *Id*.  Here, EcoFactor should not be permitted to argue that Google should have obtained an opinion of counsel regarding EcoFactor's patents, because EcoFactor never alleged infringement prior to filing suit.  EcoFactor only claims that Google began infringing on January 31, 2020, when EcoFactor filed the complaint in this matter.  Consequently, there is no reason or relevance to bringing up whether an opinion of counsel was obtained or not.  This instruction is therefore prejudicial, confusing, and irrelevant, and the Court should not allow this instruction.

Google also objects to EcoFactor's addition of the word "deliberate" in red text above.  This term does not appear in Federal Circuit Bar Association Model Patent Jury Instruction §3.10.  To the extent that EcoFactor has included this language to support its theory of willful blindness, Google maintains its objection that willful blindness is not at issue in this case. EcoFactor has failed to identify any admissible evidence that would show that Google had a subjective belief that there was a high probability of infringement by others or that Google took deliberate actions to avoid learning this fact—two essential elements for the doctrine of willful blindness.  *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011).  Since there is no evidentiary basis for EcoFactor asserting a theory of willful blindness in this case, including reference to "deliberate" infringement should not be added to this instruction.

**JURY INSTRUCTION NO. 37:  INVALIDITY—GENERALLY[16]**

I will now instruct you on the rules you must follow in deciding whether or not Google has proven that the Asserted Claims of the Asserted Patents are invalid. To prove that any claim of a patent is invalid, Google must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

An issued United States patent is accorded a presumption of validity based on the presumption that the Patent Office, which you've heard referred to throughout this trial as the PTO or sometimes just the Patent Office, acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents. To prove that any claim of a patent is invalid, Google must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.[17]

In order to overcome this presumption, Google must establish by clear and convincing evidence that the Plaintiffs' patents or any claim in the patent is not valid.[18]

In making your determination as to invalidity, you must consider each claim separately. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid. Claims are construed the same way for determining infringement as for determining invalidity, and you must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.[19]

Google contends that the asserted claims of the patent-in-suit are invalid for various reasons that I will explain to you. The reasons are: (1) patent eligibility, (2) anticipation, (3) obviousness, (4) enablement, (5) written description, and (6) indefiniteness. Google only needs to demonstrate that a claim is invalid by clear and convincing evidence under one of these reasons for you to decide that the claim is invalid.

---

[16] EcoFactor's Sources: *See United Services Automobile Association v. Wells Fargo Bank, N.A.*, 2:18-cv-366-JRG (Dkt. No. 275), at 1313-1314 (E.D. Tex. Jan. 10, 2020).

[17] EcoFactor's Sources: 35 U.S.C. § 282; *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91 (2011); *Jiaxing Super Lighting v. CH Lighting*, Case No. 6:20-cv-00018-ADA, Dkt. No. 226 at 20 (W.D. Tex. Nov. 4, 2021); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *See United Services Automobile Association v. Wells Fargo Bank, N.A.*, 2:18-cv-366-JRG (Dkt. No. 275), at 1313-1314 (E.D. Tex. Jan. 10, 2020); *Innovative Sciences, LLC v. Amazon.com, Inc.*, 4:18-cv-474, Dkt. No. 845 at 17 (E.D. Tex. Sept. 2, 2020); *Optis Wireless v. Huawei*, 2:17-cv-123-JRG-RSP, Dkt. No. 284 at 15 (E.D. Tex. Aug. 25, 2018).

[18] EcoFactor's Sources: *Id.*

[19] EcoFactor's Sources: *See United Services Automobile Association v. Wells Fargo Bank, N.A.*, 2:18-cv-366-JRG (Dkt. No. 275), at 1313-1314 (E.D. Tex. Jan. 10, 2020); *Optis Wireless v. Huawei*, 2:17-cv-123-JRG-RSP, Dkt. No. 284 at 16 (E.D. Tex. Aug. 25, 2018).

Even though one or more Patent Office examiners have allowed the asserted claims as valid, you have the responsibility for deciding whether Google has met its burden of proving by clear and convincing evidence that the asserted claims are invalid.[20]

### EcoFactor's Position:

This instruction, with EcoFactor's language in red, has been given previously in *United Services Automobile Association v. Wells Fargo Bank, N.A.*, 2:18-cv-366-JRG (Dkt. No. 275), at 1313-1314 (E.D. Tex. Jan. 10, 2020). Additionally, the two paragraphs beginning "A United States patent is accorded a presumption of validity…" have been given in previously in this District. *See Jiaxing Super Lighting v. CH Lighting*, Case No. 6:20-cv-00018-ADA, Dkt. No. 226 at 20 (W.D. Tex. Nov. 4, 2021). Also, the paragraph beginning "In making your determination as to invalidity…" has been given in Eastern District of Texas cases. *See e.g.*, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, 2:18-cv-366-JRG (Dkt. No. 275), at 1313-1314 (E.D. Tex. Jan. 10, 2020); *Optis Wireless v. Huawei*, 2:17-cv-123-JRG-RSP, Dkt. No. 284 at 16 (E.D. Tex. Aug. 25, 2018). This instruction provides important context to the concept of invalidity, which is discussed in detail in this instruction and the ones that follow. Furthermore, the presumption of validity is inextricably linked to an alleged infringer's showing of invalidity because the presumption provides context and clarity to the purpose for the burden of proof required to demonstrate invalidity.

EcoFactor objects to the paragraph beginning "Google contends that the asserted claims of the patent-in-suit are invalid…" because Google objected to this language initially and EcoFactor has agreed to resolve Google's objection by removing the language from the jury instructions. Further, Google has not identified any source or support for this instruction.

### Google's Position:

EcoFactor again repeats the presumption of validity, which is not found in the model instructions, and is duplicative of its other instructions. This language is prejudicial and unduly argumentative because EcoFactor repeats language on the presumption of validity at least three times in various instructions. That repetition is an improper attempt to insert EcoFactor's legal and factual theories into the jury instructions. *See, e.g., United States v. Mata*, 491 F.3d 237 (5th Cir. 2007) ("A trial judge is under no obligation to give a requested jury instruction that misstates the law, is argumentative, or has been covered adequately by other instructions.") (quoting *United States v. Asibor*, 109 F.3d 1023, 1035 (5th Cir. 1997)).

---

[20] Google source: *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 27 (W.D. Tex. April 9, 2021)

1791893

Google also objects to the paragraph beginning, "In making your determination as to invalidity…." The proposed instruction is not part of the model instructions, and is duplicative of later instructions and therefore confusing and prejudicial.

39

**JURY INSTRUCTION NO. 38:  PRIOR ART[21]**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  Prior art is considered in determining whether the Asserted Claims are anticipated or obvious.  Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

Google asserts the following prior art against the '488 Patent:

- _____

Google asserts the following prior art against the '327 Patent:

- _____

Google asserts the following prior art against the '382 Patent:

- _____

When a party challenging the validity of a patent presents evidence that was not considered by the Patent Office examiners during the prosecution of the application and is not cumulative of other evidence that was considered by the Patent Office which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy Google's clear-and-convincing evidence burden.

When a specific prior art reference was before the Patent Office examiners during prosecution, such as when it is noted on the face of the patent, the burden of proving invalidity is especially difficult.[22]

Regardless of whether particular prior art references were considered by the Patent Office examiners during the prosecution of the applications that matured into the Asserted Patents, Google must prove by clear and convincing evidence that the challenged claim(s) are invalid. This burden of proof on Google never changes regardless of whether the Patent Office examiner considered the reference.[23]

---

[21] The Parties are in the process of negotiating a narrowing of the Asserted Claims and prior art references in this case. In this instruction and elsewhere the Parties have left placeholders for specific references to Asserted Claims and prior art references.

[22] EcoFactor's Sources: *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986); *Shire LLC v Amneal Pharm's, LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1375 (Fed. Cir. 2006);

[23] EcoFactor's Sources: AIPLA 2019 Model Patent Jury Instructions 5.1 (with modifications).

Google must prove by clear and convincing evidence that each reference is prior art.

**<u>EcoFactor's Position:</u>**

Google's language in blue is not part of the part of Federal Circuit Bar Association Model Jury Instruction No. 4.3a-1, upon which Google purports to base this instruction. Further, Google's language is one-sided and would serve to prejudice EcoFactor by not also addressing the issue of references which *were* considered by the Patent Office examiners. Moreover, Google's proposed language in blue would only serve to confuse the jury because it would lead them to the improper understanding that Google's burden on invalidity may change depending on whether the art was considered by the PTO. Indeed, Google's objection that "the first paragraph [of EcoFactor's proposed language] is an incomplete statement of law at best, as it fails to mention that the burden of proof to show invalidity remains the same" applies with equal force to Google's own instruction because it fails to mention that the burden of proof to show validity remains the same.

By contrast, EcoFactor's instructions provide the jury with a much more complete understanding of the weight to be given to references considered by the PTO *and* not considered by the PTO in response to Google's one-side instruction. Notably, EcoFactor's proposed language explicitly instructs the jury that "This burden of proof on Google never changes regardless of whether the Patent Office examiner considered the reference," which directly addresses Google's concerns raised by its objection.

**Google's Position:**

The text in red is not part of Federal Circuit Bar Association Model Jury Instruction No. 4.3a-1, upon which this instruction is based. EcoFactor's proposed additions are prejudicial, irrelevant, and misstate the law. First, the first paragraph is an incomplete statement of law at best, as it fails to mention that the burden of proof to show invalidity remains the same. Further, the second paragraph is prejudicial as it is repetitive of other instructions regarding the burden of proof regarding invalidity. Finally, the last sentence is prejudicial and irrelevant because EcoFactor does not dispute that any asserted reference is prior art.

If the Court provides commentary beyond listing the undisputed prior art, it should provide the sentence in blue as it did in *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA, Dkt. 172 at 29 (W.D. Tex. April 9, 2021) ("When a party challenging the validity of a patent presents evidence that was not considered by the Patent Office examiners during the prosecution of the application and is not cumulative of other evidence that was considered by the Patent Office which resulted in the issued patent, such new evidence may be given more weight and may make it easier to satisfy the party's clear-and-convincing burden.").

**JURY INSTRUCTION NO. 39:  ANTICIPATION**[24]

In order for someone to be entitled to a patent, the invention must actually be "new."  Google contends that the Asserted Claims of the '327 and '382 patents are not new and are invalid because the claimed invention(s) is anticipated.  Google must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Specifically, Google contends that the following prior art references anticipate the Asserted Claims of the '327 Patent:

- _____

Google also contends that the following prior art references anticipate certain of the Asserted Claims of the '382 Patent.

- _____

Anticipation must be determined on a claim-by-claim basis.  Google must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.  To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Google is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider.  If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

---

[24] The Parties are in the process of negotiating a narrowing of the claims and prior art references in this case. In this instruction and elsewhere the Parties have left placeholders for specific references to Asserted Claims and prior art references.

1791893

**JURY INSTRUCTION NO. 40:  OBVIOUSNESS**[25]

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Even if a patent claim is not anticipated, Google may establish that the claim is invalid by proving that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of the invention at the time the invention was made.

Google bears the burden of establishing obviousness by clear and convincing evidence. Specifically, Google contends that the following prior art references and combinations of prior art references render obvious the Asserted Claims of the '327 Patent:

- _____

Google contends that the following prior art references and combinations of prior art references render obvious the Asserted Claims of the '488 Patent:

- _____

Google contends that the following prior art references and combinations of prior art references render obvious the Asserted Claims of the '382 Patent.

- _____

In determining whether a claimed invention is obvious, you must consider:

1. the level of ordinary skill in the field of the invention that someone would have had at the time the invention was made;

2. the scope and content of the prior art;

3. any differences between the prior art and the claimed invention; and,

4. and, if present, so-called objective evidence or secondary considerations, which I will describe shortly.

---

[25] The Parties are in the process of negotiating a narrowing of the claims and prior art references in this case. In this instruction and elsewhere the Parties have left placeholders for specific references to Asserted Claims and prior art references.

1791893

Do not use hindsight; consider only what was known at the time of the invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you should consider whether, at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in the way the claimed invention does, taking into account such factors as:

1.  whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

2.  whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.  whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

4.  whether the prior art teaches away from combining elements in the claimed invention;

5.  whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

To find that prior art rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.  Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

(1)   Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market- pressure advertising or similar activities);

(2)   Whether the claimed invention satisfied a long-felt need;

(3)   Whether others had tried and failed to make the claimed invention;

(4)   Whether others invented the claimed invention at roughly the same time;

(5)   Whether others copied the claimed invention;

44

(6)     Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

(7)     Whether the claimed invention achieved unexpected results;

(8)     Whether others in the field praised the claimed invention;

(9)     Whether persons having ordinary skill in the art of the invention expressed surpriseor disbelief regarding the claimed invention;

(10)    Whether others sought or obtained rights to the patent from the patent holder; and

(11)    Whether the inventor proceeded contrary to accepted wisdom in the field.


In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

**JURY INSTRUCTION NO. 41:  LEVEL OF ORDINARY SKILL**

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology.

**JURY INSTRUCTION NO. 42:  PATENT ELIGIBILITY**

Google contends that the Asserted Patents are invalid for failure to claim patent-eligible subject matter. To succeed on its claim for invalidity for failure to claim patent-eligible subject matter, Google must show by clear and convincing evidence that the elements of the asserted claims, when taken individually and when taken as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the date of invention. In determining whether a patent claim involves well-understood, routine, and conventional technology to a person of ordinary skill in the art, you may consider statements made in the patent's specification, as well as evidence of the prior art.[26]

Whether a particular technology was well-understood, routine, and conventional goes beyond what was known in the prior art.  The mere fact that something is disclosed in a piece of prior art does not mean that it was well-understood, routine, and conventional.  At the same time, the specification of the asserted patent may be such evidence, if you find that the specification shows that the elements of the asserted claims involve only technology which a person of ordinary skill in the art would have considered as well-understood, routine, and conventional.

---

[26] EcoFactor's Sources: *Videoshare, LLC v. Google LLC,* Case No. 6:19-CV-00663-ADA, Dkt. No. 215 at 26 (Nov. 15, 2021).

**JURY INSTRUCTION NO. 43:  WRITTEN DESCRIPTION REQUIREMENT**

The patent law contains certain requirements for the part of the patent called the specification. The written description requirement is designed to ensure that the inventor was in possession of the full scope of claimed inventions as of the patent's priority date.  Google contends that the Asserted Patents are invalid because the specification of each patent does not contain an adequate written description of the inventions.

To succeed, Google must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the priority date of the patent claim would not have recognized that it describes the full scope of the inventions as it is finally claimed in the Asserted Claims of the Asserted Patents and the named inventors were in possession of the full scope of the claimed inventions. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the patent's priority date.  The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently.  A claimed element is disclosed inherently if a person having ordinary skill in the field as of the priority date would have understood that the element is necessarily present in what the specification discloses. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

The written description does not have to be in the exact words of the claims.  The requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention(s).  However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

**JURY INSTRUCTION NO. 44:  ENABLEMENT**

The patent law contains certain requirements for the part of the patent called the specification. One of those requirements is called the enablement requirement.  Google contends that the Asserted Patents are invalid because the specification of each patent does not "enable" the full scope of the claimed inventions.

To succeed, Google must show by clear and convincing evidence that an Asserted Patent's specification does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed inventions as of the priority date of the patent, without undue experimentation.  If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable.  In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)     the time and cost of any necessary experimentation;

(2)     how routine any necessary experimentation is in the field of building energy management and controls;

(3)     whether the patent discloses specific working examples of the claimed invention;

(4)     the amount of guidance presented in the patent;

(5)     the nature and predictability of the field of building energy management and controls;

(6)     the level of ordinary skill in the field of building energy management and controls; and

(7)     the nature and scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the effective filing date, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

**JURY INSTRUCTION NO. 45:  INDEFINITENESS**

You must decide, for each claim, whether the words used in the claim are sufficiently definite to allow one skilled in the art to determine the limits of the claimed invention.  If a claim is found to be indefinite, the claim is invalid. In this case, Google contends that the Asserted Claims of the Asserted Patents are invalid because the language of the Asserted Claims is indefinite.

To prevail on that contention, Google must show by clear and convincing evidence that the Asserted Claims, read in light of the specification delineating the patent, fail to inform with reasonable certainty those skilled in the art about the scope of the invention.

## JURY INSTRUCTION NO. 46:  DAMAGES—INTRODUCTION

I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Google infringed any Asserted Claim of the Asserted Patents, and you do not find that that same claim is invalid, you must then consider what amount of damages to award to EcoFactor. If you find that Google has not infringed any valid claim of any patent, then EcoFactor is not entitled to any damages.

If you award damages, they must be adequate to compensate EcoFactor for any infringement you find.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put EcoFactor in approximately the same financial position that it would have been in had the infringement not occurred.

EcoFactor has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that EcoFactor establishes that it more likely than not has suffered.  While EcoFactor is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, EcoFactor seeks a reasonable royalty.  A reasonable royalty is defined as the money amount EcoFactor and Google would have agreed upon as a fee for use of the invention at the time just prior to when infringement began. You must be careful to ensure that award is no more and no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that EcoFactor is entitled to recover no less than a reasonable royalty for each act of infringement.

The court expresses no opinion on whether EcoFactor is entitled or not entitled to any damages.[27]

**EcoFactor's Position:**

As an alternative to EcoFactor's language in red, EcoFactor is agreeable to providing the separate instruction contemplated by the Federal Circuit Model tent Jury Instructions (May 2020) § 5.5 (as modified, "Reasonable Royalty—Entitlement. If you find that a patent claim is infringed and not invalid, EcoFactor is entitled to at least a reasonable royalty to compensate it for that infringement.") which Google initially proposed. Additionally, The Federal Circuit Bar Association model instruction resolves Google's objection because it uses the language "at least a reasonable royalty to compensate it for that infringement" as opposed to the language Google objects to, "for each act of infringement."

---

[27] Google Source: *Freshub Inc. et al. v. Amazon.com Inc. et al.*, 6:21-CV-00511-ADA, Dkt. No. 247 (June 22, 2021).

1791893

EcoFactor objects to Google's language in blue beginning "The court expresses no opinion…" because it is not found in the Federal Circuit model instructions and is duplicative of Instruction Number 14, which is the foundational instruction of the jury charge that provides jurors with the framework for the rest of the instructions. Including this language here, and here alone, would confuse the jury because it would lead them to believe that there is something unique about this instruction in contrast to all of the others.

**Google's Position:**

Google objects to the sentence beginning, "Note, however, that Ecofactor is entitled to recover…." The language is misleading and confusing because it could be interpreted by the jury to mean that EcoFactor must receive a running royalty (as opposed to a lump sum) because it says that the reasonable royalty is given for each act of infringement. This language is particularly problematic in light of EcoFactor's objection to including the instruction that explains the difference between a lump sum and a running royalty.

**JURY INSTRUCTION NO. 47:  REASONABLE ROYALTY—DEFINITION**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.

A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.[28]

**EcoFactor's Position:**

Profits arising from the sale of the Accused Products were addressed by both parties' damages experts. EcoFactor's language in red provides jurors with a more detailed explanation of the law in connection with the issues that may be raised in trial. Additionally, this language is appropriate because it has been given previously in this District. *See e.g.*, *Videoshare, LLC v. Google LLC*, Case No. 6:19-CV-00663-ADA, Dkt. No. 215 at 30 (Nov. 15, 2021).

**Google's Position:**

The final paragraph (in red) does not appear in FCBA model instruction §5.6 and only serves to confuse and prejudice the jury regarding damages. The inclusion of this paragraph seems to be related to EcoFactor's wish to hide the fact that Nest has not been profitable. In general, EcoFactor's proposed paragraph would only serve to confuse the jury.

---

[28] EcoFactor's Sources: *Videoshare, LLC v. Google LLC*, Case No. 6:19-CV-00663-ADA, Dkt. No. 215 at 30 (Nov. 15, 2021).

1791893

## JURY INSTRUCTION NO. 48:  REASONABLE ROYALTY—RELEVANT FACTORS

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

    (1)    The value that the claimed invention contributes to the accused product.

    (2)    The value that factors other than the claimed invention contribute to the accused product.

    (3)    Comparable license agreements or other transactions, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

The so-called "*Georgia-Pacific*" factors, which can be considered to inform the hypothetical negotiation, include the following:

    (1)    The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty

    (2)    The rates paid by the licensee for the use of other patents comparable to the patent-in- suit.

    (3)    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

    (4)    The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

    (5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

    (6)    The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of

sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

**JURY INSTRUCTION NO. 49:  DAMAGES – COMPARABLE AGREEMENTS**

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope.  If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

The hypothetical license is deemed to be a voluntary agreement.  When determining if a license agreement is comparable to the hypothetical license, you may consider whether the license agreement is between parties to a lawsuit and whether the license agreement was a settlement influenced by a desire to avoid further litigation.

1791893

## JURY INSTRUCTION NO. 50:  DAMAGES – LUMP SUM VS. RUNNING ROYALTY

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty."  Either method is designed to compensate the patent holder based on the infringer's use of the patented technology.  It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards may take the form of a lump sum payment. Google contends that a lump sum payment is the appropriate form of reasonable royalty. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future.  When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the volume of sales of licensed products. EcoFactor contends that a running royalty is the appropriate form of reasonable royalty. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit.

### EcoFactor's Position:

The parties have competing damages theories – EcoFactor proposes a running royalty and Google a lump sum – and thus these concepts will be explained during the trial and no instruction is necessary unless one of the parties misstates the law and a corrective instruction is required.  If such an instruction is given, it should reflect the specific contentions of the parties, first stating that EcoFactor seeks a running royalty in the form of a per-unit royalty, and then that Google argues that any damages should be a lump sum. Google's rigid reliance on the model instructions would prevent the jury from the important context of understanding which party is contending for what form of royalty.

### Google's Position:

This instruction is taken verbatim from FCBA model instruction §5.7. As the model explains, this instruction is included "if both lump sum and running royalty damages theories are to be presented to the jury." The instruction clearly elucidates the difference between running royalties and lump sum damages, which the jury will hear during testimony. Google objects to EcoFactor's additions in red because they are not contemplated by the model instruction, and the jury will already hear during testimony the parties' positions on damages.

1791893

**JURY INSTRUCTION NO. 51:  DAMAGES - APPORTIONMENT**

Any amount you find as of damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Google's size or market position.  A royalty compensating EcoFactor for damages must reflect the value attributable to the infringing features of the product, and no more.  The process of separating the value of the allegedly infringing features from the value of all other features and aspects of the product is called apportionment.

Apportionment can be addressed in a variety of ways, including by careful selection of the royalty base to reflect the value added by the patented feature or by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof.

When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

58

## JURY INSTRUCTION NO. 52:  DATE OF COMMENCEMENT OF DAMAGES—PRODUCTS

In determining the amount of damages, you must consider when any alleged damages began. Here, the Parties agree that date is January 31, 2020.

**EcoFactor's Position:**

This instruction is unnecessary as this is not a disputed issue.

**Google's Position:**

This instruction is taken from FCBA model instruction §5.10. The model contemplates providing this instruction when the parties do not dispute the date damages would commence. This instruction is critical to explain to the jury that damages commence only after the date of first infringement. Without this instruction, the jury is likely to be confused, and Google prejudiced, because EcoFactor is likely to put on evidence regarding Nest and its products for many years before the date it accuses Nest of first infringing. The jury should understand that damages, if any, should only commence starting on the date that EcoFactor alleges infringement began. Further, this instruction was given in both *Freshub Inc. et al. v. Amazon.com Inc. et al.*, 6:21-CV-00511-ADA, Dkt. No. 247 (June 22, 2021) and *Profectus Tech. LLC v. Google LLC*, 6:20-CV-00101-ADA (Oct. 6, 2021).

1791893

**JURY INSTRUCTION NO. 53:  DUTY TO DELIBERATE**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. Answer each question in the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

1791893

**JURY INSTRUCTION NO. 54:  SOCIAL MEDIA INSTRUCTION**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, Linkedln, YouTube, Snapchat, Instagram, WhatsApp or Twitter or any other way to communicate.  You may not communicate to anyone any information about this case or to conduct any research about this case until this case is over and I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may now proceed to the jury room to begin your deliberations.

1791893